IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HH LIQUIDATION, LLC, *et al.*, | ) | Case No. 15-11874 (KG) |
| | ) | (Jointly Administered) |
| Debtors, | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF HH LIQUIDATION, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Pro. 16-51204 (KG) |
| | ) | |
| -against- | ) | |
| | ) | |
| COMVEST GROUP HOLDINGS, LLC, COMVEST | ) | |
| INVESTMENT PARTNERS III, L.P., COMVEST | ) | |
| INVESTMENT PARTNERS IV, L.P., COMVEST | ) | |
| HAGGEN HOLDINGS III, LLC, COMVEST | ) | |
| HAGGEN HOLDINGS IV, LLC, COMVEST | ) | |
| ADVISORS, LLC, HAGGEN PROPERTY | ) | |
| HOLDINGS, LLC, HAGGEN PROPERTY SOUTH, | ) | |
| LLC, HAGGEN PROPERTY NORTH, LLC, | ) | |
| HAGGEN PROPERTY HOLDINGS II, LLC, | ) | |
| HAGGEN SLB, LLC, JOHN CAPLE, CECILIO | ) | |
| RODRIGUEZ, MICHAEL NIEGSCH, JOHN | ) | |
| CLOUGHER, BLAKE BARNETT, WILLIAM | ) | |
| SHANER and DERRICK ANDERSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' ANSWER

Defendants Comvest Group Holdings, LLC ("CGH"), Comvest Investment Partners III,

L.P. ("CIP III"), Comvest Investment Partners IV, L.P. ("CIP IV"), Comvest Haggen Holdings

III, LLC ("CHH III"), Comvest Haggen Holdings IV, LLC ("CHH IV"), Comvest Advisors,

LLC ("Comvest Advisors" and together with CGH, CIP III, CIP IV, CHH III, and CHH IV,

"Comvest"), non-Debtor affiliates Haggen Property Holdings, LLC ("Property Holdings"),

Haggen Property South LLC ("PropCo South"), Haggen Property North, LLC ("PropCo North"

and together with Property Holdings and PropCo South, the "PropCo Entities"), Haggen Property Holdings II, LLC ("Property Holdings II"), and Haggen SLB, LLC ("Haggen SLB" and together with Property Holdings II, the "SLB Entities"), and John Caple, Cecilio Rodriguez, Michael Niegsch, John Clougher, Blake Barnett, William Shaner, and Derrick Anderson (together with Caple, Rodriguez, Niegsch, Clougher, Barnett, and Shaner, the "Officers and Directors," and the Officers and Directors together with Comvest, the PropCo Entities, and the SLB Entities, the "Defendants"), by and through undersigned counsel, answer the Complaint and Objection to Claims of the Official Committee of Unsecured Creditors of HH Liquidation, LLC (the "Committee" or the "Plaintiff")[1] and its affiliated debtors and debtors in possession (collectively, the "Debtors") as follows, and deny any allegation not specifically addressed herein:

## NATURE OF THE ACTION

A.    Preliminary Statement

1.    Plaintiff seeks the avoidance of fraudulent transfers and monetary damages for egregious breaches of fiduciary duty arising from a convoluted Machiavellian scheme whereby Debtor HH Liquidation, LLC (f/k/a Haggen Holdings, LLC) ("Holdings") acquired 146 supermarkets from Albertson's early last year, and then covertly siphoned away valuable real estate assets that Haggen acquired from Albertson's so they would not be available to satisfy the claims of the Debtors' suppliers, landlords, employees and other unsecured creditors. This elaborate scheme was done at the direction, and for the benefit, of the Debtors' controlling shareholder, Comvest.

---

[1]    For the sake of convenience, unless otherwise specified, the Answer uses the same defined terms as those used in the Complaint.

ANSWER: Defendants deny the allegations in paragraph 1, except admit that Debtor HH Liquidation, LLC (f/k/a Haggen Holdings, LLC) ("Holdings") contracted to acquire 146 supermarkets from Albertson's LLC and Albertson's Holdings LLC (together, "Albertson's"), Safeway, Inc. ("Safeway") and the Von Companies, Inc. in December 2014 (the "Albertson's Acquisition").

2.      Comvest devised a way for Haggen, which until then owned and operated only 18 supermarkets, to finance the purchase of 146 stores from Albertson's. Comvest caused Haggen to create new operating subsidiaries, or "OpCo Entities," that would conduct business and incur substantial liabilities, while covertly stripping away the valuable real estate assets and transferring them gratuitously into putative bankruptcy remote non-Debtor "PropCo Entities" for Comvest's own benefit and to the intended detriment of Haggen's creditors, who were unaware of Comvest's behind-the-curtain machinations.

ANSWER: Defendants deny the allegations in paragraph 2, except admit (a) that the Albertson's Acquisition involved the purchase of 146 stores from Albertson's and (b) that prior to the Albertson's Acquisition, HH Legacy, Inc. (f/k/a Haggen, Inc.) ("Haggen, Inc.") owned and operated 18 supermarkets and one stand-alone pharmacy.

3.      Immediately after consummating the acquisition and related sale- leaseback and other transactions concocted by Comvest, the newly formed OpCo Entities were forced to operate under the weight of store leases with substantial and artificially-inflated rental obligations imposed on them. Almost immediately after being formed, the OpCo Entities experienced devastating financial losses in stores that were previously profitable. Haggen's mounting operating losses, which were exacerbated by management's ineptitude in converting the newly-acquired stores to the Haggen brand in an abbreviated time frame, resulted in an epic

3

failure. Less than a year after the acquisition, the Debtors defaulted on their debt obligations, filed for bankruptcy, and sold off all of their store locations, even the original 18 stores, leaving approximately $100 million dollars of unsatisfied liabilities owed to suppliers, landlords and laid-off employees.

ANSWER: Defendants deny the allegations in paragraph 3, except admit that the Debtors incurred operating losses, filed for bankruptcy on September 8, 2015, and sold off their store locations.

4.    In short, this is a case of corporate opportunism and greed run amok that inflicted massive financial harm on the debtor OpCo Entities and their creditor constituencies.

ANSWER: Defendants deny the allegations in paragraph 4.

B.    Summary of Comvest's Scheme

5.    Haggen started in 1933 as a family-owned business operating a single grocery store. Over the ensuing decades, the Haggen family built a successful operation and opened 29 additional stores in Washington and Oregon, all owned by a single entity, Haggen, Inc. (n/k/a HH Legacy, Inc.). In 2011, however, the Haggen family sold a majority interest in Haggen to a private equity firm, Comvest. Under Comvest's ownership and control, Haggen initially downsized its business, closing ten locations over the next two years. By 2014, Haggen was a somewhat smaller, but profitable, chain of 18 grocery stores and one stand-alone pharmacy that was not highly leveraged and was able to meet its obligations as they came due. That all came to an abrupt end in late 2014, when Albertson's announced that it was required to dispose of approximately 168 supermarkets (presumably at forced-sale prices) in five Western states in order to gain FTC approval of its acquisition of Safeway. Under Comvest's control, Haggen acquired 146 of those stores, a massive overnight expansion of more than 800% that it proposed to accomplish in a mere couple of months. For approximately $309 million, Holdings contracted

to purchase the 146 stores, including the valuable fee owned properties and long-term ground leases associated with many of the stores, having a combined appraised value in excess of $450 million.

ANSWER: Defendants deny the allegations in paragraph 5, except admit (a) that in 1933, the Haggen family operated  a single grocery store; (b) that the Haggen family opened 29 additional stores in Washington and Oregon between 1933 and 2011; (c) that the Haggen family sold a majority interest in those stores in 2011; (d) that in 2014, Haggen, Inc. was operating 18 grocery stores and one stand-alone pharmacy; and (e) that in December 2014, Alberston's sold 146 grocery stores for approximately $309 million.

6.      Instead of causing Holdings (or subsidiaries) to pay for and receive the Albertson's assets, Comvest concocted a series of complex and inter-dependent transactions designed to strip away the real estate assets to be acquired from Albertson's and place those real estate assets into separate PropCo entities to benefit itself, and isolate those real property assets from the reach of the Debtors' suppliers, landlords, employees and other creditors who would be surreptitiously relegated to look for payment only to insolvent "OpCo Entities" which were doomed to fail. Comvest's scheme had five key steps:

a.      First, Comvest devised and created a new corporate structure below Holdings, which it principally owned, under which both OpCo Entities (*i.e.*, "operating entities" that would incur liabilities to suppliers, landlords, employees, etc.) and putatively separate "asset-holding entities" (*i.e.*, non- debtor entities, including the PropCo Entities and the SLB Entities, that, as intended, had no creditors) were established.

b.      Second, the rights to acquire certain of the real estate assets from Albertson's were gratuitously "contributed," *i.e.*, transferred for no consideration, into the newly-created SLB Entities, which then immediately sold those properties to third parties for over $350 million pursuant to "sale leaseback" transactions under which the SLB Entities received the proceeds but the OpCo Entities (and not the SLB Entities) were made the obligors under the leases. A portion of the sale leaseback

proceeds were remitted to Albertson's to finance the transaction, and the balance was retained by the SLB Entities, for Comvest's benefit.

c.    Third, Comvest caused Holdings to gratuitously "contribute" its rights to acquire the remaining real estate assets from Albertson's into the newly-created PropCo Entities. The PropCo Entities were ostensibly separate and insulated from the operating entities, and thus their newly-acquired assets were intended to be shielded from the operating liabilities for Comvest's ultimate benefit.

d.    Fourth, a portion of the funds received by the SLB Entities in the sale-leaseback transactions was used to finance Holdings' acquisition of the remaining fee-owned and ground-lease properties that Albertson's transferred to the PropCo Entities.

e.    Finally, leases and sub-leases were created between the PropCo Entities and the OpCo Entities with substantial, above-market rent obligations imposed on the OpCo Entities that quickly contributed to the destruction of their profitability.

ANSWER: Defendants deny the allegations in paragraph 6, except admit (a) that ten (10) new business entities were created before Holdings executed its agreement with Albertson's, (b) that the SLB Entities (Property Holdings II and Haggen SLB) purchased thirty-nine (39) parcels of Real Property, (c) that the SLB Entities sold these parcels for approximately $358.8 million to third parties, who then leased them to either Operations or the OpCo Entities (OpCo North and OpCo South), (d) that the SLB Entities paid Alberston's approximately $232.4 million for those thirty-nine (39) parcels of Real Property, (e) that approximately $76.2 million of those proceeds were used to acquire twenty-eight (28) parcels of Real Property from Albertson's, (f) that PropCo North and PropCo South either leased or subleased Real Property to the OpCo Entities, and (g) that the remaining money—approximately $50.2 million—was transferred to the Debtors.

7.    The aggregate effect of these transactions was akin to a leveraged buyout, in that Comvest financed the Albertson's acquisition by leveraging the acquired real estate assets, and further did so in a way that attempted to hive off the most valuable real estate assets into entities

that would be shielded from the substantial liabilities associated with operating over 160 supermarkets in five states.

ANSWER: Defendants deny the allegations in paragraph 7.

8.    Comvest designed a structure of PropCo and OpCo Entities, together with an unconventional sale-leaseback structure whereby the SLB Entities received the sale proceeds, which were used to pay for the acquired real estate assets, but the OpCo Entities were forced to incur the massive rental obligations that were the functional equivalent of debt service obligations, to leverage the assets and accomplish its goal of ensuring that none of its capital was at risk. Although Comvest made a $50 million equity contribution, it structured the transaction in such a way that it received real estate assets worth more than $100 million and placed those assets into the PropCo Entities, which they fully intended to be bankruptcy-remote entities.

ANSWER: Defendants deny the allegations in paragraph 8, except admit that certain Comvest entities made a $50 million investment.

9.    The PropCo Entities are owned by Holdings, a holding company 80% owned by Comvest. Comvest's scheme was designed to minimize its risk profile by keeping the real property assets available for itself even if the OpCo Entities failed and outside creditors were left holding the proverbial empty bag.

ANSWER: Defendants deny the allegations in paragraph 9, except admit that PropCo North and PropCo South are owned by Property Holdings, which in turn is wholly owned by Holdings.

C.    Comvest's Failed Scheme Leads to the Debtors' Bankruptcy and Reveals Fraudulent Transfers and Breaches of Fiduciary Duty

10.    The transaction quickly proved to be a fiasco. Due to, among other things, the lack of preparedness on Comvest's and Haggen's part to properly transition the Albertson's

stores to Haggen's format and to operate the new, much larger grocery store chain, and the imposition of above-market rents on the OpCo Entities under the sale-leaseback and PropCo leases, the acquisition failed spectacularly, with devastating consequences for the OpCo Entities' creditors and employees.    Within nine (9) months, the OpCo Entities' supermarkets were experiencing massive operating losses, the Debtors defaulted on their credit line with PNC Bank, and were in full retreat.    On September 8, 2015, only months after consummating the last store acquisition, the Debtors filed for bankruptcy protection and moved quickly to liquidate 100 of the 146 stores that were acquired only months before.    Within months, every store – even the original 18 – was liquidated, selling for an aggregate sales price that satisfied the Debtors' secured debts, but left unsatisfied over $100 million of liabilities owed to suppliers, third party landlords, employees and other creditors.    By any measure, the acquisition was a debacle for all involved, except Comvest.    Relying on the convoluted corporate and capital structure it developed, Comvest tried to slink away from the smoldering ruins of Haggen with more than $100 million dollars' worth of real estate assets harbored in the non-debtor PropCo Entities.

ANSWER:  Defendants deny the allegations in paragraph 10, except admit that the Debtors incurred operating losses, filed for bankruptcy on September 8, 2015, and sold off their store locations.

11.    Regardless of whether the multiple interrelated transfers and transactions described herein are collapsed into a single transaction or are considered as a series of separate steps, they constitute a fraudulent transfer that cannot withstand scrutiny and must be set aside under the applicable provisions of Chapter 5 of the Bankruptcy Code.    Avoidance of these transfers under applicable law would thus make the assets of the PropCo and SLB Entities available to satisfy unpaid claims against the Debtors.

ANSWER: Defendants deny the allegations in paragraph 11.

12.   In addition, Plaintiff asserts claims arising from the same facts and circumstances for damages for breach of fiduciary duty, equitable subordination, substantive consolidation, and the disallowance of the PropCo Entities' claims against the Debtors' estates, including an eleventh-hour "loan" by the PropCo Entities to the OpCo Entities made in a failed effort to shore up their finances and avoid bankruptcy.

ANSWER: Defendants deny that there are any facts that support claims "for breach of fiduciary duty, equitable subordination, substantive consolidation, or disallowance of the PropCo Entities' claims again the Debtors' estates." Defendants admit that the PropCo North and PropCo South made a loan to the OpCo Entities, but deny the remainder of the allegations in paragraph 12.

THE PARTIES

D.   The Plaintiff

13.   On September 8, 2015 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code"). These cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. No trustee or examiner has been appointed in the Debtors' cases.

ANSWER: Defendants admit the allegations in paragraph 13.

14.   On September 21, 2015, the United States Trustee for Region 3 appointed the Committee to represent the interests of all general unsecured creditors in these cases pursuant to section 1102 of the Bankruptcy Code.

ANSWER: Defendants admit the allegations in paragraph 14.

15.    On January 14, 2016, Plaintiff, the Debtors, Comvest, the PropCo Entities, and Property Holdings II executed and filed that certain *Stipulation and Order (1) Granting Derivative Standing to the Official Committee of Unsecured Creditors to Commence Litigation Against Haggen Property Holdings, LLC, Haggen Property South, LLC, Haggen Property North, LLC, Haggen Property Holdings II, LLC, Haggen Property Holdings III, LLC, Comvest Partners and/or Directors and Officers Thereof; and (2) Providing for a Litigation Standstill*, at Docket No. 1216 (the "Initial Standing Stipulation"). On January 15, 2016, the Court approved the Initial Standing Stipulation. *See* Docket No. 1235.

ANSWER:  The referenced filings in paragraph 15 speak for themselves, and Defendants deny any allegations that are inconsistent with those filings.

16.    On April 29, 2016, Plaintiff and the Debtors executed and filed that certain Stipulation and Order Granting Derivative Standing to the Official Committee of Unsecured *Creditors to Commence Litigation Against Haggen SLB, LLC and/or its Past and/or Present Directors and Officers*, at Docket No. 1858 (the "Second Standing Stipulation" and together with the Initial Stipulation, the "Standing Stipulations"). On May 2, 2016, the Court approved the Second Standing Stipulation. *See* Docket No. 1858.

ANSWER:  The referenced filings in paragraph 16 speak for themselves, and Defendants deny any allegations that are inconsistent with those filings.

17.    Pursuant to the Standing Stipulations, Plaintiff has derivative standing to assert and prosecute the claims asserted in this Complaint on behalf of the Debtors and their bankruptcy estates.

ANSWER:  Paragraph 17 states a legal conclusion for which no answer is required. To the extent a response is required, Defendants deny the allegations in paragraph 17.

18.    Holdings, one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington.  Upon information and belief, prior to the Petition Date, Comvest or certain of its affiliates owned the majority of the interests of Holdings and acted as its manager.  Holdings, in turn, directly or indirectly owned and operated approximately 18 supermarkets and one pharmacy in Oregon and Washington before contracting to purchase 146 stores from Albertson's.

ANSWER:  Defendants admit the allegations in the first sentence of paragraph 18. Defendants admit the allegations in the third sentence of paragraph 18.  Defendants admit that certain Comvest entities owned an interest in Holdings, and deny the remaining allegations in paragraph 18.

19.    HH Operations, LLC (f/k/a Haggen Operations Holding, LLC) ("Operations"), one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, prior to the Petition Date, Operations was owned and managed by its sole member, Holdings.

ANSWER:  Defendants admit the allegations in paragraph 19, except deny that Operations was formed "at the time of the Albertson's transaction."  Operations was formed prior to the Albertson's Acquisition.

20.    HH OpCo South, LLC (f/k/a Haggen OpCo South, LLC) ("OpCo South"), one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware with a

business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, prior to the Petition Date, OpCo South was owned and managed by its sole member, Operations.

ANSWER: Defendants admit the allegations in paragraph 20, except deny that OpCo South was formed "at the time of the Albertson's transaction." OpCo South was formed prior to the Albertson's Acquisition.

21.   HH OpCo North, LLC (f/k/a Haggen OpCo North, LLC) ("OpCo North," and together with OpCo South, the "OpCo Entities"), one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, prior to the Petition Date, OpCo North was owned and managed by its sole member, Operations.

ANSWER: Defendants admit the allegations in paragraph 21, except deny that OpCo North was formed "at the time of the Albertson's transaction." OpCo North was formed prior to the Albertson's Acquisition.

22.   HH Acquisition, LLC (f/k/a Haggen Acquisition, LLC) ("Acquisition"), one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, prior to the Petition Date, Acquisition was owned and managed by its sole member, Operations.

ANSWER: Defendants admit the allegations in paragraph 22, except deny that Acquisition was formed "at the time of the Albertson's transaction." Acquisition was formed prior to the Albertson's Acquisition.

23.     HH Legacy, Inc. (f/k/a Haggen, Inc.) ("Haggen, Inc."), one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington.  Upon information and belief, prior to the Petition Date, Haggen, Inc. was owned and managed by its sole member, Acquisition.

ANSWER:  Defendants deny the allegations in Paragraph 23, except admit that Haggen, Inc. has a business address of 2211 Rimland Drive, Bellingham, Washington.

E.      The Defendants

24.     Defendant CGH is a limited liability company formed under the laws of the state of Delaware.  Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808 ("CSC"), is CGH's registered agent.

ANSWER:  Defendants admit the allegations in paragraph 24.

25.     Upon information and belief, Defendant CIP III is a limited partnership formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  CSC is CIP III's registered agent.

ANSWER:  Defendants admit the allegations in paragraph 25.

26.     Upon information and belief, Defendant CIP IV is a limited partnership formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  CSC is CIP IV's registered agent.

ANSWER:  Defendants admit the allegations in paragraph 26.

27.     Upon information and belief, Defendant CHH III is a limited liability company formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  CSC is CHH III's registered agent.

ANSWER:  Defendants admit the allegations in paragraph 27.

28.    Upon information and belief, Defendant CHH IV is a limited liability company formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH. CSC is CHH IV's registered agent.

ANSWER: Defendants admit the allegations in paragraph 28.

29.    Upon information and belief, Defendant Comvest Advisors is a limited liability company formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH. CSC is Comvest Advisors' registered agent.

ANSWER: Defendants admit the allegations in paragraph 29.

30.    Defendant Property Holdings is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, at all relevant times prior to the Petition Date, Property Holdings had no officers or employees and was owned and managed by its sole member, Debtor Holdings.

ANSWER: Defendants admit the allegations in paragraph 30, except deny that Property Holdings had no officers or employees.

31.    Defendant PropCo South is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, at all relevant times prior to the Petition Date, PropCo South had no officers or employees and was owned and managed by its sole member, non-Debtor Defendant Property Holdings.

ANSWER: Defendants admit the allegations in paragraph 31, except deny that PropCo South had no officers or employees.

32.     Defendant PropCo North is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware with a business address of 2211 Rimland Drive, Bellingham, Washington.  Upon information and belief, at all relevant times prior to the Petition Date, PropCo North had no officers or employees and was owned and managed by its sole member, non-Debtor Defendant Property Holdings.

ANSWER:  Defendants admit the allegations in paragraph 32, except deny that PropCo North had no officers or employees.

33.     Defendant Property Holdings II is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware, with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, at all relevant times prior to the Petition Date, Property Holdings II had no officers or employees and was owned and managed by its sole member, Debtor Holdings.

ANSWER:  Defendants admit the allegations in paragraph 33, except deny that Property Holdings II had no officers or employees.

34.     Defendant Haggen SLB is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware, with a business address of 2211 Rimland Drive, Bellingham, Washington. Upon information and belief, at all relevant times prior to the Petition Date, Haggen SLB had no officers or employees and was owned and managed by its sole member, Debtor Acquisition.

ANSWER:  Defendants admit the allegations in paragraph 34, except deny that Haggen SLB had no officers or employees.

35.     Upon information and belief, Defendant John Caple is an individual residing in the state of Florida.  At all relevant times, Mr. Caple was a Partner in Comvest Partners.  In

addition, Mr. Caple has served as (a) a Manager of Holdings since at least January 1, 2014, as well as President and Chief Executive Officer for the period beginning no later than January 1, 2014 through January 30, 2015, and (b) a Director of Haggen, Inc. since at least January 1, 2014.

ANSWER: Defendants deny the allegations in paragraph 35, except admit (a) that Mr. Caple is an individual residing in Florida, (b) that Mr. Caple was a Partner at Comvest Partners until January 31, 2016, (c) that he served as a Manager and as President and Chief Executive Officer at Holdings, and (d) that he served as a Director of Haggen, Inc.

36.    Upon information and belief, Defendant Cecilio Rodriguez is an individual residing in the state of Florida. At all relevant times, Mr. Rodriguez was the Chief Financial Officer of Comvest Partners. In addition, Mr. Rodriguez has served as (a) Secretary and Chief Financial Officer of Holdings for the period November 24, 2014 through January 30, 2015, as well as a Manager of Holdings since November 24, 2014, and (b) a Director of Haggen, Inc. for the period beginning no later than September 1, 2014 through December 6, 2014.

ANSWER: Defendants admit the allegations in paragraph 36.

37.    Upon information and belief, Defendant Michael Niegsch is an individual residing in the state of Florida. At all relevant times, Mr. Niegsch was a Vice President of Comvest Partners. In addition, Mr. Niegsch has served as a Manager of Holdings since January 30, 2015.

ANSWER: Defendants admit the allegations in paragraph 37.

38.    Upon information and belief, Defendant John Clougher is an individual residing in the state of Washington. Mr. Clougher has served as Chief Executive Officer of (a) Holdings since January 30, 2015, as well as a Manager of Holdings since that time, (b) Acquisition since December 6, 2014, (c) Haggen, Inc. since September 8, 2014, as well as President since that

16

time, Treasurer for the period September 8, 2014 through January 1, 2015, and Director since December 6, 2014, (d) Operations since December 22, 2014, (e) OpCo North since December 2, 2014, as well as President since that time, (f) Haggen SLB since December 2, 2014, as well as President since that time, (g) Property Holdings for the period December 2, 2014 through October 8, 2015, (h) Property Holdings II for the period December 2, 2014 through October 8, 2015, (i) Haggen Property Holdings III, LLC ("Property Holdings III") for the period December 2, 2014 through October 8, 2015, and (j) PropCo North for the period December 2, 2014 through October 8, 2015.

ANSWER: Defendants admit the allegations in the first sentence of paragraph 38. Defendants admit the allegations in the second sentence of paragraph 38 as to the positions held, but deny the remaining allegations in paragraph 38.

39.    Upon information and belief, Blake Barnett is an individual residing in the state of Washington. Mr. Barnett has served as the Chief Financial Officer of (a) Holdings since January 30, 2015, (b) Acquisition since January 30, 2015, (c) Haggen, Inc. since January 1, 2015, (d) Operations since December 22, 2014, (e) OpCo North since December 2, 2015, (f) Property Holdings from December 2, 2014 through October 8, 2015, (g) Property Holdings II from December 2, 2014 through October 8, 2015, (h) Property Holdings III from December 2, 2014 through October 8, 2015, (i) Haggen SLB since December 2, 2015, (j) OpCo South since December 2, 2014 (as well as Vice President since October 29, 2015), (k) PropCo South from December 2, 2014 through October 8, 2015, and (l) PropCo North from December 2, 2014 through October 8, 2015.

ANSWER: Defendants admit the allegations in the first sentence of paragraph 39. Defendants admit the allegations in the second sentence of paragraph 39 as to the positions held, but deny the remaining allegations in paragraph 39.

40.    Upon information and belief, William Shaner is an individual residing in the state of Washington. Mr. Shaner served as (a) a Manager and President of Haggen Holdings LLC (n/k/a HH Liquidation, LLC) from January 30, 2015 to September 2, 2015; (b) President of Acquisition from January 30, 2015 to September 2, 2015; (c) President of Operations from December 22, 2014 to September 2, 2015; and (d) President and Chief Executive Officer of OpCo South from December 2, 2014 to September 2, 2015.

ANSWER: Defendants admit the allegations in the first sentence of paragraph 40. Defendants admit the allegations in the second sentence of paragraph 40 as to the positions held, but deny the remaining allegations in paragraph 40.

41.    Upon information and belief, Derrick Anderson is an individual residing in the state of Washington. Mr. Anderson has served as the Secretary of (a) Holdings since January 30, 2015, (b) Acquisition since December 6, 2014, (c) Haggen, Inc. since September 8, 2014, (d) Operations since December 22, 2014, (e) OpCo South since December 2, 2014 (as well as Vice President since October 29, 2015), (f) OpCo North since December 2, 2014, (g) Haggen SLB since December 2, 2014, (h) Property Holdings from December 2, 2014 through October 8, 2015, (i) Property Holdings II from December 2, 2014 through October 8, 2015, (j) Property Holdings III from December 2, 2014 through October 8, 2015, (k) PropCo North from December

18

2, 2014 through October 8, 2015, (l) PropCo South from December 2, 2014 through October 8, 2015.[2]

ANSWER:  Defendants admit the allegations in the first sentence of paragraph 41. Defendants admit the allegations in the second sentence of paragraph 41 as to the positions held, but deny the remaining allegations in paragraph 41.

### JURISDICTION AND VENUE

42.    The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and Plaintiff confirms its consent pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of final orders by the Court for the matters contained herein to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

ANSWER:  Defendants aver that the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* speaks for itself, and Defendants deny any allegations that are inconsistent with that Order.

---

[2]    For the avoidance of doubt, the Officers and Directors are being sued solely in their capacities as officers and directors of the applicable Haggen entities and not in their capacities as officers and directors of any Comvest entity. However, as applicable, the relationship between each Director and Comvest is alleged.

## STATEMENT OF FACTS

A.    Haggen's Background

43.    Haggen, Inc. was founded in 1933 as a single grocery store.  In the ensuing decades, the Haggen family successfully operated the company and opened additional stores.  In 1962, the Haggen family concentrated all of their business activities in a single corporate entity, Haggen, Inc.  By 2011, Haggen, Inc. owned and operated a successful 30-store chain of grocery stores in the states of Washington and Oregon.

ANSWER:  Defendants admit the allegations in paragraph 43, except deny that the Haggen family "successfully" operated the company or that Haggen, Inc. owned and operated a "successful" 30-store chain of grocery stores.

44.    In 2011, the Haggen family sold an 80% equity interest in Haggen, Inc. to a Florida-based private equity firm, Comvest.  Specifically, defendant CGH, a Comvest entity, purchased its majority stake in Haggen, Inc. through two limited liability companies that it formed for that purpose.  Thus, in January 2011, CGH formed Holdings, and acquired 80% of the membership interests of that entity with the Haggen family obtaining the balance of the membership interests.  At about the same time, CGH also formed Acquisition.  Holdings solely owned the membership interests in Acquisition, and Acquisition owned all of the stock of Haggen, Inc.

ANSWER:  Defendants admit the allegations in paragraph 44, except clarify that the two limited liability companies that CGH formed were Holdings and Acquisition.

45.    Over the next four years, Haggen closed a number of stores and as of the end of 2014, Haggen operated 18 grocery stores and one pharmacy on a profitable basis.

ANSWER:  Defendants admit the allegations in paragraph 45.

B.    Overview of the Albertson's Transaction and Related Structuring

46.    As described in more detail below, in December 2014, Holdings contracted to acquire 146 grocery stores and related real estate assets from Albertson's (the "Albertson's Acquisition").

ANSWER:    Defendants admit the allegations in paragraph 46, except deny the allegation that the "detail below" accurately describes the Albertson's Acqustion.

47.    From when the Albertson's opportunity first presented itself earlier in 2014, Comvest was focused on making a "real estate play" as opposed to simply expanding the Haggen supermarket chain, as well as minimizing its risk in the transaction and enriching itself even at the expense of outside creditors.    After first learning certain Albertson's stores in Washington and Oregon were going to come to market in or about August 2014, Comvest ████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████    By November, after the package of stores to be acquired was expanded, Comvest had settled on a path forward.

ANSWER:    ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████

48.    A total of 146 supermarkets and associated real estate (fee owned interests, long-term ground leases and store leases) were to be acquired by Holdings from Alberton's under the final purchase agreement.    Seventy-nine (79) of the supermarkets acquired from Albertson's were stores that were leased by Albertson's or Safeway from third-party landlords (the "Leased Stores"), while the other sixty-seven (67) stores (the "Real Property") either were situated on very valuable fee-owned real estate or were stores built and/or owned by Albertson's or Safeway

but which were subject to very valuable long-term ground leases that Albertson's had with third-party landlords.

ANSWER: Defendants admit the allegations in paragraph 48, except deny the allegation that either the fee-owned real estate or the long-term ground leases were "very valuable."

49.    Unlike the Real Property, which were the subject of the convoluted transactions challenged herein, the Leased Stores were simply assigned by Holdings to the OpCo Entities, and the OpCo Entities thereafter paid rent directly to the third-party landlords. As a result, the Leased Stores are not the subject of any of Plaintiff's fraudulent transfer claims.

ANSWER: Defendants deny the allegations in paragraph 49, except admit that the OpCo Entities paid rent to third-party landlords for seventy-nine (79) of the stores acquired from Albertson's.

50.    However, at Comvest's direction, the valuable Real Property assets acquired by Holdings (the purchaser under the agreement with Albertson's) were transferred for no consideration to one of the newly-created "bankruptcy-remote" entities (i.e., either one of the PropCo Entities or one of the SLB Entities), with the dual intention leverage them to fund the acquisition and placing their substantial remaining equity value beyond the reach of the claims of the OpCo Entities' suppliers, employees and other creditors, in a series of simultaneous, inter-related transactions.

ANSWER: ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████.

51.     Comvest and the Officers and Directors carried out this plan with mechanical precision, as a multitude of entities and transaction documents had to be crafted to achieve their convoluted scheme.  First, before executing its agreement with Albertson's, Comvest and the Officers and Directors caused Holdings to create an elaborate new corporate structure -- including the creation of at least ten (10) new entities -- designed to separate the operating companies from bankruptcy-remote entities that would receive and hold the valuable Real Property and the rights and benefits related thereto for Holdings' and ultimately Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 51, except admit (a) that ten (10) new entities were created before Holdings executed its agreement with Albertson's, (b) that the SLB Entities purchased thirty-nine (39) Real Property Stores from Albertson's, and (c) that the PropCo North and PropCo South purchased some of the twenty-eight (28) remaining Real Property Stores from Albertson's.

52.    After establishing the new corporate structure, Holdings "contributed" or transferred 39 of the 67 parcels of Real Property to one of the SLB Entities for no consideration, whereupon they were immediately sold by the applicable SLB Entity in atypical "sale leaseback transactions" to third parties for an aggregate price of approximately $358.8 million.  Upon information and belief, the sale proceeds were distributed, directly or indirectly, as follows:  (a) approximately $232.4 million was sent to Albertson's to satisfy a portion of Holding's overall purchase price; and (b) approximately $126.4 million was sent to the SLB Entities (and of that amount, approximately $76.2 million was sent to Albertson's to purchase certain Real Property on behalf of the PropCo Entities).

ANSWER:  Defendants deny the allegations in paragraph 52, except admit (a) that the SLB Entities purchased thirty-nine (39) Real Property Stores from Albertson's, (b) that the SLB Entities sold the Real Property associated with the thirty-nine (39) Real Property Stores to third-parties for approximately $358.8 million, (c) that approximately $232.4 million was sent to Albertson's to satisfy the purchase price for the thirty-nine (39) Real Property Stores, and (d) that approximately $76.2 million of the approximately $126.4 million remaining was sent to Albertson's to pay for the twenty-eight (28) remaining Real Property Stores.  Defendants aver that the approximately $50.2 million left over was transferred to the Debtors.

53.    What made the sale-leaseback transactions atypical is that the sellers, the SLB Entities, received the economic benefits, *i.e.*, the sale proceeds, but in a departure from conventional sale-leaseback transactions, the OpCo Entities -- not the SLB Entities -- were burdened with leasing back the properties, and at rental rates that were inflated well-above market in order to generate more sale proceeds.  In this manner, the proceeds from the sale-

leaseback sales were used for Comvest's ultimate benefit (since the SLB Entities, the PropCo Entities and Holdings were intended to be bankruptcy-remote entities), but the financial obligations incurred to acquire those properties were imposed on the OpCo Entities, to the detriment of their unsuspecting suppliers and other creditors.

ANSWER: Defendants deny the allegations in paragraph 53. Defendants aver that the excess proceeds from SLB Entities' sale of the thirty-nine (39) parcels of Real Property—approximately $50.2 million—was transferred to the Debtors.

54. The remainder of the 28 Real Property assets were gratuitously transferred into one of the PropCo Entities and then leases were created between the applicable Propco Entity and one of the OpCo Entities at inflated rents, thereby extracting more value for Comvest. For those parcels of Real Property subject to third-party ground leases that were conveyed to one of PropCo Entities, the applicable the PropCo Entity (a) assumed the obligations under such ground lease, but (b) then imposed a sub-lease on the OpCo Entities that required payment of both the rent due under the ground lease, plus inflated "market rent," resulting in total rent substantially in excess of the rent owed under the underlying ground lease and fair market rent.

ANSWER: Defendants deny the allegations in paragraph 54, except admit (a) that Holdings transferred to PropCo North and PropCo South the right to acquire some of the remaining twenty-eight (28) Real Property Stores from Albertson's, (b) that the fourteen (14) wholly-owned parcels were leased to the OpCo Entities, and (c) that the other fourteen (14) parcels were subleased to the OpCo Entities.

55. Upon information and belief, the aggregate value of the Real Property assets Holdings ended up gratuitously transferring to the PropCo Entities was approximately $118.3

million.  In addition, the PropCo Entities were further enriched by the rents thereafter paid by the OpCo Entities to the PropCo Entities following the closing of the transaction.

ANSWER:  Defendants deny the allegations in paragraph 55, except admit that the PropCo North and PropCo South did receive rents from the OpCo Entities.

56.    The acquisition of the various properties from Albertson's was orchestrated to set up the assets in a complicated web of interrelated companies and transactions, as depicted in the following manner:

ANSWER:  Defendants deny the allegations in paragraph 56, and deny that the figure included in paragraph 56 is accurate.



57.     While Comvest planned the transaction to benefit the PropCo Entities, Holdings

and ultimately itself, the economic burdens of the transaction were placed on the OpCo Entities

in the form of above-market rents imposed on PropCo and sale leaseback stores, or in the case of

properties subject to ground leases, substantial increases in rent above market rates. The massive

and inflated rental obligations incurred by the OpCo Entities contributed directly to their rapid

collapse, as almost immediately after the closing a large number of previously profitable stores

began losing money and continued to do so in the ensuing months leading up to Haggen's precipitous bankruptcy filing and liquidation.

ANSWER: Defendants deny the allegations in paragraph 57.

58.    Management was not prepared to operate such a large chain of grocery stores and their complete failure to timely and effectively remodel and transition the Albertson's stores to the Haggen banner contributed to the Debtors' collapse. In just several months' time, the Debtors defaulted on their bank debt and filed for bankruptcy with a plan to immediately sell most of the stores they had just acquired, and ultimately all of the stores were liquidated leaving a huge financial hole.

ANSWER: Defendants deny the allegations in paragraph 58, except admit that the Debtors filed for bankruptcy on September 8, 2015 and sold off their stores.

59.    Unsuspecting creditors are owed approximately $100 million for which they believed they could look to all of Haggen's assets for satisfaction. Since Holdings was and remains a privately held entity, with few exceptions, vendors, landlords and other creditors doing business with the Debtors were totally unaware until the bankruptcy filing that Comvest and Holdings had secretly developed and implemented their scheme to balkanize the assets and place the most valuable acquired assets, the Real Property, beyond their reach in putatively bankruptcy-remote PropCo Entities. The Debtors' bankruptcy filing has exposed Comvest's scheme to enrich itself at the expense of the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 59, except lack information sufficient to admit or deny the allegations regarding what "vendors, landlords and other creditors" were aware or not aware of prior to the bankruptcy filing.

28

60.     To summarize, at Comvest's direction, Holdings (a) created a new and elaborate corporate structure designed to separate and shield the valuable Real Property from Haggen's operating liabilities and creditors, (b) used a significant portion of the Real Property acquired from Albertson's to finance the acquisition, (c) placed the remaining proceeds and Real Property into the PropCo Entities ostensibly beyond the reach of creditors for no consideration, and (d) siphoned substantial additional value from the OpCo Entities by imposing leases with above-market rent obligations. Each of these transactions was actually or constructively fraudulent.

ANSWER:  Defendants deny the allegations in paragraph 60, except admit that some of the proceeds from the sale of some Real Property was used to pay the purchase price for the Real Property Stores to Albertson's in connection with the Albertson's Acquisition.

61.     The transactions should also be collapsed and viewed as a single, integrated transaction because each of the Defendants knew of the components, all of which were coordinated and developed together and conditioned on one another.

ANSWER:  Defendants deny the allegations in paragraph 61.

C.      Specific Elements of the Albertson's Acquisition and Related Structuring

62.     As indicated, Comvest concocted and implemented a lengthy list of steps and transactions to effectuate its scheme.  The salient steps, transactions, and sequence of events are as follows.

ANSWER:  Defendants deny the allegations in paragraph 62.

63.     In March 2014, AB Acquisition LLC (Albertson's parent company) and Safeway executed a merger agreement pursuant to which AB Acquisition LLC acquired all of Safeway's outstanding common stock.

29

ANSWER: Defendants lack information sufficient to admit or deny the allegations in paragraph 63.

64.    The Federal Trade Commission (the "FTC") required Albertson's to divest 168 stores as a condition to closing. Haggen determined to submit a bid and prepared and presented a business plan to Albertson's and the FTC and thereby gained conditional approval to acquire 146 of those stores.

ANSWER: Defendants admit the allegations in paragraph 64, except deny that only Albertson's was required to divest 168 stores. Rather, the FTC required both Albertson's and Safeway to divest 168 stores.

65.    Thereafter, Albertson's LLC and Albertson's Holdings LLC, as sellers, and Holdings, as the buyer, entered into that certain Asset Purchase Agreement, dated as of December 10, 2014 (the "APA").

ANSWER: Defendants admit the allegations in paragraph 65.

66.    On January 27, 2015, the FTC issued an order approving Holdings' acquisition of 146 stores from Albertson's.

ANSWER: Defendants admit the allegations in paragraph 66.

67.    On or about January 30, 2015, Comvest Advisors entered into that certain Amended and Restated Management Agreement with Holdings, Haggen, Inc., OpCo South and OpCo North (together with the original Management Agreement between Comvest Advisors and Haggen, Inc., dated August 29, 2011, and any amendments thereto, the "Comvest Management Agreement"). Upon information and belief, Haggen paid Comvest certain fees and expenses, purportedly pursuant to the Comvest Management Agreement (such fees and expenses, collectively, the "Comvest Fees").

ANSWER: Defendants admit the allegations in the first sentence of paragraph 67. Defendants deny the allegations in the second sentence of paragraph 67.

68.    The Albertson's Acquisition and Haggen's working capital requirements were funded by: (a) proceeds from the Sale Leaseback Transactions (as defined below), (b) a capital contribution from Comvest, and (c) the PNC Revolver (as defined below), which essentially was used to purchase the store inventory.

ANSWER: Defendants deny the allegations in paragraph 68, except admit that Haggen's working capital requirements were funded by (a) the proceeds from the SLB Entities' sale of the thirty-nine (39) parcels of Real Property, and (b) the capital contribution from Comvest.

69.    Upon information and belief, in connection with the Albertson's Acquisition, Comvest made an equity investment in Holdings in the aggregate amount of $51.5 million (the "Comvest Investment"). This investment was made pursuant to two Subscription Agreements dated January 30, 2015, whereby (i) CHH III purportedly paid $10.815 million for a certain number of Holdings' Class A Units, and (ii) CHH IV purportedly paid $40.685 million for a certain number of Holdings' Class A Units. John Caple, a Comvest Partner and Manager of Holdings, signed each Subscription Agreement on behalf of both Holdings and the applicable Comvest entity.

ANSWER: Defendants admit the allegations in paragraph 69, except deny that Comvest made an "equity investment" and that these payments were "purportedly" made.

70.    Upon information and belief, Haggen paid Comvest $1.5 million as a "transaction fee" in connection with the Comvest Investment (together with the Comvest Fees, the "Comvest Payments"), effectively reducing the Comvest Investment to $50 million.

ANSWER: Defendants deny the allegations in paragraph 70, except admit that Haggen paid the $1.5 million transaction fee.

71.    Comvest attempted to make the Comvest Investment a riskless endeavor. As described herein, while Comvest was purportedly making a $50 million equity investment in Holdings, it was also simultaneously executing a scheme to shelter for its benefit real estate assets with a net value of over $118 million.

ANSWER: Defendants deny the allegations in paragraph 71, except admit that certain Comvest entities made a $51.5 million investment in Holdings.

72.    On February 12, 2015, Haggen, Inc., OpCo North and OpCo South, as borrowers, and PNC Bank, N.A., as agent for itself and certain lenders, entered into a *Revolving Credit and Security Agreement*, as amended on February 20, 2015 (the "PNC Revolver"). Under the PNC Revolver, PNC provided the Debtors with a revolving line of credit of up to $210 million and a "Swing Loan" facility of up to $23 million. Holdings, the PropCo Entities and the SLB Entities were not liable on the PNC Revolver.

ANSWER: Defendants admit the allegations in the first sentence of paragraph 72. The Revolving Credit and Security Agreement speaks for itself, and Defendants deny any remaining allegations that are inconsistent with that Agreement.

73.    Upon information and belief, the PNC Revolver was intended to provide the newly-expanded Haggen enterprise with working capital to finance, among other things, the purchase of inventory and the expected retro-fitting of stores and transitional expenses.

ANSWER: Defendants deny the allegations in paragraph 73, except admit that the PNC Revolver was one source of general working capital for the Debtors.

32

74.    The real estate purchase was funded through the Comvest's elaborate plan for the Real Property.  Pursuant to its agreement with Albertson's, Holdings acquired and converted each of the 146 stores on a rolling basis during the period from February 17, 2015, through around June 19, 2015.  Pursuant to the APA, Holdings paid Albertson's for each store on each store's "Closing Date."  But Holdings did not retain any of the valuable Real Property it purchased, which had an appraised value of approximately $450 million, but rather transferred the Real Property into the PropCo and SLB Entities for Comvest's ultimate benefit.

ANSWER:  Defendants deny the allegations in paragraph 74, except admit (a) that each of the 146 stores was acquired and converted on a rolling basis, and (b) that each store was paid for on each store's "Closing Date."

D.    Comvest Segregates Albertson's Real Estate Assets for Itself

75.    Comvest caused (a) some of the Real Property to be conveyed to the SLB Entities and then immediately sold by the SLB Entities as part of the Sale Leaseback Transactions, with the proceeds being used, in part, to pay Albertson's, and (b) the remaining Real Property assets to be transferred to the bankruptcy-remote PropCo Entities.  Thus, through an interrelated series of transactions, a portion of the Real Property assets was used to finance the Albertson's Acquisition, while the remainder was stripped away from the operating assets and secreted in the PropCo Entities for Comvest's ultimate benefit for no consideration.  These steps are detailed below.

ANSWER:  Defendants deny the allegations in paragraph 75, except admit (a) that the SLB Entities purchased thirty-nine (39) Real Property Stores from Albertson's, (b) that the SLB Entities sold the Real Property associated with the thirty-nine (39) Real Property Stores to third-parties, (c) that most of the proceeds from those transactions were used to pay Albertson's the purchase price for the thirty-nine (39) Real Property Stores, and (d)

33

that PropCo North and PropCo South purchased some of the remaining twenty-eight (28) Real Property Stores.

E.   **Step 1:  Formation of a New Corporate Structure Including PropCo, SLB and OpCo Entities**

76.     As set forth above, from 1962 to 2011, the Haggen stores were owned and operated through a singular corporate entity, Haggen, Inc., that had no affiliates or subsidiaries. Thus, for almost fifty years, Haggen's organizational "chart" looked like this:

ANSWER:  Defendants deny the allegations in paragraph 76.



77.     In 2011, as part of Comvest's acquisition of a controlling interest in Haggen, Holdings and Acquisition were formed. The equity owners of the enterprise (Comvest and members of the Haggen family, through a corporate vehicle named HHI Corp.) owned the membership interests in Holdings, which owned all of the membership interests in Acquisition, which owned all of common stock in Haggen, Inc. as follows:

ANSWER:  Defendants admit the allegations in paragraph 77.



78.    This relatively simple corporate structure remained in place until about a week before the APA was signed in late 2014.  At that time, Comvest, through the exercise of its majority ownership and control of Holdings, created a complex web of new entities for the purpose of acquiring and separating the valuable Real Property from the OpCo Entities' operations and associated liabilities, all for its own benefit.

ANSWER:  Defendants deny the allegations in paragraph 78, except admit that new entities were created before Holdings executed the agreement with Albertson's.

79.    To that end, Comvest caused Holdings to create ten new entities.  Five of those entities, consisting of the PropCo Entities and the SLB Entities, were the recipients of the Real Property assets, and are purportedly "bankruptcy remote," as Comvest intended that those entities would not incur any material liabilities, such that their equity value would inure to Holdings, itself a holding company, and its principal owner, Comvest.  Three of the other new entities -- the OpCo Entities -- were created to act as the operating entities and were saddled with

above-market leases and all other operating liabilities, but without adequate means to satisfy them.

ANSWER: Defendants deny the allegations in paragraph 79, except admit (a) that ten (10) new entities were created before Holdings executed the agreement with Albertson's; (b) that three of those entities were the "PropCo Entities" (PropCo North, PropCo South, and Property Holdings); (c) that two of those entities were the "SLB Entities" (Property Holdings II and Haggen SLB); and (d) that two additional entities—the "OpCo Entities" (OpCo North and OpCo South)—were also created.

80.    Specifically, on December 2, 2014 (just eight days before the APA was executed), Comvest caused Holdings to create:

ANSWER: Defendants admit the allegations in paragraph 80, except deny that Property Holdings, PropCo South, PropCo North, Property Holdings II, and Haggen SLB "never had any independent officers or employees."

- Property Holdings, a PropCo Entity whose membership interests are solely owned by Holdings, and which, prior to the Petition Date, never had any independent officers or employees;

- PropCo South, a PropCo Entity whose membership interests are solely owned by Property Holdings, and which, prior to the Petition Date, never had any independent officers or employees;

- PropCo North, a PropCo Entity whose membership interests are solely owned by Property Holdings, and which, prior to the Petition Date, never had any independent officers or employees;

- Property Holdings II, an SLB Entity whose membership interests are solely owned by Holdings, and which, prior to the Petition Date, never had any independent officers or employees;

- Haggen SLB, an SLB Entity whose membership interests are solely owned by Acquisition, and which, prior to the Petition Date, had no independent officers or employees;

36

- Operations, the holding company for the OpCo Entities whose membership interests are solely owned by Holdings;

- OpCo South, an OpCo Entity whose membership interests are solely owned by Operations;

- OpCo North, an OpCo Entity whose membership interests are solely owned by Operations;

- Haggen Property Holdings III, an entity whose membership interests are solely owned by Holdings; and

- Haggen Fuel Holdings, LLC, an entity whose membership interests are solely owned by Holdings.

81.    Each of the PropCo Entities and SLB Entities was intended to be a bankruptcy remote special purpose entity and was established for the sole purpose of shielding the assets held by those entities from the OpCo Entities' creditors.

ANSWER:  Defendants deny the allegations in paragraph 81.

82.    Thus, on the eve of the signing of the Albertson's APA, Haggen's radically different new corporate structure looked as follows:

ANSWER:  Defendants admit that the structure below reflects the structure that existed at the time of the Agreement and was the structure that was approved by Albertson's, PNC Bank, and the FTC.  Except as specifically admitted, the remaining allegations in paragraph 82 are denied.



83.    From the time of their formation in December 2014 through the Petition Date,

PropCo South and PropCo North:

      (a)    had no independent managers, but were managed solely by their corporate owner, Property Holdings,

ANSWER:  Defendants deny the allegations in paragraph 83(a), except admit that

PropCo South and PropCo North were managed by their sole member, Property Holdings.

      (b)    had no creditors (other than PNC, to which the PropCo Entities allegedly provided various mortgages/deeds of trust to secure a limited guarantee, and certain insider obligations),

ANSWER:  Defendants deny the allegations in paragraph 83(b).

      (c)    did not create or maintain any board minutes,

ANSWER:  Defendants admit the allegations in paragraph 83(c).

      (d)    did not utilize or maintain their own business forms or domain name, and

ANSWER:  Defendants admit the allegations in paragraph 83(d).

      (e)    maintained their business addresses, their books and records and their e-mail server at the Debtors' location.

ANSWER: Defendants admit the allegations in paragraph 83(e).

84.    From the time of their formation in December 2014 through the Petition Date, the

SLB Entities:

      (a)    had no independent managers, but were managed solely by their respective corporate owner,

ANSWER: Defendants deny the allegations in paragraph 84(a), except admit that Haggen SLB was managed by its sole member, Acquisition, and that Property Holdings II was managed by its sole member, Holdings.

      (b)    had no creditors,

ANSWER: Defendants admit the allegations in paragraph 84(b).

      (c)    did not create or maintain any board minutes,

ANSWER: Defendants admit the allegations in paragraph 84(c).

      (d)    did not utilize or maintain their own business forms or domain name, and

ANSWER: Defendants admit the allegations in paragraph 84(d).

      (e)    maintained their business addresses, their books and records and their e-mail server at the Debtors' location.

ANSWER: Defendants admit the allegations in paragraph 84(e).

F.    **Step 2:  Holdings Transfers the Real Property to the Bankruptcy Remote Entities for No Consideration**

85.    With this new corporate structure in place, Comvest and the Officers and Directors caused Holdings to transfer the Real Property assets to the PropCo Entities and the SLB Entities, all of which were intended to be "bankruptcy remote," for no consideration.

**ANSWER:  Defendants deny the allegations in paragraph 85, except admit (a) that the SLB Entities purchased thirty-nine (39) Real Property Stores and then sold them to third-parties, (b) that the SLB Entities used the proceeds from those transactions to pay the**

purchase price for each of those Real Property Stores, and (c) that some of the remaining twenty-eight (28) Real Property Stores were purchased by PropCo North and PropCo South.

86.     Pursuant to the APA, each of the 146 stores, including the real estate associated with such store, was acquired from Albertson's on a rolling basis and was subject to its own closing. As each store, whether fee owned or subject to a ground lease, was acquired, the rights to the associated Real Property were transferred to one of the PropCo Entities or one of the SLB Entities, as applicable, through a series of "Contribution Agreements" (each a "Contribution Agreement" and collectively, the "Contribution Agreements"), while the operations at each store were to be conducted by the OpCo Entities under leases with either the PropCo Entities or the sale leaseback landlords, as applicable.

ANSWER: Defendants deny the allegations in Paragraph 86, except admit (a) that the 146 stores closed on a rolling basis; (b) that the SLB Entities purchased thirty-nine (39) Real Property Stores; (c) that PropCo North and PropCo South purchased some of the remaining twenty-eight (28) Real Property Stores; and (d) that OpCo Entities entered into leases or subleases with the landlords and/or owners of each of the sixty-seven (67) Real Property Stores.

87.     Beginning on February 17, 2015, and continuing from time to time through June 8, 2015, Holdings executed at least 15 Contribution Agreements pursuant to which Holdings "contributed" or transferred the right to acquire certain specified Real Property and related assets to various non-Debtor affiliates for no consideration.

ANSWER: Defendants deny the allegations in paragraph 87, except admit that Holdings executed a number of agreements which transferred certain rights in the Real

Property to the SLB Entities (Property Holdings II and Haggen SLB), PropCo South, or PropCo North.

88.    In each of the transactions subject to the Contribution Agreements, the right to acquire the specified Real Property was "contributed" or transferred from Holdings, directly or indirectly, to one of the PropCo Entities (PropCo South or PropCo North) or one of the SLB Entities (Property Holdings II and Haggen SLB) for no consideration.

ANSWER: Defendants deny the allegations in paragraph 88, except admit that Holdings executed a number of agreements which transferred certain rights in the Real Property to the SLB Entities (Property Holdings II and Haggen SLB), PropCo South, or PropCo North.

89.    Each of the Contribution Agreements:  (a) utilized virtually the same form; (b) identified the Real Property that was being contributed; (c) was signed by the same eight entities -- Holdings, Haggen SLB, Operations, Acquisition, Property Holdings, Property Holdings II, PropCo South and PropCo North -- regardless of whether each such entity was actually a party to the transaction subject to the particular Contribution Agreement; and (d) omitted any reference to any consideration being paid for the rights being transferred.  One person -- Defendant Derrick Anderson -- signed every insider Contribution Agreement, purportedly as Secretary for all eight entities.

ANSWER: Defendants deny the allegations in paragraph 89.

G.    Step 3:  Finance the Acquisition Through Sale Leaseback Agreements

90.    Certain of the Real Property that was subject to the Contribution Agreements was first transferred to the SLB Entities and then immediately resold to third parties (the "SLB Properties") in "sale leaseback" transactions (collectively, the "Sale Leaseback Transactions"). The Sale Leaseback Transactions were an integral component of Comvest's plan to leverage the

assets acquired in the Albertson's Acquisition while simultaneously stripping substantial value away from the operations into bankruptcy remote entities for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 90, except admit that the SLB Entities purchased thirty-nine (39) Real Property Stores, sold them to either Garrison or Spirit, and used the proceeds to pay the purchase price to Albertson's for those stores.

91.    Indeed, as Comvest considered its options to finance the transaction, ██████████

ANSWER: ██████████████████████████.

92.    Ultimately, the Sale Leaseback Transactions engineered by Comvest did not follow the typical model. A typical sale leaseback transaction is composed of two integrated steps. First, the owner of real property sells the property to a third party; the buyer then simultaneously leases the real property back to the original owner. Thus, the original owner obtains the benefits (in the form of the sales proceeds) and incurs the liabilities (in the form of the rent payable under the new lease). Typical sale leaseback transactions enable property owners to convert real property to cash while simultaneously retaining the right to occupy and use the premises consistent with the new lease obligations.

ANSWER: Defendants deny the allegations in paragraph 92.

93.    Here, however, the SLB Entities acquired the SLB Properties pursuant to the Contribution Agreements (for no consideration), sold those Properties to the sale leaseback counterparties (Spirit and Garrison, as defined below), and received the sale proceeds of over $350 million, but the OpCo Entities, not the SLB Entities, entered into the leases with the sale-

leaseback counterparties and incurred the substantial rental obligations. Thus, in contrast to a traditional sale leaseback transaction, the benefits and liabilities were divided, with the SLB Entities receiving the cash proceeds from the sale of the SLB Properties, while the OpCo Entities were burdened with the liabilities associated with the new leases which, in most cases, were set at above-market rates in order to increase the value of the Sale Leaseback Transactions and maximize the proceeds for the SLB Entities and, ultimately, Comvest.

ANSWER: Defendants deny the allegations in paragraph 93, except admit (a) that Property Holdings II and Haggen SLB sold thirty-nine (39) parcels of Real Property for approximately $358.8 million to Garrison and Spirit, (b) that Property Holdings II and Haggen SLB paid approximately $232.4 million of that amount to Albertson's to satisfy the purchase price for those thirty-nine (39) Real Property Stores, (c) that approximately $76.2 million of the approximately $126.4 million remaining was paid to Albertson's for the twenty-eight (28) remaining Real Property Stores, and (d) that the OpCo Entities entered into leases with Garrison and Spirit, allowing them to operate their stores. Defendants aver that the approximately $50.2 million left over from the transactions with Garrison and Spirit was transferred to the Debtors.

94.    Upon information and belief, the sale of the SLB Properties would have yielded a price millions of dollars less than the actual price paid if the leases imposed on the OpCo Entities were set at market rates. Instead of selling the SLB Properties based on fair market rent, Comvest caused the OpCo Entities to enter into above-market leases for the sole purpose of artificially increasing the purchase price to be paid to the SLB Entities for the sale of the SLB Properties. The inflation of the rents inured to the benefit of the SLB Entities and ultimately Comvest, but to the detriment of the OpCo Entities.

43

ANSWER: Defendants deny the allegations in paragraph 94.

95.    The proceeds from the Sale Leaseback Transactions were used in part to pay a portion of the purchase price to Albertson's, including (as discussed below) the cost of Real Properties that were "contributed" to the PropCo Entities, and were otherwise used for the benefit of the SLB Entities, the PropCo Entities and ultimately Comvest. ████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████ The precise steps taken in the Sale Leaseback Transactions are described below.

ANSWER: ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████.

1.    **The SLB Entities Sell the Real Property**

96.    Holdings entered into two agreements in order to effectuate the Sale Leaseback Transactions.

ANSWER: Defendants deny the allegations in paragraph 96, except admit that Holdings entered into two agreements, one with Spirit and one with Garrison.

97.    First, Holdings signed that certain "Purchase and Sale Agreement and Joint Escrow Instructions" with Spirit Master Funding IV, LLC (collectively, with that entity's

44

affiliates, "Spirit"), dated as of November 24, 2014 (together with any amendments thereto, the "Spirit SLB Agreement").

ANSWER: Defendants aver that the Purchase and Sale Agreement and Joint Escrow Instructions with Spirit speaks for itself, and Defendants deny any allegations in paragraph 97 that are inconsistent with that agreement.

98.    Pursuant to the Spirit SLB Agreement, the SLB Entities sold twenty (20) parcels of real estate (and improvements) located in Arizona, California, Nevada, Oregon, and Washington (the "Spirit SLB Properties").

ANSWER: Defendants admit the allegations in paragraph 98.

99.    Fifteen (15) of the twenty (20) Spirit SLB Properties were "contributed" or transferred to Holdings II and sold to Spirit for an aggregate sales price of approximately $165.6 million. Pursuant to the APA, approximately $108.5 million of the sales proceeds was, directly or indirectly, tendered to Albertson's affiliates, and approximately $57.1 million was retained by Property Holdings II. *See* Exhibit A.

ANSWER: Defendants deny the the allegations in paragraph 99, except admit that Holdings II sold fifteen (15) parcels of Real Property to Spirit.

100.    Five (5) of the twenty (20) Spirit SLB Properties were "contributed" or transferred to Haggen SLB and sold to Spirit for an aggregate sales price of approximately $58.8 million. Pursuant to the APA, approximately $38.5 million of the sales proceeds was, directly or indirectly, tendered to Albertson's affiliates, and approximately $20.3 million was retained by Haggen SLB. *See* Exhibit B.

ANSWER: Defendants deny the the allegations in paragraph 100, except admit that Haggen SLB sold five (5) parcels of Real Property to Spirit.

101.    Thus, pursuant to the Spirit SLB Agreement, twenty (20) properties that were acquired as part of the Albertson's Acquisition and were "contributed" or transferred to the SLB Entities for no consideration were sold for an aggregate price of approximately $224.4 million. Of that amount, approximately $147 million was, directly or indirectly, paid to Albertson's affiliates while approximately $77.4 million was retained by the SLB Entities.

ANSWER: Defendants deny the the allegations in paragraph 101, except admit that the SLB Entities sold twenty (20) parcels of Real Property to Spirit for approximately $224.4 million.

102.    Holdings entered into a second agreement with respect to the Sale Leaseback Transactions, this one with GIG TCG Wave Holdings, LLC (collectively, with that entity's affiliates, "Garrison"). On December 4, 2014, Holdings and Garrison executed a "Purchase and Sale Agreement and Joint Escrow Instructions" (together with any amendments thereto, the "Garrison SLB Agreement").

ANSWER: Defendants deny the allegations in the first sentence of paragraph 102, except admit that Holdings entered into an agreement with Garrison. Defendants aver that the Purchase and Sale Agreement and Joint Escrow Instructions speaks for itself, and Defendants deny any allegations in paragraph 102 that are inconsistent with that agreement.

103.    Pursuant to the Garrison SLB Agreement, the SLB Entities sold nineteen (19) parcels of real estate (and improvements) located in Arizona, California, Nevada, Oregon, and Washington (the "Garrison SLB Properties").

ANSWER: Defendants admit the allegations in paragraph 103.

104.    Eighteen (18) of the nineteen (19) Garrison SLB Properties were "contributed" or transferred to Holdings II and sold to Garrison for an aggregate sales price of approximately $125.2 million.  Pursuant to the APA, approximately $79.4 million of the sales proceeds was, directly or indirectly, tendered to Albertson's affiliates, and approximately $45.8 million was retained by Holdings II. *See* Exhibit A.

ANSWER:  Defendants deny the the allegations in paragraph 104, except admit that Holding II sold eighteen (18) parcels of Real Property to Garrison.

105.    One (1) of the nineteen (19) Garrison SLB Properties was "contributed" or transferred to Haggen SLB and sold to Garrison for a sales price of approximately $9.25 million. Pursuant to the APA, approximately $6.05 million of the sales proceeds was, directly or indirectly, tendered to Albertson's affiliates, and approximately $3.2 million was retained by Haggen SLB. *See* Exhibit B.

ANSWER:  Defendants deny the allegations in paragraph 105, except admit that Haggen SLB sold one (1) parcel of Real Property to Garrison.

106.    Thus, pursuant to the Garrison SLB Agreement, nineteen (19) properties that were acquired as part of the Albertson's Acquisition and were "contributed" to the SLB Entities for no consideration were sold for an aggregate price of approximately $134.4 million. Of that amount, approximately $85.4 million was, directly or indirectly, paid to Albertson's affiliates while approximately $49 million was retained by the SLB Entities.

ANSWER:  Defendants deny the the allegations in paragraph 106, except admit that the SLB Entities sold nineteen (19) parcels of Real Property to Garrison for approximately $134.4 million.

107.    In the aggregate, the Sale Leaseback Transactions -- covering both the Spirit SLB Properties and the Garrison SLB Properties -- concerned thirty-nine (39) parcels of real estate that were sold by the SLB Entities for a total of approximately $358.8 million. Of that amount, approximately $232.4 million was, directly or indirectly, paid to Albertson's affiliates while approximately $126.4 million was retained by the SLB Entities.

ANSWER:    Defendants deny the allegations in paragraph 107, except admit (a) that the agreements with Spirit and Garrison concered thirty-nine (39) parcels of real estate that were sold by the SLB Entities for a total of approximately $358.8 million, and (b) that the SLB Entities paid approximately $232.4 million of that amount to Albertson's to satisfy the purchase price for those thirty-nine (39) Real Property Stores.

108.    Exhibits A and B list the Real Property associated with each store subject to the Sale Leaseback Transactions, together with the identity of the seller (i.e., Holdings II or Haggen SLB), the sales price, the state in which the store was located, and the allocation of the sales proceeds as between the specified SLB Entity and the Albertson's affiliate.

ANSWER:    Defendants deny the allegations in paragraph 108, and deny that Exhibits A and B accurately reflect what Plaintiff alleges they reflect.

2.        The SLB Leases are Imposed on the OpCo Entities, not the SLB Entities

109.    While the SLB Entities reaped the benefits of the Sale Leaseback Transactions, the costs -- in the form of third-party leases with Spirit and Garrison -- were separated and thrust upon the OpCo Entities.

ANSWER:    Defendants deny the allegations in paragraph 109.

110.    Spirit entered into a Master Lease Agreement and related documents pursuant to which it leased certain of the Spirit SLB Properties to Operations (together with any amendments thereto, the "Spirit Lease").

48

**ANSWER**: Defendants deny the allegations in paragraph 110, except admit that Operations entered into a Master Lease Agreement with Spirt SPE HG 2015-1, LLC.

111.    In addition, an affiliate of Spirit, Spirit SPE HG 2015-1, LLC, as landlord, also entered into a Master Lease Agreement with Operations, as Tenant, as of February 12, 2015, with respect to certain of the other Spirit SLB Properties (together with any amendments thereto, and the Spirit Lease, the "Spirit Master Leases").

**ANSWER**: Defendants admit the allegations in paragraph 111.

112.    Separately, on February 17, 2015, Garrison, as landlord, and OpCo South and OpCo North, as tenants, entered into that certain Master Land and Building Lease (together with any amendments thereto, the "Garrison Lease"). The Garrison Lease set forth the terms by which the OpCo Entities leased each of the Garrison SLB Properties following Garrison's acquisition of them from the SLB Entities.

**ANSWER**: Defendants admit the allegations in paragraph 112.

113.    The parties to the Garrison Lease expected properties to be added to the Garrison Lease pursuant to the Albertson's APA, and agreed to amend the Garrison Lease as each New Demised Property (as defined in the Garrison Lease) was added.

**ANSWER**: Defendants admit the allegations in paragraph 113.

114.    Thus, pursuant to the Garrison Lease and the Garrison SLB Agreement, as Holdings closed on each store, Garrison entered into leases with OpCo South (with respect to Garrison SLB Properties located in Arizona, California or Nevada), and OpCo North (with respect to Garrison SLB Properties located in Washington or Oregon).

**ANSWER**: Defendants deny the allegations in paragraph 114, except admit that Garrison entered into leases with OpCo South and OpCo North.

49

115.    The rents charged to the OpCo Entities under the leases executed as part of the Sale Leaseback Transactions were substantially greater than fair market rent and this was no accident. By increasing the rent, the SLB Entities received a higher purchase price for the SLB Properties than they would have otherwise received.

ANSWER: Defendants deny the allegations in paragraph 115.

116.    While Holdings was a guarantor of the Spirit Master Leases and the Garrison Lease, Comvest intended that the OpCo Entities and Operations would pay all of rents to Spirit and Garrison such that Holdings, consistent with its status as a holding company, would not be called upon to satisfy those obligations and thus the valuable assets in the PropCo Entities would inure to the benefit of Holdings' owners, principally Comvest, undiminished by any creditor claims.

ANSWER: Defendants deny the allegations in paragraph 116, except admit that Holdings was a guarantor under the leases with Spirit and Garrison.

H.    Step 4:  Contribute the Remaining Real Property to the PropCo Entities

117.    At the same time that Holdings "contributed" the right to acquire certain of the Real Property to the SLB Entities to be utilized in the Sale Leaseback Transactions, Holdings also "contributed" the right to acquire twenty-eight (28) other parcels of Real Property (fee owned or ground leases), directly or indirectly, to the PropCo Entities pursuant to the Contribution Agreements (collectively, the "Owned Properties").

ANSWER: Defendants deny the allegations in paragraph 117, except admit that Holdings executed agreements which transferred to PropCo North and PropCo South the right to acquire and the obligation to pay for some of the remaining twenty-eight (28) Real Property Stores.

50

118.    At the direction of Comvest and the Officers and Directors, fourteen (14) of the Owned Properties were "contributed" to PropCo North.  Attached as Exhibit C is a list of the Owned Properties "contributed" by Holdings to PropCo North.

ANSWER:   Defendants deny the allegations in paragraph 118, and deny that Exhibit C accurately reflects what Plaintiff alleges it reflects.

119.    PropCo North provided no consideration to Holdings for those Owned Properties but, upon information and belief, proceeds from the Sale Leaseback Transactions were diverted to Albertson's for their acquisition.

ANSWER:   Defendants deny the allegations in paragraph 119, except admit that proceeds from the SLB Entities' sale of thirty-nine (39) parcels of Real Property to Spirit and Garrison were used to purchase the twenty-eight (28) remaining parcels of Real Property.

120.    Pursuant to the terms of the APA and the relevant Contribution Agreements, and the use of a portion of the proceeds from the SLB Transactions (to which PropCo North was not even a party), Comvest ultimately diverted Owned Properties to PropCo North with a net value of not less than $19.5 million.

ANSWER:  Defendants deny the allegations in paragraph 120.

121.    At the direction of Comvest and the Officers and Directors, the other fourteen (14) Owned Properties were "contributed" to PropCo South.  Attached as Exhibit D is a list of the Owned Properties "contributed" by Holdings to PropCo South.

ANSWER:   Defendants deny the allegations in paragraph 121, and deny that Exhibit D accurately reflects what Plaintiff alleges it reflects.

122.    PropCo South provided no consideration to Holdings for those Owned Properties but, upon information and belief, proceeds from the Sale Leaseback Transactions were diverted to Albertson's for their acquisition.

ANSWER:  Defendants deny the allegations in paragraph 122, except admit that proceeds from the SLB Entities' sale of thirty-nine (39) parcels of Real Property to Spirit and Garrison were used to purchase the twenty-eight (28) remaining parcels of Real Property.

123.    Pursuant to the terms of the APA and the relevant Contribution Agreements, and the use of a portion of the proceeds from the SLB Transactions (to which PropCo South was not even a party), Comvest ultimately diverted Owned Properties to PropCo South with a net value of not less than $22.6 million.

ANSWER:  Defendants deny the allegations in paragraph 123.

124.    In sum, the scheme devised by Comvest and executed by the Officers and Directors caused valuable Owned Property to be transferred by Holdings, directly or indirectly, to the non-Debtor, bankruptcy-remote PropCo Entities for no consideration. These transactions were undertaken for the sole purpose of stripping away the Owned Properties from the operating entities, thereby attempting to shield them from the claims of the OpCo Entities' unsecured creditors.

ANSWER:  Defendants deny the allegations in paragraph 124.

I.    **Step 5:  Comvest Extracts More Value by Imposing Onerous Leases on the OpCo Entities**

125.    After the Owned Properties were "contributed" or transferred to one of the PropCo Entities, Comvest caused the OpCo Entities, as tenants, to enter into leases or subleases with the PropCo Entities, as landlords (collectively, and as may have been amended, the

"PropCo Leases"), at inflated rental rates. The PropCo Leases are identified on Exhibits E and F, respectively.

ANSWER: Defendants deny the allegations in paragraph 125, except admit that the OpCo Entities, as tenants, entered into leases and subleases with PropCo North and PropCo South as lessor or sublessor.

126.    There were two types of PropCo Leases.  The first type of PropCo Lease concerned stores that were situated on Owned Properties that were previously owned in fee simple by Albertson's (collectively, the "Owned Property Leases").  Following the Alberton's Acquisition, each fee-owned property became subject to an Owned Property Lease pursuant to which an OpCo Entity, as tenant, paid rent to a PropCo Entity, as landlord, at an inflated rate.  As a result of the imposition of the Owned Property Leases, substantial value was transferred from the OpCo Entities to the PropCo Entities and the increased occupancy costs contributed to the operating losses for those stores.

ANSWER: Defendants deny the allegations in paragraph 126, except admit that the OpCo Entities, as tenants, entered into leases and subleases with PropCo North and PropCo South as lessor or sublessor.

127.    The second type of PropCo Lease concerned Owned Properties that were subject to third-party ground leases.  The ground leases for these Owned Properties were assigned to one of the PropCo Entities and then a sublease was imposed on one of the OpCo Entities, as sub-tenant, whereby the OpCo Entities were required to pay rent to the applicable PropCo Entity, as sub-landlord (collectively, and as may have been amended, the "PropCo Subleases"), that included the rent due under the ground lease, plus intentionally inflated "market rent," taxes and other obligations due under the ground lease.  Consequently, the rent charged by the PropCo

Entities to the OpCo Entities under the PropCo Subleases substantially exceeded the rent due under the existing ground leases acquired from Albertson's and was at above-market rates.

ANSWER: Defendants deny the allegations in paragraph 127, except admit that some ground leases were assigned to one of the PropCo Entities, who then subleased each property to one of the OpCo Entities.

128.    As a result of the imposition of the onerous PropCo Subleases, substantial value was transferred from the OpCo Entities to the PropCo Entities and the increased occupancy costs contributed to the reduction in profits for those stores that had only been paying rent pursuant to the pre-existing ground leases.

ANSWER: Defendants deny the allegations in paragraph 128, except admit that the payment of rent reduced profits, as it would for any entity that pays rent.

129.    The OpCo Entities did not receive any consideration or benefit in exchange for incurring the obligations imposed on them under the PropCo Leases, as the rents thereunder were above-market and contributed materially to the OpCo stores' operating losses, insolvency, and ultimate failure.

ANSWER: Defendants deny the allegations in paragraph 129.

130.    The imposition of the PropCo Leases was orchestrated by Comvest for its sole benefit; the PropCo Entities were the instruments that Comvest used; and the Officers and Directors approved, participated in, and acquiesced in the imposition of the PropCo Leases on the OpCo Entities.

ANSWER: Defendants deny the allegations in paragraph 130.

J.    Haggen's "Plan" to Absorb the Albertson's Stores was an Unmitigated Disaster

131.    While Comvest caused the Haggen enterprise to invest substantial time, money and effort extracting value from the Albertson's Acquisition for Comvest's benefit, Haggen's

54

plan for integrating 146 grocery stores in five different states over a several-month period was far less well thought out. The plan for a small regional chain to acquire 146 stores and reopen them under a different brand in an abbreviated time frame was ambitious beyond reason, and Haggen's efforts to execute on the closings and transitioning of the stores were grossly inadequate.

**ANSWER: Defendants deny the allegations in paragraph 131.**

132.

**ANSWER:**

133.   By April, just two months into the process, Haggen was confronted with the prospect of converting 64 stores in just eight weeks and observed:

But Haggen's fate was already sealed.

**ANSWER:**

134.   After the FTC required Albertson's to divest a substantial number of stores as a condition to the Albertson's/Safeway merger, Haggen, at Comvest's direction, represented to Albertson's and the FTC that it could quickly and competently increase the stores under its management by almost tenfold. As part of the plan it presented to integrate the Albertson's stores, Haggen contended that it could manage the transition by creating the proper infrastructure, hiring experienced management, and maintaining sufficient funding and capital to

enable it to enter new communities, meet the needs of its customers, and withstand expected and unexpected challenges, all in a compacted time frame. Haggen's representations and contentions quickly proved to be baseless and it's plan unworkable.

ANSWER: Defendants deny the allegations in paragraph 134, except admit that Haggen presented a plan to acquire Albertson's stores that was reviewed and approved by the FTC.

135.    By August, Haggen was in full retrenchment: ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

ANSWER: ███████████████████████████████████

████████████████████████████████████████████

███████████████████████████████.

136.    The planning and execution of the Albertson's Acquisition constitutes a breach of the duty of care by the Officers and Directors, and given the intent and effect of the scheme to benefit Holdings' controlling shareholder, Comvest, to the detriment of the OpCo Entities and their creditors, also constitutes a breach of the duty of loyalty.

ANSWER: Defendants deny the allegations in paragraph 136.

137.    The Officers and Directors breached their duty of care by, among other things, failing to create and execute a viable plan to absorb and integrate 146 new stores, failing to maintain adequate capital, failing to retain and hire senior management, failing to establish the infrastructure needed to take an 18-store enterprise operating in two states to a 164-store supermarket chain operating throughout the western United States, and by acquiescing to the

execution of the Contribution Agreements and the imposition of the onerous PropCo Leases on the OpCo Entities.

ANSWER: Defendants deny the allegations in paragraph 137.

138.    The consequences were disastrous:  the OpCo Entities' expenses escalated and sales plummeted almost immediately at many of the converted stores.  Thousands of customers were driven away because, among other things, the price points imposed by Haggen for its products were too high for Albertson's former customers, and Haggen failed to develop and implement a positive retail experience for the new communities it was entering.  Further, the OpCo Entities quickly sank under the weight of the PropCo Leases, and stores that were profitable before the acquisition under Albertson's ownership suffered operating losses that were never reversed.

ANSWER: Defendants deny the allegations in paragraph 138.

K.    **The PropCo Entities "Loan" $25 million to the OpCo Entities on the Eve of Bankruptcy**

139.    By August 2015, the OpCo Entities were hemorrhaging cash while the PropCo Entities sat on the valuable Owned Property and the rental stream provided by the OpCo Entities pursuant to the PropCo Leases. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

ANSWER: ███████████████████████████.

140.    Just eight months after signing the APA, the PNC Revolver was fully drawn by the OpCo Entities, which had dwindling cash reserves and continuing operating losses. With no third-party funding available to them in their financial condition, the undercapitalized OpCo

Entities were forced to "borrow" $25 million from their asset-rich, non-Debtor affiliates into which Comvest had diverted significant value.

ANSWER: Defendants deny the allegations in paragraph 140, except admit that the PropCo Entities made a $25 million loan to the OpCo Entities.

141.    More particularly, Debtors Haggen, Inc., OpCo South and OpCo North, as borrowers (the "Intercompany Borrowers"), and PropCo North and PropCo South, as lenders (the "Intercompany Lenders"), entered into that certain Term Loan and Security Agreement, dated as of August 7, 2015 (together with any amendments thereto, the "Intercompany Loan"), pursuant to which the Intercompany Borrowers purportedly obtained a $25 million subordinated loan secured by a second lien junior to PNC's lien on the Intercompany Borrowers' personal property.

ANSWER: Defendants admit that Haggen, Inc., OpCo South, and OpCo North, as borrowers, and PropCo North and PropCo South, as lenders, entered into a Term Loan and Securiuty Agreement, dated August 7, 2015. The Term Loan and Security Agreement speaks for itself, and Defendants deny any allegations inconsistent with that Agreement. Defendants deny any remaining allegations in paragraph 141.

142.    Upon information and belief, defendant Blake Barnett signed the Intercompany Loan on behalf of both the Intercompany Borrowers and the Intercompany Lenders.

ANSWER: Defendants deny the allegations in paragraph 142, except admit that Blake Barnett signed the Term Loan and Security Agreement.

143.    In accordance with the terms of the Intercompany Loan, on August 7, 2015, the Intercompany Borrowers issued a secured promissory note in favor of PropCo North in the amount of $12,640,750, and a separate secured promissory note in favor of PropCo South in the

amount of $12,359,250 (together, the "Intercompany Notes"). Upon information and belief, defendant Blake Barnett signed both Intercompany Notes on behalf of each of the Intercompany Borrowers.

ANSWER: Defendants admit the allegations in paragraph 143, except deny that the promissory notes were "Intercompany" notes.

144.    Upon information and belief, the Intercompany Loan closed on August 21, 2015, and was subject to that certain Intercreditor Agreement among Haggen Property Lender LLC, Haggen Property Holdings, LLC, the Intercompany Lenders, and PNC, which governed the respective rights, obligations and priorities of the parties. The obligations under the Intercompany Notes were subordinated to the extent provided in the Intercompany Agreement.

ANSWER: Defendants deny the allegations in paragraph 144.

145.    The Intercompany Loan was not the product of an arms' length negotiation.

ANSWER: Defendants deny the allegations in paragraph 145.

146.    In August 2015, the Intercompany Borrowers could not have obtained a $25 million loan from a third party on the same or similar terms as provided for in the Intercompany Loan.

ANSWER: Defendants deny the allegations in paragraph 146.

147.    In substance, the Intercompany Loan was an equity investment made to undercapitalized entities disguised as a loan, to the detriment of the OpCo Entities' general unsecured creditors.

ANSWER: Defendants deny the allegations in paragraph 147.

L.    Comvest's Domination and Control Harmed the Debtors

148.    Comvest owned, dominated, and controlled the Haggen enterprise, including the Debtors, and used such ownership, domination and control to impose the transactions described herein for its benefit and to the Debtors' detriment.

ANSWER:  Paragraph 148 calls for a legal conclusion for which no answer is required.  To the extent a response is required, Defendants deny the allegations in paragraph 148.

149.    The transactions included the creation of a new corporate structure for the sole purpose of carrying out Comvest's scheme; the "contribution" or transfer to the PropCo Entities and SLB Entities of the right to acquire the Real Property for no consideration; the execution of the Sale Leaseback Transactions to finance the Albertson's Acquisition and to extract value, including the acquisition of the Owned Properties and the imposition of above- market leases with the third-party landlords; the imposition of the above-market PropCo Leases on the OpCo Entities for the sole purpose of transferring value from the OpCo Entities to the PropCo Entities; and the extraction of additional value in the form of fees and other distributions, including but not limited to, the Comvest Payments (together, the "Challenged Transactions").

ANSWER:  Defendants deny the allegations in paragraph 149.

150.    The PropCo Entities and the SLB Entities were the vehicles through which Comvest realized the foregoing benefits, including the value of the Owned Properties, the payment of the cost of the Albertson's Acquisition, the rents paid by the OpCo Entities to the PropCo Entities under the PropCo Leases, and the payment of fees and other distributions to Comvest, none of which benefitted the OpCo Entities or their creditors but in fact worked to their detriment.

ANSWER: Paragraph 150 calls for a legal conclusion for which no answer is required. To the extent a response is required, Defendants deny the allegations in paragraph 150.

151.    The Debtors were dominated and controlled by Comvest and the Officers and Directors who, while acting for their own benefit, imposed the transactions described herein upon the OpCo Entities and caused them to enter into such transactions, and to make the transfers and incur the obligations described herein. Comvest and the Officers and Directors took the actions described herein in bad faith. As a result of such domination and control by Comvest and the Officers and Directors, any requisite intent for actual or constructive fraud is implied, imputed, inferred, or transferred to the Debtors because Comvest and the Officers and Directors, as insiders of the Debtors, supply any intent required on the part of the transferor or obligor.

ANSWER: Defendants deny the allegations in paragraph 151.

152.    The Challenged Transactions, whether viewed separately or collapsed into a single transaction, benefitted Comvest and harmed the Debtors' creditors, and are avoidable as actual and constructive fraudulent transfers as set forth herein.

ANSWER: Defendants deny the allegations in paragraph 152.

153.    Pursuant to section 544(a) of the Bankruptcy Code, Plaintiff asserts the rights of a hypothetical lien creditor as of the Petition Date. Additionally, Plaintiff alleges for purposes of state fraudulent transfer laws made applicable by section 544(b) of the Bankruptcy Code, that there are unpaid creditors whose claims arose before the challenged transfers were made and the challenged obligations were incurred in connection with the Albertson's Acquisition, as well as creditors whose claims arose after.

ANSWER: Paragraph 153 calls for a legal conclusion for which no answer is required. To the extent a response is required, Defendants deny the allegations in paragraph 153.

## CAUSES OF ACTION

### COUNT 1
(Against PropCo North and Comvest)
(Avoidance of Transfer of the PropCo North Owned Properties to PropCo North,
11 U.S.C. §§ 548(a)(1)(A) and 550)

154. Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

155. At all relevant times, Holdings had an interest in the Owned Properties, and in the right to acquire the Owned Properties, listed on Exhibit C (the "PropCo North Owned Properties").

ANSWER: Defendants deny the allegations in paragraph 155.

156. Within two years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Owned Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 156.

157. The direct or indirect transfer of the PropCo North Owned Properties from Holdings to PropCo North was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 157.

158. Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with

Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PropCo North Owned Properties were transferred to PropCo North, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PropCo North Owned Properties after the transfers; (e) the direct or indirect transfer of the PropCo North Owned Properties from Holdings to PropCo North was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo North provided no consideration to Holdings for the PropCo North Owned Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PropCo North Owned Properties to PropCo North.

    ANSWER: Defendants deny the allegations in paragraph 158.

    159.   The transfers of the PropCo North Owned Properties from Holdings to PropCo North were made for Comvest's benefit.

    ANSWER: Defendants deny the allegations in paragraph 159.

    160.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Owned Properties, or the value of such property, from PropCo North and Comvest.

    ANSWER: Defendants deny the allegations in paragraph 160.

    161.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Owned Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Owned Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 161.

### COUNT 2
#### (Against PropCo North and Comvest)
#### (Avoidance of Transfer of the PropCo North Owned Properties to PropCo North, 11 U.S.C. §§ 548(a)(1)(B) and 550)

162.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

163.    At all relevant times, Holdings had an interest in the PropCo North Owned Properties.

ANSWER: Defendants deny the allegations in paragraph 163.

164.    Within two years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Owned Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 164.

165.    Holdings received less than reasonably equivalent value from PropCo North in exchange for the transfer of the PropCo North Owned Properties.

ANSWER: Defendants deny the allegations in paragraph 165.

166.    Holdings transferred the PropCo North Owned Properties to PropCo North when Holdings (a) was insolvent, or Holdings became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Holdings was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 166.

167.   The transfers of the PropCo North Owned Properties from Holdings to PropCo North were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 167.

168.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Owned Properties, or the value of such property, from PropCo North and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 168.

169.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Owned Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Owned Properties or their value.

ANSWER:  Defendants deny the allegations in paragraph 169.

COUNT 3
(Against PropCo North and Comvest)
(Avoidance of Transfer of the PropCo North Washington Properties to PropCo North,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1))

170.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

171.   At all relevant times, Holdings had an interest in the PropCo North Owned Properties, including those identified on Exhibit C as being located in the state of Washington (the "PropCo North Washington Properties").

ANSWER:  Defendants deny the allegations in paragraph 171.

172.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Washington Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 172.

173.    The direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 173.

174.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PropCo North Washington Properties were transferred to PropCo North, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PropCo North Washington Properties after the transfers; (e) the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo North provided no consideration to Holdings for the PropCo North Washington Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PropCo North Washington Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 174.

175.    The transfers of the PropCo North Washington Properties from Holdings to PropCo North were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 175.

66

176.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Washington Properties, or the value of such property, from PropCo North and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 176.

177.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Washington Properties or their value.

ANSWER:  Defendants deny the allegations in paragraph 177.

### COUNT 4
**(Against PropCo North and Comvest)**
**(Avoidance of Transfer of the PropCo North Washington Properties to PropCo North, 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2))**

178.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

179.   At all relevant times, Holdings had an interest in the PropCo North Washington Properties.

ANSWER:  Defendants deny the allegations in paragraph 179.

180.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Washington Properties to PropCo North.

ANSWER:  Defendants deny the allegations in paragraph 180.

181.   Holdings received less than reasonably equivalent value from PropCo North in exchange for the transfer of the PropCo North Washington Properties.

ANSWER:  Defendants deny the allegations in paragraph 181.

182.    Holdings transferred the PropCo North Washington Properties to PropCo North when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 182.

183.    The transfers of the PropCo North Washington Properties from Holdings to PropCo North were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 183.

184.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Washington Properties, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 184.

185.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Washington Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 185.

COUNT 5
(Against PropCo North and Comvest)
(Avoidance of Transfer of the PropCo North Washington Properties to PropCo North,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a))

186.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

187.    At all relevant times, Holdings had an interest in the PropCo North Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 187.

188.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Washington Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 188.

189.    Holdings received less than reasonably equivalent value from PropCo North in exchange for the transfer of the PropCo North Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 189.

190.    Holdings transferred the PropCo North Washington Properties to PropCo North when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 190.

191.    The transfers of the PropCo North Washington Properties from Holdings to PropCo North were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 191.

192.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Washington Properties, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 192.

193.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Washington Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 193.

COUNT 6
(Against PropCo North and Comvest)
(Avoidance of Transfer of the PropCo North Oregon Properties to PropCo North,
11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(a)(1))

194.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

195.    At all relevant times, Holdings had an interest in the PropCo North Owned Properties, including those identified on Exhibit C as being located in the state of Oregon (the "PropCo North Oregon Properties").

ANSWER: Defendants deny the allegations in paragraph 195.

196.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Oregon Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 196.

197.    The direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 197.

198.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PropCo North Oregon Properties were transferred to PropCo North, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PropCo North Oregon Properties after the transfers; (e) the direct or indirect

transfer of the PropCo North Oregon Properties from Holdings to PropCo North was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo North provided no consideration to Holdings for the PropCo North Oregon Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PropCo North Oregon Properties to PropCo North.

    **ANSWER:** Defendants deny the allegations in paragraph 198.

    199.    The transfers of the PropCo North Oregon Properties from Holdings to PropCo North were made for Comvest's benefit.

    **ANSWER:** Defendants deny the allegations in paragraph 199.

    200.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Oregon Properties, or the value of such property, from PropCo North and Comvest.

    **ANSWER:** Defendants deny the allegations in paragraph 200.

    201.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Oregon Properties or their value.

    **ANSWER:** Defendants deny the allegations in paragraph 201.

COUNT 7

(Against PropCo North and Comvest)

(Avoidance of Transfer of the PropCo North Oregon Properties to PropCo North,
11 U.S.C. §§ 544(b) and 550, and ORS § 95.230 (a)(2))

202.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

203.    At all relevant times, Holdings had an interest in the PropCo North Oregon Properties.

ANSWER:  Defendants deny the allegations in paragraph 203.

204.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Oregon Properties to PropCo North.

ANSWER:  Defendants deny the allegations in paragraph 204.

205.    Holdings received less than reasonably equivalent value from PropCo North in exchange for the transfer of the PropCo North Oregon Properties.

ANSWER:  Defendants deny the allegations in paragraph 205.

206.    Holdings transferred the PropCo North Oregon Properties to PropCo North when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER:  Defendants deny the allegations in paragraph 206.

207.    The transfers of the PropCo North Oregon Properties from Holdings to PropCo North were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 207.

72

208.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Oregon Properties, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 208.

209.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Oregon Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 209.

COUNT 8
(Against PropCo North and Comvest)
(Avoidance of Transfer of the PropCo North Oregon Properties to PropCo North, 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240 (1))

210.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

211.    At all relevant times, Holdings had an interest in the PropCo North Oregon Properties.

ANSWER: Defendants deny the allegations in paragraph 211.

212.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PropCo North Oregon Properties to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 212.

213.    Holdings received less than reasonably equivalent value from PropCo North in exchange for the transfer of the PropCo North Oregon Properties.

ANSWER: Defendants deny the allegations in paragraph 213.

73

214.    Holdings transferred the PropCo North Oregon Properties to PropCo North when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER:  Defendants deny the allegations in paragraph 214.

215.    The transfers of the PropCo North Oregon Properties from Holdings to PropCo North were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 215.

216.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Oregon Properties, or the value of such property, from PropCo North and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 216.

217.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Oregon Properties or their value.

ANSWER:  Defendants deny the allegations in paragraph 217.

**COUNT 9**
(Against PropCo South and Comvest)
(Avoidance of Transfer of PCS Owned Properties to PropCo South,
11 U.S.C. §§ 548(a)(1)(A) and 550)

218.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

219.    At all relevant times, Holdings had an interest in the Owned Properties, and in the right to acquire the Owned Properties, listed on Exhibit D (the "PCS Owned Properties").

ANSWER:  Defendants deny the allegations in paragraph 219.

220.   Within two years of the Petition Date, Holdings directly or indirectly transferred the PCS Owned Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 220.

221.   The direct or indirect transfer of the PCS Owned Properties from Holdings to PropCo South was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 221.

222.   Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PCS Owned Properties were transferred to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PCS Owned Properties after the transfers; (e) the direct or indirect transfer of the PCS Owned Properties from Holdings to PropCo South was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo South provided no consideration to Holdings for the PCS Owned Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PCS Owned Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 222.

223.   The transfers of the PCS Owned Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 223.

224.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Owned Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 224.

225.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Owned Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Owned Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 225.

COUNT 10
(Against PropCo South and Comvest)
(Avoidance of Transfer of PCS Owned Properties to PropCo South,
11 U.S.C. §§ 548(a)(1)(B) and 550)

226.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

227.    At all relevant times, Holdings had an interest in the PCS Owned Properties.

ANSWER: Defendants deny the allegations in paragraph 227.

228.    Within two years of the Petition Date, Holdings directly or indirectly transferred the PCS Owned Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 228.

229.    Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PCS Owned Properties.

ANSWER: Defendants deny the allegations in paragraph 229.

230.    Holdings transferred the PCS Owned Properties to PropCo South when Holdings (a) was insolvent, or Holdings became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Holdings was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER:  Defendants deny the allegations in paragraph 230.

231.    The transfers of the PCS Owned Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 231.

232.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Owned Properties, or the value of such property, from PropCo South and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 232.

233.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Owned Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Owned Properties or their value.

ANSWER:  Defendants deny the allegations in paragraph 233.

### COUNT 11
(Against PropCo South and Comvest)
(Avoidance of Transfer of the PCS Arizona Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1))

234.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

235.    At all relevant times, Holdings had an interest in the PCS Owned Properties, including those identified on Exhibit D as being located in the state of Arizona (the "PCS Arizona Properties").

**ANSWER:** Defendants deny the allegations in paragraph 235.

236.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS Arizona Properties to PropCo South.

**ANSWER:** Defendants deny the allegations in paragraph 236.

237.    The direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

**ANSWER:** Defendants deny the allegations in paragraph 237.

238.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PCS Arizona Properties were transferred to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PCS Arizona Properties after the transfers; (e) the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo South provided no consideration to Holdings for the PCS Arizona Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PCS Arizona Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 238.

239.   The transfers of the PCS Arizona Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 239.

240.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Arizona Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 240.

241.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Arizona Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 241.

**COUNT 12**
(Against PropCo South and Comvest)
(Avoidance of Transfer of the PCS Arizona Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004(A)(2))

242.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

243.   At all relevant times, Holdings had an interest in the PCS Arizona Properties.

ANSWER: Defendants deny the allegations in paragraph 243.

244.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS Arizona Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 244.

245.   Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PCS Arizona Properties.

ANSWER: Defendants deny the allegations in paragraph 245.

246.   Holdings transferred the PCS Arizona Properties to PropCo South when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 246.

247.   The transfers of the PCS Arizona Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 247.

248.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Arizona Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 248.

249.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Arizona Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 249.

## COUNT 13
### (Against PropCo South and Comvest)
### (Avoidance of Transfer of the PCS Arizona Properties to PropCo South, 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005)

250.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

251.    At all relevant times, Holdings had an interest in the PCS Arizona Properties.

ANSWER: Defendants deny the allegations in paragraph 251.

252.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS Arizona Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 252.

253.    Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PSC Arizona Properties.

ANSWER: Defendants deny the allegations in paragraph 253.

254.    Holdings transferred the PCS Arizona Properties to PropCo South when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 254.

255.    The transfers of the PCS Arizona Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 255.

256.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Arizona Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 256.

257.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Arizona Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 257.

COUNT 14
(Against PropCo South and Comvest)
(Avoidance of Transfer of the PCS Nevada Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(a))

258.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

259.    At all relevant times, Holdings had an interest in the PCS Owned Properties, including those identified on Exhibit D as being located in the state of Nevada (the "PCS Nevada Properties").

ANSWER: Defendants deny the allegations in paragraph 259.

260.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS Nevada Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 260.

261.    The direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 261.

262.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PCS Nevada Properties were transferred to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PCS Nevada Properties after the transfers; (e) the direct or indirect transfer of the PCS Nevada

Properties from Holdings to PropCo South was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo South provided no consideration to Holdings for the PCS Nevada Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PCS Nevada Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 262.

263.    The transfers of the PCS Nevada Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 263.

264.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Nevada Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 264.

265.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Nevada Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 265.

### COUNT 15
(Against PropCo South and Comvest)
(Avoidance of Transfer of the PCS Nevada Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(b))

266.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

267.   At all relevant times, Holdings had an interest in the PCS Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 267.

268.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS Nevada Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 268.

269.   Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PCS Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 269.

270.   Holdings transferred the PCS Nevada Properties to PropCo South when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 270.

271.   The transfers of the PCS Nevada Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 271.

272.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Nevada Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 272.

273.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Nevada Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 273.

COUNT 16
(Against PropCo South and Comvest)
(Avoidance of the PCS Nevada Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.190)

274.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

275.    At all relevant times, Holdings had an interest in the PCS Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 275.

276.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS Nevada Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 276.

277.    Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PCS Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 277.

278.    Holdings transferred the PCS Nevada Properties to PropCo South when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 278.

279.    The transfers of the PCS Nevada Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 279.

280.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Nevada Properties, or the value of such property, PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 280.

281.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Nevada Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 281.

**COUNT 17**
(Against PropCo South and Comvest)
(Avoidance of Transfer of the PCS California Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(1))

282.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

283.    At all relevant times, Holdings had an interest in the PCS Owned Properties, including those identified on Exhibit D as being located in the state of California (the "PCS California Properties").

ANSWER: Defendants deny the allegations in paragraph 283.

284.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS California Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 284.

285.    The direct or indirect transfer of the PCS California Properties from Holdings to PropCo South was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER:  Defendants deny the allegations in paragraph 285.

286.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PCS California Properties were transferred to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings retained control of the PCS California Properties after the transfers; (e) the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) PropCo South provided no consideration to Holdings for the PCS California Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PCS California Properties to PropCo South.

ANSWER:  Defendants deny the allegations in paragraph 286.

287.    The transfers of the PCS California Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 287.

288.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS California Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 288.

289.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS California Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 289.

COUNT 18
(Against PropCo South and Comvest)
(Avoidance of Transfer of the PCS California Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(2))

290.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

291.    At all relevant times, Holdings had an interest in the PCS California Properties.

ANSWER: Defendants deny the allegations in paragraph 291.

292.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS California Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 292.

293.    Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PCS California Properties.

ANSWER: Defendants deny the allegations in paragraph 293.

294.    Holdings transferred the PCS California Properties to PropCo South when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 294.

295.    The transfers of the PCS California Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 295.

296.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS California Properties, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 296.

297.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS California Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 297.

## COUNT 19
### (Against PropCo South and Comvest)
(Avoidance of the PCS California Properties to PropCo South,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05)

298.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

299.    At all relevant times, Holdings had an interest in the PCS California Properties.

ANSWER: Defendants deny the allegations in paragraph 299.

300.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PCS California Properties to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 300.

301.   Holdings received less than reasonably equivalent value from PropCo South in exchange for the transfer of the PCS California Properties.

ANSWER:   Defendants deny the allegations in paragraph 301.

302.   Holdings transferred the PCS California Properties to PropCo South when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER:   Defendants deny the allegations in paragraph 302.

303.   The transfers of the PCS California Properties from Holdings to PropCo South were made for Comvest's benefit.

ANSWER:   Defendants deny the allegations in paragraph 303.

304.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS California Properties, or the value of such property, from PropCo South and Comvest.

ANSWER:   Defendants deny the allegations in paragraph 304.

305.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS California Properties or their value.

ANSWER:   Defendants deny the allegations in paragraph 305.

## COUNT 20
### (Against PropCo North and Comvest)
### (Avoidance of the PropCo North Lease Obligations,
### 11 U.S.C. §§ 548(a)(1)(A) and 550)

306.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

307.    Exhibit E lists those PropCo Leases in which PropCo North was the landlord and OpCo North was the tenant (the "PropCo North Leases"). The PropCo North Leases were obligations incurred by OpCo North to PropCo North within two years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 307.

308.    OpCo North transferred money to PropCo North in the form of rent payable under each applicable PropCo North Lease (the "PropCo North Rent Payments," and together with the PropCo North Leases, the "PropCo North Lease Obligations") within two years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 308.

309.    The transfers were made, and the obligations incurred, in respect of the PropCo North Lease Obligations with the actual intent to hinder, delay or defraud OpCo North's creditors.

ANSWER: Defendants deny the allegations in paragraph 309.

310.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PropCo North Leases; (c) the PropCo North Lease Obligations were made to PropCo North, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PropCo North Obligations were not publicly disclosed; (e) the PropCo North Leases (including the PropCo North Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PropCo North Lease on behalf of PropCo North and OpCo North; and (g) OpCo North was insolvent or became insolvent shortly after the PropCo

91

North Leases were executed and the PropCo North Rent Payments were transferred to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 310.

311.    The PropCo North Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 311.

312.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 312.

313.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Leases.

ANSWER: Defendants deny the allegations in paragraph 313.

**COUNT 21**
**(Against PropCo North and Comvest)**
**(Avoidance of the PropCo North Lease Obligations,**
**11 U.S.C. §§ 548(a)(1)(B) and 550)**

314.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

315.    OpCo North made the transfers, and incurred the obligations, in respect of the PropCo North Lease Obligations within two years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 315.

316.    OpCo North received less than reasonably equivalent value from PropCo North in exchange for the transfers made, and the obligations incurred, in respect of the PropCo North Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 316.

317.    OpCo North incurred the obligations under the PropCo North Leases, and made the PropCo North Rent Payments, to PropCo North when OpCo North (a) was insolvent, or OpCo North became insolvent as a result of such obligations and transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining was unreasonably small capital; or (c) intended to incur, or believed that OpCo North would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 317.

318.    The PropCo North Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 318.

319.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 319.

320.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest

the PropCo North Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Leases.

ANSWER: Defendants deny the allegations in paragraph 320.

COUNT 22
(Against PropCo North and Comvest)
(Avoidance of the PropCo North Washington Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1))

321.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

322.    Exhibit E lists those PropCo Leases that relate to the PropCo North Washington Properties (the "PropCo North Washington Leases"). The PropCo North Washington Leases were obligations incurred by OpCo North to PropCo North within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 322.

323.    OpCo North transferred money to PropCo North in the form of rent payable under each applicable PropCo North Washington Lease (the "PropCo North Washington Rent Payments," and together with the PropCo North Washington Leases, the "PropCo North Washington Lease Obligations") within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 323.

324.    The transfers were made, and the obligations incurred, in respect of the PropCo North Washington Lease Obligations with the actual intent to hinder, delay or defraud OpCo North's creditors.

ANSWER: Defendants deny the allegations in paragraph 324.

94

325.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PropCo North Washington Leases; (c) the PropCo North Washington Lease Obligations were made to PropCo North, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PropCo North Washington Obligations were not publicly disclosed; (e) the PropCo North Washington Leases (including the PropCo North Washington Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PropCo North Washington Lease on behalf of PropCo North and OpCo North; and (g) OpCo North was insolvent or became insolvent shortly after the PropCo North Washington Leases were executed and the PropCo North Washington Rent Payments were transferred to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 325.

326.    The PropCo North Washington Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 326.

327.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Washington Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 327.

328.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Washington Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Washington Rent Payments made thereunder or their

95

value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Washington Leases.

ANSWER: Defendants deny the allegations in paragraph 328.

## COUNT 23
### (Against PropCo North and Comvest)
### (Avoidance of the PropCo North Washington Lease Obligations, 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2))

329.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

330.    OpCo North made the transfers, and incurred the obligations, in respect of the PropCo North Washington Lease Obligations within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 330.

331.    OpCo North received less than reasonably equivalent value from PropCo North in exchange for the transfers made, and the obligations incurred, in respect of the PropCo North Washington Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 331.

332.    OpCo North incurred the obligations under the PropCo North Washington Leases, and made the PropCo North Washington Rent Payments, to PropCo North when OpCo North (a) was engaged in business, or was about to engage in business, for which any property remaining was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 332.

333.    The PropCo North Washington Lease Obligations were incurred and made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 333.

334.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Washington Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 334.

335.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Washington Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Washington Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Washington Leases.

ANSWER:  Defendants deny the allegations in paragraph 335.

### COUNT 24
**(Against PropCo North and Comvest)**
**(Avoidance of the PropCo North Washington Lease Obligations,**
**11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a))**

336.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

337.    OpCo North made the transfers, and incurred the obligations, in respect of the PropCo North Washington Lease Obligations within four years of the Petition Date.

ANSWER:  Defendants deny the allegations in paragraph 337.

97

338.    OpCo North received less than reasonably equivalent value from PropCo North in exchange for the transfers made, and the obligations incurred, in respect of the PropCo North Washington Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 338.

339.    OpCo North incurred the obligations under the PropCo North Washington Leases, and made the PropCo North Washington Rent Payments, to PropCo North when OpCo North was insolvent or OpCo North became insolvent as a result of such transfers and obligations.

ANSWER: Defendants deny the allegations in paragraph 339.

340.    The PropCo North Washington Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 340.

341.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Washington Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 341.

342.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Washington Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Washington Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Washington Leases.

ANSWER: Defendants deny the allegations in paragraph 342.

## COUNT 25
**(Against PropCo North and Comvest)**
**(Avoidance of the PropCo North Oregon Lease Obligations,**
**11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(a))**

343.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

344.    Exhibit E lists those PropCo Leases that relate to the PropCo North Oregon Properties (the "PropCo North Oregon Leases"). The PropCo North Oregon Leases were obligations incurred by OpCo North to PropCo North within four years of the Petition Date.

ANSWER:  Defendants deny the allegations in paragraph 344.

345.    OpCo North transferred money to PropCo North in the form of rent payable under each applicable PropCo North Oregon Lease (the "PropCo North Oregon Rent Payments," and together with the PropCo North Oregon Leases, the "PropCo North Oregon Lease Obligations") within four years of the Petition Date.

ANSWER:  Defendants deny the allegations in paragraph 345.

346.    The transfers were made, and the obligations incurred, in respect of the PropCo North Oregon Lease Obligations with the actual intent to hinder, delay or defraud OpCo North's creditors.

ANSWER:  Defendants deny the allegations in paragraph 346.

347.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PropCo North Oregon Leases; (c) the PropCo North Oregon Lease Obligations were made to PropCo North, an

insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PropCo North Oregon Obligations were not publicly disclosed; (e) the PropCo North Oregon Leases (including the PropCo North Oregon Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PropCo North Oregon Lease on behalf of PropCo North and OpCo North; and (g) OpCo North was insolvent or became insolvent shortly after the PropCo North Oregon Leases were executed and the PropCo North Oregon Rent Payments were transferred to PropCo North.

ANSWER: Defendants deny the allegations in paragraph 347.

348.    The PropCo North Oregon Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 348.

349.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Oregon Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 349.

350.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Oregon Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Oregon Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Oregon Leases.

ANSWER: Defendants deny the allegations in paragraph 350.

COUNT 26
(Against PropCo North and Comvest)
(Avoidance of the PropCo North Oregon Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(b))

351.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

352.   OpCo North made the transfers, and incurred the obligations, in respect of the PropCo North Oregon Lease Obligations within four years of the Petition Date.

ANSWER:   Defendants deny the allegations in paragraph 352.

353.   OpCo North received less than reasonably equivalent value from PropCo North in exchange for the transfers made, and the obligations incurred, in respect of the PropCo North Oregon Lease Obligations.

ANSWER:   Defendants deny the allegations in paragraph 353.

354.   OpCo North incurred the obligations under the PropCo North Oregon Leases, and made the PropCo North Oregon Rent Payments, to PropCo North when OpCo North (a) was engaged in business, or was about to engage in business, for which any property remaining was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER:   Defendants deny the allegations in paragraph 354.

355.   The PropCo North Oregon Lease Obligations were incurred and made for Comvest's benefit.

ANSWER:   Defendants deny the allegations in paragraph 355.

356.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Oregon Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 356.

357.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Oregon Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Oregon Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Oregon Leases.

ANSWER: Defendants deny the allegations in paragraph 357.

## COUNT 27
### (Against PropCo North and Comvest)
### (Avoidance of the PropCo North Oregon Lease Obligations, 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240(1))

358.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

359.    OpCo North made the transfers, and incurred the obligations, in respect of the PropCo North Oregon Lease Obligations within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 359.

360.    OpCo North received less than reasonably equivalent value from PropCo North in exchange for the transfers made, and the obligations incurred, in respect of the PropCo North Oregon Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 360.

361.    OpCo North incurred the obligations under the PropCo North Oregon Leases, and made the PropCo North Oregon Rent Payments, to PropCo North when OpCo North was insolvent or OpCo North became insolvent as a result of such transfers and obligations.

ANSWER: Defendants deny the allegations in paragraph 361.

362.    The PropCo North Oregon Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 362.

363.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PropCo North Oregon Rent Payments, or the value of such property, from PropCo North and Comvest.

ANSWER: Defendants deny the allegations in paragraph 363.

364.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PropCo North Oregon Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Oregon Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Oregon Leases.

ANSWER: Defendants deny the allegations in paragraph 364.

COUNT 28
(Against PropCo South and Comvest)
(Avoidance of the PCS Lease Obligations,
11 U.S.C. §§ 548(a)(1)(A) and 550)

365.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

103

366.    Exhibit F lists those PropCo Leases in which PropCo South was the landlord and OpCo South was the tenant (the "PCS Leases"). The PCS Leases were obligations incurred by OpCo South to PropCo South within two years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 366.

367.    OpCo South transferred money to PropCo South in the form of rent payable under each applicable PCS Lease (the "PCS Rent Payments," and together with the PCS Leases, the "PCS Lease Obligations") within two years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 367.

368.    The transfers were made, and the obligations incurred, in respect of the PCS Lease Obligations with the actual intent to hinder, delay or defraud OpCo South's creditors.

ANSWER: Defendants deny the allegations in paragraph 368.

369.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PCS Leases; (c) the PCS Lease Obligations were made to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PCS Lease Obligations were not publicly disclosed; (e) the PCS Leases (including the PCS Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PCS Lease on behalf of PropCo South and OpCo South; and (g) OpCo South was insolvent or became insolvent shortly after the PCS Leases were executed and the PCS Rent Payments were transferred to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 369.

370.    The PCS Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 370.

371.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 371.

372.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Leases.

ANSWER: Defendants deny the allegations in paragraph 372.

COUNT 29
(Against PropCo South and Comvest)
(Avoidance of the PCS Lease Obligations,
11 U.S.C. §§ 548(a)(1)(B) and 550)

373.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

374.    OpCo South made the transfers, and incurred the obligations, in respect of the PCS Lease Obligations within two years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 374.

375.    OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 375.

376.    OpCo South incurred the obligations under the PCS Leases, and made the PCS Rent Payments, to PropCo South when OpCo South (a) was insolvent, or OpCo South became insolvent as a result of such obligations and transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining was unreasonably small capital; or (c) intended to incur, or believed that OpCo South would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 376.

377.    The PCS Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 377.

378.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 378.

379.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Leases.

ANSWER: Defendants deny the allegations in paragraph 379.

### COUNT 30
**(Against PropCo South and Comvest)**
**(Avoidance of the PCS Arizona Lease Obligations,**
**11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1))**

380.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

381.    Exhibit F lists those PropCo Leases that relate to the PCS Arizona Properties (the "PCS Arizona Leases"). The PCS Arizona Leases were obligations incurred by OpCo South to PropCo South within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 381.

382.    OpCo South transferred money to PropCo South in the form of rent payable under each applicable PCS Arizona Lease (the "PCS Arizona Rent Payments," and together with the PCS Arizona Leases, the "PCS Arizona Lease Obligations") within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 382.

383.    The transfers were made, and the obligations incurred, in respect of the PCS Arizona Lease Obligations with the actual intent to hinder, delay or defraud OpCo North's creditors.

ANSWER: Defendants deny the allegations in paragraph 383.

384.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PCS Arizona Leases; (c) the PCS Arizona Lease Obligations were made to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PCS Arizona Obligations were not publicly disclosed; (e) the PCS Arizona Leases (including the PCS Arizona Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PCS Arizona Lease on behalf of PropCo South and

OpCo South; and (g) OpCo South was insolvent or became insolvent shortly after the PCS Arizona Leases were executed and the PCS Arizona Rent Payments were transferred to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 384.

385.   The PCS Arizona Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 385.

386.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Arizona Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 386.

387.   Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Arizona Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Arizona Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Arizona Leases.

ANSWER: Defendants deny the allegations in paragraph 387.

**COUNT 31**
(Against PropCo South and Comvest)
(Avoidance of the PCS Arizona Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004(A)(2))

388.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

108

389.    OpCo South made the transfers, and incurred the obligations, in respect of the PCS Arizona Lease Obligations within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 389.

390.    OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS Arizona Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 390.

391.    OpCo South incurred the obligations under the PCS Arizona Leases, and made the PCS Arizona Rent Payments, to PropCo South when OpCo South (a) was engaged in business, or was about to engage in business, for which any property remaining was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 391.

392.    The PCS Arizona Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 392.

393.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Arizona Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 393.

394.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Arizona Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Arizona Rent Payments made thereunder or their value, and (iii) disallowing any claim

by PropCo South against the Debtors for damages arising from the rejection of the PCS Arizona Leases.

ANSWER: Defendants deny the allegations in paragraph 394.

### COUNT 32
(Against PropCo South and Comvest)
(Avoidance of the PCS Arizona Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005)

395.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

396.   OpCo South made the transfers, and incurred the obligations, in respect of the PCS Arizona Lease Obligations within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 396.

397.   OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS Arizona Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 397.

398.   OpCo South incurred the obligations under the PCS Arizona Leases, and made the PCS Arizona Rent Payments, to PropCo South when OpCo South was insolvent or OpCo South became insolvent as a result of such transfers and obligations.

ANSWER: Defendants deny the allegations in paragraph 398.

399.   The PCS Arizona Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 399.

400.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Arizona Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 400.

401.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Arizona Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Arizona Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Arizona Leases.

ANSWER: Defendants deny the allegations in paragraph 401.

COUNT 33
(Against PropCo South and Comvest)
(Avoidance of the PCS Nevada Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(a))

402.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

403.    Exhibit F lists those PropCo Leases that relate to the PCS Nevada Properties (the "PCS Nevada Leases"). The PCS Nevada Leases were obligations incurred by OpCo South to PropCo South within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 403.

404.    OpCo South transferred money to PropCo South in the form of rent payable under each applicable PCS Nevada Lease (the "PCS Nevada Rent Payments," and together with the

PCS Nevada Leases, the "PCS Nevada Lease Obligations") within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 404.

405.    The transfers were made, and the obligations incurred, in respect of the PCS Nevada Lease Obligations with the actual intent to hinder, delay or defraud OpCo North's creditors.

ANSWER: Defendants deny the allegations in paragraph 405.

406.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PCS Nevada Leases; (c) the PCS Nevada Lease Obligations were made to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PCS Nevada Obligations were not publicly disclosed; (e) the PCS Nevada Leases (including the PCS Nevada Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PCS Nevada Lease on behalf of PropCo South and OpCo South; and (g) OpCo South was insolvent or became insolvent shortly after the PCS Nevada Leases were executed and the PCS Nevada Rent Payments were transferred to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 406.

407.    The PCS Nevada Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 407.

408.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Nevada Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 408.

409.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Nevada Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Nevada Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Nevada Leases.

ANSWER:  Defendants deny the allegations in paragraph 409.

COUNT 34
(Against PropCo South and Comvest)
(Avoidance of the PCS Nevada Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(b))

410.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

411.    OpCo South made the transfers, and incurred the obligations, in respect of the PCS Nevada Lease Obligations within four years of the Petition Date.

ANSWER:  Defendants deny the allegations in paragraph 411.

412.    OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS Nevada Lease Obligations.

ANSWER:  Defendants deny the allegations in paragraph 412.

113

413.    OpCo South incurred the obligations under the PCS Nevada Leases, and made the

PCS Nevada Rent Payments, to PropCo South when OpCo South (a) was engaged in business, or

was about to engage in business, for which any property remaining was unreasonably small

capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as

such debts matured.

ANSWER: Defendants deny the allegations in paragraph 413.

414.    The PCS Nevada Lease Obligations were incurred and made for Comvest's

benefit.

ANSWER: Defendants deny the allegations in paragraph 414.

415.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the

Debtors' estates the PCS Nevada Rent Payments, or the value of such property, from PropCo

South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 415.

416.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Nevada Lease

Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest

the PCS Nevada Rent Payments made thereunder or their value, and (iii) disallowing any claim

by PropCo South against the Debtors for damages arising from the rejection of the PCS Nevada

Leases.

ANSWER: Defendants deny the allegations in paragraph 416.

## COUNT 35
### (Against PropCo South and Comvest)
### (Avoidance of the PCS Nevada Lease Obligations,
### 11 U.S.C. §§ 544(b) and 550, and NRS § 112.190(1))

417.    Plaintiff repeats and realleges the allegations contained in each preceding

paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

418.   OpCo South made the transfers, and incurred the obligations, in respect of the PCS Nevada Lease Obligations within four years of the Petition Date.

ANSWER:  Defendants deny the allegations in paragraph 418.

419.   OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS Nevada Lease Obligations.

ANSWER:  Defendants deny the allegations in paragraph 419.

420.   OpCo South incurred the obligations under the PCS Nevada Leases, and made the PCS Nevada Rent Payments, to PropCo South when OpCo South was insolvent or OpCo South became insolvent as a result of such transfers and obligations.

ANSWER:  Defendants deny the allegations in paragraph 420.

421.   The PCS Nevada Lease Obligations were incurred and made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 421.

422.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS Nevada Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 422.

423.   Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS Nevada Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Nevada Rent Payments made thereunder or their value, and (iii) disallowing any claim

by PropCo South against the Debtors for damages arising from the rejection of the PCS Nevada Leases.

ANSWER: Defendants deny the allegations in paragraph 423.

COUNT 36
(Against PropCo South and Comvest)
(Avoidance of the PCS California Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1))

424.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

425.   Exhibit F lists those PropCo Leases that relate to the PCS California Properties (the "PCS California Leases"). The PCS California Leases were obligations incurred by OpCo South to PropCo South within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 425.

426.   OpCo South transferred money to PropCo South in the form of rent payable under each applicable PCS California Lease (the "PCS California Rent Payments," and together with the PCS California Leases, the "PCS California Lease Obligations") within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 426.

427.   The transfers were made, and the obligations incurred, in respect of the PCS California Lease Obligations with the actual intent to hinder, delay or defraud OpCo South's creditors.

ANSWER: Defendants deny the allegations in paragraph 427.

428.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable PCS California Leases; (c) the PCS California Lease Obligations were made to PropCo South, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) the PCS California Obligations were not publicly disclosed; (e) the PCS California Leases (including the PCS California Rent Payments payable thereunder) were not the subject of arms' length negotiations; (f) the same person, Derrick Anderson, signed each applicable PCS California Lease on behalf of PropCo South and OpCo South; and (g) OpCo South was insolvent or became insolvent shortly after the PCS California Leases were executed and the PCS California Rent Payments were transferred to PropCo South.

ANSWER: Defendants deny the allegations in paragraph 428.

429.    The PCS California Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 429.

430.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS California Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 430.

431.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS California Lease Obligations as fraudulently incurred obligations, (iii) recovering from PropCo South and Comvest the PCS California Rent Payments made thereunder or their value, and (ii) disallowing

any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS California Leases.

ANSWER: Defendants deny the allegations in paragraph 431.

COUNT 37
(Against PropCo South and Comvest)
(Avoidance of the PCS California Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(2))

432.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

433.    OpCo South made the transfers, and incurred the obligations, in respect of the PCS California Lease Obligations within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 433.

434.    OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS California Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 434.

435.    OpCo South incurred the obligations under the PCS California Leases, and made the PCS California Rent Payments, to PropCo South when OpCo South (a) was engaged in business, or was about to engage in business, for which any property remaining was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 435.

436.   The PCS California Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 436.

437.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS California Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 437.

438.   Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS California Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS California Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS California Leases.

ANSWER: Defendants deny the allegations in paragraph 438.

COUNT 38
(Against PropCo South and Comvest)
(Avoidance of the PCS California Lease Obligations,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05)

439.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

440.   OpCo South made the transfers, and incurred the obligations, in respect of the PCS California Lease Obligations within four years of the Petition Date.

ANSWER: Defendants deny the allegations in paragraph 440.

441.    OpCo South received less than reasonably equivalent value from PropCo South in exchange for the transfers made, and the obligations incurred, in respect of the PCS California Lease Obligations.

ANSWER: Defendants deny the allegations in paragraph 441.

442.    OpCo South incurred the obligations under the PCS California Leases, and made the PCS California Rent Payments, to PropCo South when OpCo South was insolvent or OpCo South became insolvent as a result of such transfers and obligations.

ANSWER: Defendants deny the allegations in paragraph 442.

443.    The PCS California Lease Obligations were incurred and made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 443.

444.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the PCS California Rent Payments, or the value of such property, from PropCo South and Comvest.

ANSWER: Defendants deny the allegations in paragraph 444.

445.    Accordingly, Plaintiff is entitled to judgment (i) avoiding the PCS California Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS California Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS California Leases.

ANSWER: Defendants deny the allegations in paragraph 445.

COUNT 39
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Properties,
11 U.S.C. §§ 548(a)(1)(A) and 550)

446.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

447.    At all relevant times, Holdings had an interest in the SLB Properties, and in the right to acquire the SLB Properties, listed on Exhibit A (the "PHII Properties").

ANSWER:  Defendants deny the allegations in paragraph 447.

448.    Within two years of the Petition Date, Holdings directly or indirectly transferred the PHII Properties to Property Holdings II pursuant to the applicable Contribution Agreements.

ANSWER:  Defendants deny the allegations in paragraph 448.

449.    The direct or indirect transfer of the PHII Properties from Holdings to Property Holdings II was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER:  Defendants deny the allegations in paragraph 449.

450.    Actual fraudulent intent can be inferred from at least the following "badges of fraud":  (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest;  (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements;  (c) the PHII Properties were transferred to Property Holdings II, an insider by virtue of the fact that it was indirectly owned by Holdings;  (d) Holdings directly or indirectly controlled the disposition of the proceeds received from the sale of the PHII Properties pursuant to the applicable Sale Leaseback Transactions;  (e) the direct or indirect transfer of the PHII Properties from Holdings to Property Holdings II was not publicly disclosed;  (f) the Contribution

Agreements were not the subject of arms' length negotiations; (g) Property Holdings II provided no consideration to Holdings for the PHII Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PHII Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 450.

451. The transfers of the PHII Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 451.

452. Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 452.

453. Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Properties.

ANSWER: Defendants deny the allegations in paragraph 453.

**COUNT 40**
**(Against Property Holdings II and Comvest)**
**(Avoidance of the Transfer of the PHII Properties,**
**11 U.S.C. §§ 548(a)(1)(B) and 550)**

454. Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

455.    At all relevant times, Holdings had an interest in the PHII Properties.

ANSWER:  Defendants deny the allegations in paragraph 455.

456.    Within two years of the Petition Date, Holdings directly or indirectly transferred the PHII Properties to Property Holdings II pursuant to the applicable Contribution Agreements.

ANSWER:  Defendants deny the allegations in paragraph 456.

457.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Properties.

ANSWER:  Defendants deny the allegations in paragraph 457.

458.    Holdings transferred the PHII Properties to Property Holdings II when Holdings (a) was insolvent, or Holdings became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Holdings was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER:  Defendants deny the allegations in paragraph 458.

459.    The transfers of the PHII Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 459.

460.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Properties.

ANSWER:  Defendants deny the allegations in paragraph 460.

461.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Properties.

ANSWER: Defendants deny the allegations in paragraph 461.

## COUNT 41
### (Against Property Holdings II and Comvest)
### (Avoidance of the Transfer of the PHII Washington Properties,
### 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1))

462.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

463.    At all relevant times, Holdings had an interest in the PHII Properties, including those identified on Exhibit A as being located in the state of Washington (the "PHII Washington Properties").

ANSWER: Defendants deny the allegations in paragraph 463.

464.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Washington Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 464.

465.    The direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 465.

466.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PHII Washington Properties were transferred to Property Holdings II, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or

indirectly controlled the disposition of the proceeds received from the sale of the PHII Washington Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Property Holdings II provided no consideration to Holdings for the PHII Washington Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PHII Washington Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 466.

467.    The transfers of the PHII Washington Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 467.

468.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Washington Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 468.

469.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 469.

## COUNT 42
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Washington Properties,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2))

470.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

471.    At all relevant times, Holdings had an interest in the PHII Washington Properties.

ANSWER:  Defendants deny the allegations in paragraph 471.

472.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Washington Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 472.

473.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Washington Properties.

ANSWER:  Defendants deny the allegations in paragraph 473.

474.    Holdings transferred the PHII Washington Properties to Property Holdings II when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER:  Defendants deny the allegations in paragraph 474.

475.    The transfers of the PHII Washington Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 475.

476.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Washington Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 476.

477.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 477.

COUNT 43
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Washington Properties,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a))

478.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

479.    At all relevant times, Holdings had an interest in the PHII Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 479.

480.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Washington Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 480.

481.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 481.

482.    Holdings transferred the PHII Washington Properties to Property Holdings II when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 482.

483.    The transfers of the PHII Washington Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 483.

484.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Washington Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 484.

485.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II to recover the value of the PHII Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 485.

## COUNT 44
### (Against Property Holdings II and Comvest)
### (Avoidance of the Transfer of the PHII Oregon Properties, 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(a))

486.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

487.    At all relevant times, Holdings had an interest in the PHII Properties, including those identified on Exhibit A as being located in the state of Oregon (the "PHII Oregon Properties").

ANSWER: Defendants deny the allegations in paragraph 487.

488.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Oregon Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 488.

489.    The direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 489.

490.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PHII Oregon Properties were transferred to Property Holdings II, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or indirectly controlled the disposition of the proceeds received from the sale of the PHII Oregon Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Property Holdings II provided no consideration to Holdings for the PHII Oregon Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PHII Oregon Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 490.

129

491.    The transfers of the PHII Oregon Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 491.

492.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Oregon Properties from Property Holdings II and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 492.

493.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the PHII Oregon Properties or their value.

ANSWER:  Defendants deny the allegations in paragraph 493.

COUNT 45
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Oregon Properties,
11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(b))

494.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

495.    At all relevant times, Holdings had an interest in the PHII Oregon Properties.

ANSWER:  Defendants deny the allegations in paragraph 495.

496.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Oregon Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 496.

497.   Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Oregon Properties.

ANSWER: Defendants deny the allegations in paragraph 497.

498.   Holdings transferred the PHII Oregon Properties to Property Holdings II when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 498.

499.   The transfers of the PHII Oregon Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 499.

500.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of PHII Oregon Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 500.

501.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Oregon Properties.

ANSWER: Defendants deny the allegations in paragraph 501.

**COUNT 46**
**(Against Property Holdings II and Comvest)**
**(Avoidance of the Transfer of the PHII Oregon Properties,**
**11 U.S.C. §§ 544(b) and 550, and ORS § 95.240(1))**

502.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

503.    At all relevant times, Holdings had an interest in the PHII Oregon Properties.

ANSWER:  Defendants deny the allegations in paragraph 503.

504.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Oregon Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 504.

505.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Oregon Properties.

ANSWER:  Defendants deny the allegations in paragraph 505.

506.    Holdings transferred the PHII Oregon Properties to Property Holdings II when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER:  Defendants deny the allegations in paragraph 506.

507.    The transfers of the PHII Oregon Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 507.

508.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Oregon Properties from Property Holdings II and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 508.

509.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Oregon Properties.

ANSWER: Defendants deny the allegations in paragraph 509.

COUNT 47
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Arizona Properties,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1))

510.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

511.   At all relevant times, Holdings had an interest in the PHII Properties, including those identified on Exhibit A as being located in the state of Arizona (the "PHII Arizona Properties").

ANSWER: Defendants deny the allegations in paragraph 511.

512.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Arizona Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 512.

513.   The direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 513.

514.   Actual fraudulent intent can be inferred from at least the following "badges of fraud":  (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest;  (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements;  (c) the PHII Arizona Properties were transferred to Property Holdings II, an insider by virtue of the fact that it was indirectly owned by Holdings;  (d) Holdings directly or indirectly

controlled the disposition of the proceeds received from the sale of the PHII Arizona Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Property Holdings II provided no consideration to Holdings for the PHII Arizona Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PHII Arizona Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 514.

515.    The transfers of the PHII Arizona Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 515.

516.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Arizona Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 516.

517.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Arizona Properties.

ANSWER: Defendants deny the allegations in paragraph 517.

COUNT 48
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Arizona Properties,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004(A)(2))

518.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

519.    At all relevant times, Holdings had an interest in the PHII Arizona Properties.

ANSWER:  Defendants deny the allegations in paragraph 519.

520.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Arizona Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 520.

521.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Arizona Properties.

ANSWER:  Defendants deny the allegations in paragraph 521.

522.    Holdings transferred the PHII Arizona Properties to Property Holdings II when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER:  Defendants deny the allegations in paragraph 522.

523.    The transfers of the PHII Arizona Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 523.

524.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Arizona Properties from Property Holdings II and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 524.

525.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Arizona Properties.

ANSWER:  Defendants deny the allegations in paragraph 525.

COUNT 49
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Arizona Properties,
11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005)

526.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

527.    At all relevant times, Holdings had an interest in the PHII Arizona Properties.

ANSWER:  Defendants deny the allegations in paragraph 527.

528.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Arizona Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 528.

529.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Arizona Properties.

ANSWER:  Defendants deny the allegations in paragraph 529.

530.   Holdings transferred the PHII Arizona Properties to Property Holdings II when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 530.

531.   The transfers of the PHII Arizona Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 531.

532.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Arizona Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 532.

533.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Arizona Properties.

ANSWER: Defendants deny the allegations in paragraph 533.

### COUNT 50
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII Nevada Properties,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(a))

534.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

535.   At all relevant times, Holdings had an interest in the PHII Properties, including those identified on Exhibit A as being located in the state of Nevada (the "PHII Nevada Properties").

ANSWER: Defendants deny the allegations in paragraph 535.

536.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Nevada Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 536.

537.    The direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 537.

538.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PHII Nevada Properties were transferred to Property Holdings II, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or indirectly controlled the disposition of the proceeds received from the sale of the PHII Nevada Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Property Holdings II provided no consideration to Holdings for the PHII Nevada Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PHII Nevada Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 538.

539.    The transfers of the PHII Nevada Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER:  Defendants deny the allegations in paragraph 539.

540.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Nevada Properties from Property Holdings II and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 540.

541.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PCS Nevada Properties.

ANSWER:  Defendants deny the allegations in paragraph 541.

### COUNT 51
**(Against Property Holdings II and Comvest)**
**(Avoidance of the Transfer of the PHII Nevada Properties,**
**11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(b))**

542.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

543.    At all relevant times, Holdings had an interest in the PHII Nevada Properties.

ANSWER:  Defendants deny the allegations in paragraph 543.

544.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Nevada Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 544.

545.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 545.

546.    Holdings transferred the PHII Nevada Properties to Property Holdings II when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 546.

547.    The transfers of the PHII Nevada Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 547.

548.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Nevada Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 548.

549.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 549.

### COUNT 52
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PCS Nevada Properties,
11 U.S.C. §§ 544(b) and 550, and NRS § 112.190(1))

550.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

551. At all relevant times, Holdings had an interest in the PHII Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 551.

552. Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII Nevada Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 552.

553. Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 553.

554. Holdings transferred the PHII Nevada Properties to Property Holdings II when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 554.

555. The transfers of the PHII Nevada Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 555.

556. Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII Nevada Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 556.

557. Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Nevada Properties.

ANSWER: Defendants deny the allegations in paragraph 557.

### COUNT 53
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII California Properties,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1))

558.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

559.   At all relevant times, Holdings had an interest in the PHII Properties, including those identified on Exhibit A as being located in the state of California (the "PHII California Properties").

ANSWER: Defendants deny the allegations in paragraph 559.

560.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII California Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 560.

561.   The direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 561.

562.   Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the PHII California Properties were transferred to Property Holdings II, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or

indirectly controlled the disposition of the proceeds received from the sale of the PHII California Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Property Holdings II provided no consideration to Holdings for the PHII California Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the PHII California Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 562.

563.    The transfers of the PHII California Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 563.

564.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII California Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 564.

565.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII California Properties.

ANSWER: Defendants deny the allegations in paragraph 565.

COUNT 54

(Against Property Holdings II and Comvest)

(Avoidance of the Transfer of the PHII California Properties,

11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(2))

566.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

567.   At all relevant times, Holdings had an interest in the PHII California Properties.

ANSWER: Defendants deny the allegations in paragraph 567.

568.   Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII California Properties to Property Holdings II.

ANSWER: Defendants deny the allegations in paragraph 568.

569.   Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII California Properties.

ANSWER: Defendants deny the allegations in paragraph 569.

570.   Holdings transferred the PHII California Properties to Property Holdings II when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 570.

571.   The transfers of the PHII California Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 571.

144

572.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII California Properties from Property Holdings II and Comvest.

ANSWER:  Defendants deny the allegations in paragraph 572.

573.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the PHII California Properties or their value.

ANSWER:  Defendants deny the allegations in paragraph 573.

COUNT 55
(Against Property Holdings II and Comvest)
(Avoidance of the Transfer of the PHII California Properties,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05)

574.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

575.    At all relevant times, Holdings had an interest in the PHII California Properties.

ANSWER:  Defendants deny the allegations in paragraph 575.

576.    Within four years of the Petition Date, Holdings directly or indirectly transferred the PHII California Properties to Property Holdings II.

ANSWER:  Defendants deny the allegations in paragraph 576.

577.    Holdings received less than reasonably equivalent value from Property Holdings II in exchange for the transfer of the PHII California Properties.

ANSWER:  Defendants deny the allegations in paragraph 577.

578.   Holdings transferred the PHII California Properties to Property Holdings II when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 578.

579.   The transfers of the PHII California Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 579.

580.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the PHII California Properties from Property Holdings II and Comvest.

ANSWER: Defendants deny the allegations in paragraph 580.

581.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII California Properties.

ANSWER: Defendants deny the allegations in paragraph 581.

## COUNT 56
### (Against Haggen SLB and Comvest )
### (Avoidance of the Transfer of the Haggen SLB Properties,
### 11 U.S.C. §§ 548(a)(1)(A) and 550)

582.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

583.   At all relevant times, Holdings had an interest in the SLB Properties, and in the right to acquire the SLB Properties, listed on Exhibit B (the "Haggen SLB Properties").

ANSWER: Defendants deny the allegations in paragraph 583.

584.    Within two years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB Properties to Haggen SLB pursuant to the applicable Contribution Agreements.

ANSWER: Defendants deny the allegations in paragraph 584.

585.    The direct or indirect transfer of the Haggen SLB Properties from Holdings to Haggen SLB was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 585.

586.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the Haggen SLB Properties were transferred to Haggen SLB, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or indirectly controlled the disposition of the proceeds received from the sale of the Haggen SLB Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the Haggen SLB Properties from Holdings to Haggen SLB was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Haggen SLB provided no consideration to Holdings for the Haggen SLB Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the Haggen SLB Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 586.

587.    The transfers of the Haggen SLB Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 587.

588.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 588.

589.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Properties.

ANSWER: Defendants deny the allegations in paragraph 589.

COUNT 57
(Against Haggen SLB and Comvest)
(Avoidance of the Transfer of the Haggen SLB Properties,
11 U.S.C. §§ 548(a)(1)(B) and 550)

590.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

591.    At all relevant times, Holdings had an interest in the Haggen SLB Properties.

ANSWER: Defendants deny the allegations in paragraph 591.

592.    Within two years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB Properties to Haggen SLB pursuant to the applicable Contribution Agreements.

ANSWER: Defendants deny the allegations in paragraph 592.

593.    Holdings received less than reasonably equivalent value from Haggen SLB in exchange for the transfer of the Haggen SLB Properties.

ANSWER: Defendants deny the allegations in paragraph 593.

594.    Holdings transferred the Haggen SLB Properties to Haggen SLB when Holdings (a) was insolvent, or Holdings became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Holdings was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER: Defendants deny the allegations in paragraph 594.

595.    The transfers of the Haggen SLB Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 595.

596.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 596.

597.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Properties.

ANSWER: Defendants deny the allegations in paragraph 597.

### COUNT 58
**(Against Haggen SLB and Comvest)**
**(Avoidance of the Transfer of the Haggen SLB Washington Properties,**
**11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1))**

598.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

599.    At all relevant times, Holdings had an interest in the Haggen SLB Properties, including those identified on Exhibit B as being located in the state of Washington (the "Haggen SLB Washington Properties").

ANSWER: Defendants deny the allegations in paragraph 599.

600.    Within four years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB Washington Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 600.

601.    The direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 601.

602.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the Haggen SLB Washington Properties were transferred to Haggen SLB, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or indirectly controlled the disposition of the proceeds received from the sale of the Haggen SLB Washington Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Haggen SLB provided no consideration to Holdings for the Haggen SLB Washington Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight

150

parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the Haggen SLB Washington Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 602.

603.    The transfers of the Haggen SLB Washington Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 603.

604.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB Washington Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 604.

605.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 605.

<u>COUNT 59</u>
(Against Haggen SLB and Comvest)
(Avoidance of the Transfer of the Haggen SLB Washington Properties,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2))

606.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

607.    At all relevant times, Holdings had an interest in the Haggen SLB Washington Properties.

151

ANSWER: Defendants deny the allegations in paragraph 607.

608.   Within four years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB Washington Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 608.

609.   Holdings received less than reasonably equivalent value from Haggen SLB in exchange for the transfer of the Haggen SLB Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 609.

610.   Holdings transferred the Haggen SLB Washington Properties to Haggen SLB when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 610.

611.   The transfers of the Haggen SLB Washington Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 611.

612.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB Washington Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 612.

613.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 613.

<u>COUNT 60</u>
(Against Haggen SLB and Comvest)
(Avoidance of the Transfer of the Haggen SLB Washington Properties,
11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a))

614.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

<u>ANSWER</u>:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

615.    At all relevant times, Holdings had an interest in the Haggen Washington Properties.

<u>ANSWER</u>:  Defendants deny the allegations in paragraph 615.

616.    Within four years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB Washington Properties to Haggen SLB.

<u>ANSWER</u>:  Defendants deny the allegations in paragraph 616.

617.    Holdings received less than reasonably equivalent value from Haggen SLB in exchange for the transfer of the Haggen SLB Washington Properties.

<u>ANSWER</u>:  Defendants deny the allegations in paragraph 617.

618.    Holdings transferred the Haggen SLB Washington Properties to Haggen SLB when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

<u>ANSWER</u>:  Defendants deny the allegations in paragraph 618.

619.    The transfers of the Haggen SLB Washington Properties from Holdings to Property Holdings II were made for Comvest's benefit.

<u>ANSWER</u>:  Defendants deny the allegations in paragraph 619.

620.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB Washington Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 620.

621.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Washington Properties.

ANSWER: Defendants deny the allegations in paragraph 621.

COUNT 61
(Against Haggen SLB and Comvest)
(Avoidance of the Transfer of the Haggen SLB California Properties,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1))

622.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

623.    At all relevant times, Holdings had an interest in the Haggen SLB Properties, including those identified on Exhibit B as being located in the state of California (the "Haggen SLB California Properties").

ANSWER: Defendants deny the allegations in paragraph 623.

624.    Within four years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB California Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 624.

625.    The direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

ANSWER: Defendants deny the allegations in paragraph 625.

626.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Holdings' Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties to the applicable Contribution Agreements; (c) the Haggen SLB California Properties were transferred to Haggen SLB, an insider by virtue of the fact that it was indirectly owned by Holdings; (d) Holdings directly or indirectly controlled the disposition of the proceeds received from the sale of the Haggen SLB California Properties pursuant to the applicable Sale Leaseback Transactions; (e) the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB was not publicly disclosed; (f) the Contribution Agreements were not the subject of arms' length negotiations; (g) Haggen SLB provided no consideration to Holdings for the Haggen SLB California Properties; (h) the same person, Derrick Anderson, signed each applicable Contribution Agreement on behalf of eight different parties even though not all of the eight parties had an interest in each transfer effectuated by each Contribution Agreement; and (i) the Debtors were insolvent or became insolvent shortly after Holdings transferred the Haggen SLB California Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 626.

627.    The transfers of the Haggen SLB California Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 627.

155

628.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB California Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 628.

629.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB California Properties.

ANSWER: Defendants deny the allegations in paragraph 629.

COUNT 62
(Against Haggen SLB and Comvest)
(Avoidance of the Transfer of the Haggen SLB California Properties,
11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(2))

630.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

631.    At all relevant times, Holdings had an interest in the Haggen SLB California Properties.

ANSWER: Defendants deny the allegations in paragraph 631.

632.    Within four years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB California Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 632.

633.    Holdings received less than reasonably equivalent value from Haggen SLB in exchange for the transfer of the Haggen SLB California Properties.

ANSWER: Defendants deny the allegations in paragraph 633.

634.    Holdings transferred the Haggen SLB California Properties to Haggen SLB when Holdings (a) was engaged in business, or was about to engage in business, for which Holdings' remaining property was unreasonably small capital; or (b) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts became due.

ANSWER: Defendants deny the allegations in paragraph 634.

635.    The transfers of the Haggen SLB California Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 635.

636.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB California Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 636.

637.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the Haggen SLB California Properties or their value.

ANSWER: Defendants deny the allegations in paragraph 637.

## COUNT 63
### (Against Haggen SLB and Comvest)
### (Avoidance of the Transfer of the Haggen SLB California Properties, 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05)

638.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

639.    At all relevant times, Holdings had an interest in the Haggen SLB California Properties.

ANSWER: Defendants deny the allegations in paragraph 639.

640.    Within four years of the Petition Date, Holdings directly or indirectly transferred the Haggen SLB California Properties to Haggen SLB.

ANSWER: Defendants deny the allegations in paragraph 640.

641.    Holdings received less than reasonably equivalent value from Haggen SLB in exchange for the transfer of the Haggen SLB California Properties.

ANSWER: Defendants deny the allegations in paragraph 641.

642.    Holdings transferred the Haggen SLB California Properties to Haggen SLB when Holdings was insolvent or Holdings became insolvent as a result of the transfers.

ANSWER: Defendants deny the allegations in paragraph 642.

643.    The transfers of the Haggen SLB California Properties from Holdings to Property Holdings II were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 643.

644.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Haggen SLB California Properties from Haggen SLB and Comvest.

ANSWER: Defendants deny the allegations in paragraph 644.

645.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB California Properties.

ANSWER: Defendants deny the allegations in paragraph 645.

<u>COUNT 64</u>
(Against Comvest)
(Avoidance of the Transfer of the Comvest Payments,
11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550)

646.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

<u>ANSWER</u>:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

647.    At all relevant times, Haggen had an interest in the Comvest Payments.

<u>ANSWER</u>:    Defendants deny the allegations in paragraph 647.

648.    Within two years of the Petition Date, Haggen directly or indirectly transferred the Comvest Payments to, or for the benefit of, Comvest.

<u>ANSWER</u>:    Defendants deny the allegations in paragraph 648.

649.    The direct or indirect transfer of the Comvest Payments from Haggen to Comvest was made with the actual intent to hinder, delay or defraud the Debtors' creditors.

<u>ANSWER</u>:    Defendants deny the allegations in paragraph 649.

650.    Actual fraudulent intent can be inferred from at least the following "badges of fraud": (a) a majority of Haggen's Managers were simultaneously employed or affiliated with Comvest; (b) Comvest dominated and controlled the parties who authorized the transfer of the Comvest Payments; (c) the Comvest Payments were transferred to Comvest, an insider by virtue of the fact that it owned, directly or indirectly, the Debtors; (d) the direct or indirect transfer of the Comvest Payments from the Debtors to Comvest was not publicly disclosed; (e) the Comvest Payments (and the underlying agreements, including the Management Agreement) were not the subject of arms' length negotiations; (f) Comvest provided no consideration to the Debtors for

159

the Comvest Payments; and (g) the Debtors were insolvent or became insolvent shortly after they transferred the Comvest Payments to Comvest.

ANSWER: Defendants deny the allegations in paragraph 650.

651.   The transfers of the Comvest Payments from Haggen to Comvest were made for Comvest's benefit.

ANSWER: Defendants deny the allegations in paragraph 651.

652.   The transfers of the Comvest Payments from Haggen to Comvest are avoidable under section 548(a)(1)(A) of the Bankruptcy Code.

ANSWER: Defendants deny the allegations in paragraph 652.

653.   The transfers of the Comvest Payments from Haggen to Comvest are also avoidable under section 544(b) of the Bankruptcy Code and applicable fraudulent transfer laws of the states of Washington (RCW §§ 19.40.041(a)(1)), Oregon (ORS §§ 95.230(a)(1)), Arizona (ARS §§ 44-1004(A)(1)), Nevada (NRS §§ 112.180(1)(a), and California (Cal. Civil Code §§ 3439.04(a)(1)).

ANSWER: Defendants deny the allegations in paragraph 653.

654.   Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the value of the Comvest Payments from Comvest.

ANSWER: Defendants deny the allegations in paragraph 654.

655.   Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Comvest Payments from Haggen to Comvest, and to a judgment against Comvest to recover the value of the Comvest Payments.

ANSWER: Defendants deny the allegations in paragraph 655.

COUNT 65
(Against Comvest)
(Avoidance of the Transfer of the Comvest Payments,
11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550)

656.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

657.    At all relevant times, Haggen had an interest in the Comvest Payments.

ANSWER:  Defendants deny the allegations in paragraph 657.

658.    Within two years of the Petition Date, Haggen directly or indirectly transferred the Comvest Payments to, or for the benefit of, Comvest.

ANSWER:  Defendants deny the allegations in paragraph 658.

659.    Haggen did not receive reasonably equivalent value or fair consideration from Comvest in exchange for the transfer of the Comvest Payments.

ANSWER:  Defendants deny the allegations in paragraph 659.

660.    Haggen transferred the Comvest Payments to Comvest when Haggen (a) was insolvent, or Haggen became insolvent as a result of such transfers; (b) were engaged in business, or were about to engage in business, for which any property remaining with Haggen was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

ANSWER:  Defendants deny the allegations in paragraph 660.

661.    At all relevant times, Haggen had actual creditors holding unsecured claims allowable within the meaning of Bankruptcy Code section 502 and 544(b).

ANSWER:  Defendants deny the allegations in paragraph 661.

662.    The transfers of the Comvest Payments from Haggen to Comvest are avoidable under section 548(a)(1)(B) of the Bankruptcy Code.

ANSWER: Defendants deny the allegations in paragraph 662.

663.    The transfers of the Comvest Payments from Haggen to Comvest are also avoidable under section 544(b) of the Bankruptcy Code and applicable fraudulent transfer laws of the states of Washington (RCW §§ 19.40.041(a)(2), 19.40.051(a)), Oregon (ORS §§ 95.230(a)(2), 95.240(1)), Arizona (ARS §§ 44-1004(A)(2), 44-1005), Nevada (NRS §§ 112.180(1)(b), 112.190), and California (Cal. Civil Code §§ 3439.04(a)(2), 3439.05).

ANSWER: Defendants deny the allegations in paragraph 663.

664.    Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover for the benefit of the Debtors' estates the Comvest Payments, or the value of such property, from Comvest.

ANSWER: Defendants deny the allegations in paragraph 664.

665.    Accordingly, Plaintiff is entitled to avoid the direct or indirect transfer of the Comvest Payments from the Debtors to Comvest, and to a judgment against Comvest to recover the Comvest Payments or their value.

ANSWER: Defendants deny the allegations in paragraph 665.

## COUNT 66
### (Against Comvest)
### (Breach of Fiduciary Duty by Comvest as Controlling Equity Owner)

666.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

667.    At all relevant times, Comvest directly or indirectly owned a majority of the interests of Holdings, which in turn directly or indirectly owned the other Debtors and each of the PropCo Entities and SLB Entities.

ANSWER:  Defendants admit the allegations in paragraph 667.

668.    At all relevant times, a majority of Holdings' Managers were employees, partners or agents of Comvest.

ANSWER:  Defendants admit the allegations in paragraph 668.

669.    Because Comvest owned a majority of the interests of Holdings, and controlled Holdings through the Managers it appointed, Comvest owed to the Debtors fiduciary obligations of good faith, care and loyalty.

ANSWER:  Defendants deny the allegations in paragraph 669.

670.    At the time of the Albertson's Acquisition and the Challenged Transactions, the Debtors (a) were engaged or were about to be engaged in a business for which their remaining assets and/or capital were unreasonably small in relation to their business, (b) intended to incur, or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due and/or (c) were insolvent or would be rendered insolvent by the Challenged Transactions.  Consequently, Comvest had a fiduciary obligation to the Debtors and their unsecured creditors to protect the interests of such creditors.  Even if the Debtors were not insolvent or did not have unreasonably small capital, Comvest owed duties of loyalty and other duties to the Debtors.

ANSWER:  Defendants deny the allegations in paragraph 670.

671.    Comvest had a substantial financial interest in the Challenged Transactions because they formed the method by which Comvest executed its strategy to exploit for its own benefit the Real Property and related assets being acquired from Albertson's.

ANSWER:  Defendants deny the allegations in paragraph 671.

672.    Comvest breached its fiduciary duties by orchestrating, approving, and facilitating the Challenged Transactions whereby the Debtors transferred to the non-Debtor bankruptcy-remote entities the valuable Real Property and related assets being acquired from Albertson's, and by extracting further value from the Debtor OpCo Entities as described above.

ANSWER:  Defendants deny the allegations in paragraph 672.

673.    Because Comvest directly and indirectly owned and controlled the Debtors, the SLB Entities and the PropCo Entities, Comvest had conflicts of interest when balancing the interests of the Debtors and their creditors against the interests of the SLB Entities and the PropCo Entities.

ANSWER:  Defendants deny the allegations in paragraph 673.

674.    The corporate structure conceived and/or created by Comvest enabled Comvest to engage in the Challenged Transactions and shield the Real Property and related assets acquired from Albertson's from the Debtors' unsecured creditors.

ANSWER:  Defendants deny the allegations in paragraph 674.

675.    Comvest engaged in self-dealing, acted in bad faith, breached its fiduciary duties (including the duty of loyalty), and took undue advantage of the Debtors by orchestrating, approving, and facilitating the Insider Transactions.

ANSWER:  Defendants deny the allegations in paragraph 675.

676.    Comvest also engaged in self-dealing, acted in bad faith, and breached its fiduciary duties (including the duty of loyalty) by using its positions as the controlling owner of the Debtors to cause Holdings and the other Debtors to "contribute" the Real Property and related assets to the non-Debtor Defendants for no consideration, to enter into the PropCo Leases and to pay rent thereunder, that enhanced Comvest's interests at the expense of the Debtors' unsecured creditors.

ANSWER:  Defendants deny the allegations in paragraph 676.

677.    The Debtors, their estates and their creditors have been damaged in an amount to be determined at trial as a result of the Challenged Transactions orchestrated, approved and facilitated by Comvest.

ANSWER:  Defendants deny the allegations in paragraph 677.

COUNT 67
(Against the Officers and Directors)
(Breach of Duties of Good Faith and Care)

678.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

679.    At all relevant times, the Officers and Directors owed the Debtors fiduciary obligations including, among others, the duties of good faith and care.

ANSWER:  Defendants deny the allegations in paragraph 679.

680.    At the time of the Albertson's Acquisition and the Challenged Transactions, the Debtors (a) were engaged or were about to be engaged in a business for which their remaining assets and/or capital were unreasonably small in relation to their business, (b) intended to incur, or reasonably should have believed that they would incur, debts beyond their ability to pay as

they became due and/or (c) was insolvent or would be rendered insolvent by the Challenged Transactions. Consequently, the Officers and Directors also had a fiduciary obligation to protect the interests of the Debtors' unsecured creditors.

ANSWER: Defendants deny the allegations in paragraph 680.

681.   The Officers and Directors knew or should have known that the Challenged Transactions were undertaken for Comvest's benefit, and at the expense of the Debtors' unsecured creditors. Nevertheless, the Officers and Directors participated or acquiesced in the plan to strip out for Comvest's benefit the Real Property and related assets being acquired from Albertson's, including by executing each of the Challenged Transactions.

ANSWER: Defendants deny the allegations in paragraph 681.

682.   Each of the Officers and Directors breached their fiduciary duties of good faith and care by approving, participating in, consummating and acquiescing in the Challenged Transactions whereby the Debtors transferred to the non-Debtor bankruptcy-remote entities the valuable Real Property and related assets being acquired from Albertson's, and by extracting further value from the Debtor OpCo Entities as described above.

ANSWER: Defendants deny the allegations in paragraph 682.

683.   As the Officers and Directors knew and intended, the corporate structure that they approved and created enabled Comvest to benefit from the Challenged Transactions by shielding the Real Property and related assets from the Debtors' unsecured creditors, and the Officers and Directors knew and enabled it.

ANSWER: Defendants deny the allegations in paragraph 683.

684.   The Officers and Directors breached their fiduciary duties of good faith and care, and were grossly negligent, by approving, participating in, consummating and acquiescing in the

Challenged Transactions, and by otherwise using their positions to cause Holdings and the other Debtors to "contribute" the Real Property and related assets to the non- Debtor Defendants for no consideration, to enter into the PropCo Leases and to pay rent thereunder, and to advance Comvest's interests at the expense of the Debtors' unsecured creditors.

ANSWER: Defendants deny the allegations in paragraph 684.

685.    The Officers and Directors also breached their duty of care, and were grossly negligent, in the planning and execution of the Albertson's Acquisition. The Officers and Directors relied on unrealistic financial projections; failed to create a viable plan for the acquisition and integration of 146 supermarkets; failed to hire and retain experienced senior management; failed to adapt to the new markets Haggen was venturing into; and -- as evidenced by the fact that the entire Albertson's Acquisition was deconstructed, in a bankruptcy, in less than twelve months -- otherwise destroyed a successful, decades-old enterprise.

ANSWER: Defendants deny the allegations in paragraph 685.

686.    Indeed, the Officers and Directors' breach of their duty of care, and grossly negligent conduct, is further shown by their failure to timely address alleged misconduct by Albertson's. Haggen has asserted that Albertson's intentionally engaged in a pattern of misconduct designed to thwart Haggen's attempts to successfully absorb the Albertson's stores. Even if Haggen's allegations were true, the Officers and Directors were grossly negligent in failing to raise such issues within 30 days after each store conversion, as required by section 21.4 of the APA. Upon information and belief, Haggen did not raise any meaningful concerns about the store conversion process until June 29, 2015, more than 30 days after virtually all of the stores were converted. Thus, the Officers and Directors either recklessly failed to timely

consider all material information available to them, or they were reckless in failing to timely assert Haggen's claims of misconduct.

ANSWER: Defendants deny the allegations in paragraph 686.

687.    The Debtors, their estates and their creditors have been damaged in an amount to be determined at trial as a result of the Officers and Directors' breach of their fiduciary duties of good faith and care.

ANSWER: Defendants deny the allegations in paragraph 687.

COUNT 68
(Against Holdings' Managers)
(Breach of Duty of Loyalty)

688.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

689.    Caple and Rodriguez were each affiliated with Comvest while simultaneously serving as a Manager of Holdings for the period beginning no later than November 24, 2014, and continuing through the Petition Date.

ANSWER: Defendants admit the allegations in paragraph 689.

690.    Niegsch was affiliated with Comvest while simultaneously serving as a Manager of Holdings for the period beginning no later than January 30, 2015, and continuing through the Petition Date.

ANSWER: Defendants admit the allegations in paragraph 690.

691.    Clougher served as a Manager of Holdings for the period beginning no later than January 30, 2015, and continuing through the Petition Date.

ANSWER: Defendants admit the allegations in paragraph 691.

692.    Shaner served as a Manager of Holdings for the period beginning no later than January 30, 2015, and continuing through September 2, 2015 (Caple, Rodriguez, Niegsch, Clougher, and Shaner are collectively referred to as "Holdings' Managers").

ANSWER:  Defendants admit the allegations in paragraph 692.

693.    At all relevant times, Holdings' Managers owed the Debtors fiduciary obligations, including the duty of loyalty.

ANSWER:  Defendants deny the allegations in paragraph 693.

694.    Holdings' Managers breached their duty of loyalty, and acted in bad faith, by advancing Comvest's interests at Haggen's expense.

ANSWER:  Defendants deny the allegations in paragraph 694.

695.    Holdings' Managers knew or should have known that the Challenged Transactions were undertaken for Comvest's benefit, and at the expense of the Debtors' unsecured creditors. Nevertheless, Holdings' Managers participated or acquiesced in the plan to strip out for Comvest's benefit the Real Property and related assets being acquired from Albertson's, including by executing each of the Challenged Transactions.

ANSWER:  Defendants deny the allegations in paragraph 695.

696.    Each of Haggen's Managers acted in bad faith and breached their duty of loyalty by approving, participating in, consummating and acquiescing in the Challenged Transactions whereby the Debtors transferred to the non-Debtor bankruptcy-remote entities the valuable Real Property and related assets being acquired from Albertson's, and by extracting further value from the Debtor OpCo Entities through the imposition of the PropCo Leases and as otherwise described above.

ANSWER:  Defendants deny the allegations in paragraph 696.

697.    Holdings' Managers acted in bad faith and breached their duty of loyalty by approving, participating in, consummating and acquiescing in the Challenged Transactions.

ANSWER: Defendants deny the allegations in paragraph 697.

698.    Holdings' Managers also acted in bad faith and breached their duty of loyalty by using their positions to cause Holdings and the other Debtors to "contribute" the Real Property and related assets to the non-Debtor Defendants for no consideration, to enter into the PropCo Leases and to pay rent thereunder, and to otherwise advance Comvest's interests at the expense of the Debtors and their unsecured creditors.

ANSWER: Defendants deny the allegations in paragraph 698.

699.    The Debtors, their estates and creditors have been damaged by the Holdings' Managers' breach of their duty of loyalty in an amount to be determined at trial.

ANSWER: Defendants deny the allegations in paragraph 699.

### COUNT 69
(Against the Intercompany Lenders)
(Equitable Subordination of the Intercompany Loan – U.S.C. § 510(c))

700.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

701.    Comvest indirectly owns a majority of the interests of the Intercompany Lenders, and is therefore the indirect beneficiary of the Intercompany Notes and the security interests granted under the Intercompany Loan.

ANSWER: Defendants deny the allegations in paragraph 701.

702.    The Intercompany Loan was not an arms' length transaction as evidenced by, among other things, Defendant Blake Barnett's signature on the Intercompany Loan and Intercompany Notes, on behalf of all the parties thereto.

ANSWER:  Defendants deny the allegations in paragraph 702.

703.    At the direction of Comvest and the Officers and Directors, including Blake Barnett, the Intercompany Lenders engaged in unfair and inequitable conduct by taking security interests and the Intercompany Notes at a time when the Debtors were insolvent, unable to pay their debts as they became due, and left with unreasonably small capital.

ANSWER:  Defendants deny the allegations in paragraph 703.

704.    As set forth above, Comvest otherwise engaged in a pattern of misconduct and inequitable conduct at the expense of the Debtors, their estates and stakeholders, including unsecured creditors, including by engineering and executing the Challenged Transactions.

ANSWER:  Defendants deny the allegations in paragraph 704.

705.    Comvest's conduct, which is imputed to the Intercompany Lenders, injured the Debtors' unsecured creditors and conferred an unfair advantage upon Comvest.

ANSWER:  Defendants deny the allegations in paragraph 705.

706.    Under the principles of equitable subordination, the Intercompany Loan is subject to subordination pursuant to section 510(c) of the Bankruptcy Code.

ANSWER:  Defendants deny the allegations in paragraph 706.

707.    Equitable subordination of the Intercompany Loan is consistent with the provisions and purposes of the Bankruptcy Code.

ANSWER:  Defendants deny the allegations in paragraph 707.

708.    Accordingly, the Intercompany Loan is subject to equitable subordination.

ANSWER: Defendants deny the allegations in paragraph 708.

## COUNT 70
### (Against the Intercompany Lenders)
### (Transfer of Liens and Security Interests - 11 U.S.C. §510(c))

709.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

710.    As set forth above, Comvest and the Intercompany Lenders engaged in a pattern of misconduct and inequitable conduct at the expense of the Debtors and their estates and stakeholders, including unsecured creditors.

ANSWER:  Defendants deny the allegations in paragraph 710.

711.    As set forth above, Comvest and the Intercompany Lenders' conduct has injured the Debtors' unsecured creditors and conferred an unfair advantage upon them.

ANSWER:  Defendants deny the allegations in paragraph 711.

712.    Accordingly, all of the liens securing the Intercompany Borrowers' obligations to the Intercompany Lenders under the Intercompany Notes, to the extent valid, should be transferred to the Debtors' estates.

ANSWER:  Defendants deny the allegations in paragraph 712.

## COUNT 71
### (Against the Intercompany Lenders)
### (Recharacterization of the Intercompany Loan as Equity)

713.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

714.    At the time the Intercompany Loan was made, the Intercompany Borrowers were insolvent, were unable to pay their debts as they became due and otherwise had unreasonably small capital for the business in which they were engaged.

ANSWER: Defendants deny the allegations in paragraph 714.

715.    The Intercompany Loan was not the product of an arms' length negotiation.

ANSWER: Defendants deny the allegations in paragraph 715.

716.    No third party lender would have loaned $25 million to the Intercompany Borrowers in August 2015 on the terms set forth in the Intercompany Loan.

ANSWER: Defendants deny the allegations in paragraph 716.

717.    The terms of the Intercompany Loan were not commercially reasonable given the Intercompany Borrowers' financial condition at the time the Loan was made.

ANSWER: Defendants deny the allegations in paragraph 717.

718.    Based on the foregoing, the Intercompany Borrowers granted a subordinated security interest in certain assets, and issued the Intercompany Notes, at a time when no reasonable outsider would have lent money under the terms of the Intercompany Loan. As such, the Intercompany Loan must be recharacterized as equity in the Intercompany Borrowers pursuant to applicable law.

ANSWER: Defendants deny the allegations in paragraph 718.

COUNT 72
(Against the SLB Entities and the PropCo Entities)
(Substantive Consolidation)

719.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

720.   At all relevant times, the SLB Entities and the PropCo Entities were solely owned (directly or indirectly) and controlled by Holdings.

**ANSWER:** Defendants deny the allegations in paragraph 720, except admit (a) that Holdings was the sole member of Property Holdings, Property Holdings II, and Operations, (b) that Property Holdings was the sole member of PropCo South and PropCo North, (c) that Operations was the sole member of OpCo South, OpCo North, and Acquisition, and (d) that Acquisition was the sole member of Haggen SLB.

721.   The SLB Entities and the PropCo Entities, along with the Debtor OpCo Entities, were created in connection with the Albertson's Acquisition to facilitate the separation of the Real Property and related assets from the operating entities and their liabilities.

**ANSWER:** Defendants deny the allegations in paragraph 721.

722.   The SLB Entities and the PropCo Entities served no purpose other than to acquire and/or convey the Real Property and related assets, and collect rent, for Comvest's ultimate benefit.

**ANSWER:** Defendants deny the allegations in paragraph 722.

723.   From the time of their formation in December 2014 through the Petition Date, the PropCo Entities (a) had no independent managers, but were managed solely by their corporate owner, Property Holdings, (b) had no creditors (other than PNC, to which the PropCo Entities allegedly provided various mortgages/deeds of trust to secure a limited guarantee, and certain insider obligations), (c) did not create or maintain any board minutes, (d) did not utilize their own domain name, and (e) maintained their business addresses, their books and records and their e-mail server at the Debtors' location.

174

ANSWER: Defendants admit the allegations in paragraph 723, except deny that the PropCo Entities "(a) had no independent managers, but were managed solely by their corporate owner, Property Holdings" and "(b) had no creditors (other than PNC, to which the PropCo Entities allegedly provided various mortgages/deeds of trust to secure a limited guarantee, and certain insider obligations)."

724.    From the time of their formation in December 2014 through the Petition Date, the SLB Entities (a) had no independent managers, but were managed solely by their respective corporate owner, (b) had no creditors, (c) did not create or maintain any board minutes, (d) did not utilize their own domain name, and (e) maintained their business addresses, their books and records and their e-mail server at the Debtors' location.

ANSWER: Defendants admit the allegations in paragraph 724, except deny that the SLB Entities "had no creditors" and clarify that Haggen SLB was managed by Acquisition and Property Holdings II was managed by Holdings.

725.    At all relevant times, the Debtors' finances were so intermingled and interdependent with the SLB Entities and the PropCo Entities that administration of the Debtors' estates by themselves would leave the Debtors' creditors without assets that, but for their use by the SLB Entities and the PropCo Entities, would have been available to satisfy debts owed to them.

ANSWER: Defendants deny the allegations in paragraph 725.

726.    Pursuant to section 105 of the Bankruptcy Code, this Court, as a court of equity, has the power and authority to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

ANSWER: Defendants deny the allegations in paragraph 726.

727.    Given (a) the identity of the interests among the Debtors, the SLB Entities and the PropCo Entities, including their common ownership, (b) the improper purpose for which the SLB Entities and the PropCo Entities were created, and (c) Comvest's inequitable conduct in attempting to sequester the Real Property and related assets for its benefit, and to the exclusion of the Debtors' general unsecured creditors, it is necessary and appropriate that the business affairs of the SLB Entities and the PropCo Entities be administered and resolved in conjunction with the Debtors' affairs.

ANSWER: Defendants deny the allegations in paragraph 727.

728.    Substantive consolidation will streamline the distribution of assets among all creditors.

ANSWER: Defendants deny the allegations in paragraph 728.

729.    Substantive consolidation is necessary to insure the equitable treatment of all creditors, in that the Debtors' unsecured creditors will unfairly and inequitably receive a smaller share of assets if the SLB Entities and the PropCo Entities are not brought into these proceedings.

ANSWER: Defendants deny the allegations in paragraph 729.

## COUNT 73
### (Against Comvest)
### (Unjust Enrichment)

730.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

731.    The Debtors conferred benefits on Comvest by entering into the Challenged Transactions, including but not limited to the Contribution Agreements and the PropCo Leases.

ANSWER: Defendants deny the allegations in paragraph 731.

732.    Comvest knowingly accepted the benefits conferred on them by the Debtors.

ANSWER: Defendants deny the allegations in paragraph 732.

733.    Comvest's receipt of the benefits conferred upon it in connection with the Challenged Transactions was without justification or compensation to the Debtors and has unjustly enriched Comvest.

ANSWER: Defendants deny the allegations in paragraph 733.

734.    Plaintiff has no adequate remedy at law to recover the value transferred from the Debtors to Comvest in connection with the Challenged Transactions.

ANSWER: Defendants deny the allegations in paragraph 734.

735.    Accordingly, as a result of Comvest's unjust enrichment at the Debtors' expense, Plaintiff is entitled to restitution from Comvest in an amount to be determined at trial.

ANSWER: Defendants deny the allegations in paragraph 735.

### COUNT 74
### (Against the SLB Entities)
### (Unjust Enrichment)

736.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:    Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

737.    The OpCo Entities conferred a benefit on the SLB Entities by entering into above-market leases in connection with the Sale Leaseback Transactions thereby artificially increasing the price that the SLB Entities received for the sale of the SLB Properties.

ANSWER: Defendants deny the allegations in paragraph 737.

738.    The SLB Entities knowingly accepted the benefit conferred on them by the OpCo Entities, including the resulting and inflated purchase price the SLB Entities received for the SLB Properties.

ANSWER: Defendants deny the allegations in paragraph 738.

739.    The SLB Entities' receipt of the inflated proceeds for the sale of the SLB Properties, based on the inflated and above-market rent obligations imposed on the OpCo Entities, was without justification or compensation to the OpCo Entities and has unjustly enriched the SLB Entities.

ANSWER: Defendants deny the allegations in paragraph 739.

740.    Plaintiff has no adequate remedy at law to recover the difference between the market rent the OpCo Entities should have paid under the Sale Leaseback leases, and the inflated rent actually paid.

ANSWER: Defendants deny the allegations in paragraph 740.

741.    Accordingly, as a result of the SLB Entities' unjust enrichment at the OpCo Entities' expense, Plaintiff is entitled to restitution from the SLB Entities in an amount to be determined at trial but which is at least equal to the above-market rent paid under the leases imposed on the OpCo Entities in connection with the Sale Leaseback Transactions.

ANSWER: Defendants deny the allegations in paragraph 741.

COUNT 75
(Against the PropCo Entities)
(Unjust Enrichment)

742.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

178

743.   The Debtors conferred benefits on the PropCo Entities by entering into the Contribution Agreements and the PropCo Leases.

ANSWER:  Defendants deny the allegations in paragraph 743.

744.   The PropCo Entities knowingly accepted the benefits conferred on them by the Debtors.

ANSWER:  Defendants deny the allegations in paragraph 744.

745.   The PropCo Entities' receipt of the benefits conferred upon them in connection with the Contribution Agreements and the PropCo Leases was without justification or compensation to the Debtors and has unjustly enriched the PropCo Entities.

ANSWER:  Defendants deny the allegations in paragraph 745.

746.   Plaintiff has no adequate remedy at law to recover the value conveyed by the Debtors to the PropCo Entities pursuant to the Contribution Agreements and the PropCo Leases.

ANSWER:  Defendants deny the allegations in paragraph 746.

747.   Accordingly, as a result of the PropCo Entities' unjust enrichment at the Debtors' expense, Plaintiff is entitled to restitution from the PropCo Entities in an amount to be determined.

ANSWER:  Defendants deny the allegations in paragraph 747.

### COUNT 76
(Against the PropCo Entities)
(Disallowance of the PropCo Entities' Lease Claims, 11 U.S.C. § 502(b))

748.   Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

ANSWER:   Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

749.    To the extent all or any of the PropCo Entities has filed, or in the future does file, one or more proofs of claim for damages concerning any of the PropCo Leases, including but not limited to a claim for rejection damages, such proof of claim (collectively, the "PropCo Entities' Lease Claims") should be disallowed.

ANSWER:  Defendants deny the allegations in paragraph 749.

750.    In particular, if any of the PropCo Leases are avoided, the PropCo Entities' Lease Claims must be disallowed on the ground that they assert claims that are unenforceable against the Debtors and the Debtors' property.

ANSWER:  Defendants deny the allegations in paragraph 750.

751.    Pursuant to section 502(b) of the Bankruptcy Code, the PropCo Entities' Lease Claims should be disallowed.

ANSWER:  Defendants deny the allegations in paragraph 751.

COUNT 77
(Against the PropCo Entities)
(Equitable Subordination of the PropCo Entities' Proofs of Claim – 11 U.S.C. § 510(c))

752.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

ANSWER:  Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

753.    To the extent all or any of the PropCo Entities has filed, or in the future does file, one or more proofs of claim, including but not limited to the PropCo Entities' Lease Claims, such proof of claim (collectively, the "PropCo Entities' Proofs of Claim"), to the extent not otherwise disallowed, should be equitably subordinated to the claims of the Debtors' general unsecured creditors.

ANSWER:  Defendants deny the allegations in paragraph 753.

754.    As set forth above, the PropCo Entities engaged in and, benefitted from, a pattern of misconduct and inequitable conduct at the expense of the Debtors, their estates and stakeholders, including unsecured creditors, including by engineering and executing the Challenged Transactions.

ANSWER: Defendants deny the allegations in paragraph 754.

755.    The PropCo Entities' conduct injured the Debtors' unsecured creditors and conferred an unfair advantage upon the PropCo Entities and, indirectly, Comvest.

ANSWER: Defendants deny the allegations in paragraph 755.

756.    Under the principles of equitable subordination, the PropCo Entities' Proofs of Claim are subject to subordination pursuant to section 510(c) of the Bankruptcy Code.

ANSWER: Defendants deny the allegations in paragraph 756.

757.    Equitable subordination of the PropCo Entities' Proofs of Claim is consistent with the provisions and purposes of the Bankruptcy Code.

ANSWER: Defendants deny the allegations in paragraph 757.

758.    Accordingly, the PropCo Entities' Proofs of Claim are subject to equitable subordination.

ANSWER: Defendants deny the allegations in paragraph 758.

## COUNT 78
### (Against the Avoidance Defendants)
### (Objection to Allowance of Claims Due to Pending Avoidance Actions 11 U.S.C. § 502(d))

759.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

ANSWER: Defendants reiterate and restate their responses to each preceding paragraph as if fully set forth herein.

760. Pursuant to section 502(d) of the Bankruptcy Code, Plaintiff objects to the allowance of any Proof of Claim filed now or hereafter filed by any Defendant that has been named in any of Counts 1-65 (together, the "Avoidance Defendants").

ANSWER: Defendants deny the allegations in paragraph 760.

761. Pursuant to section 502(d) of the Bankruptcy Code, each Proof of Claim filed by each of the Avoidance Defendants should be disallowed until he/she/it has paid the amounts and/or returned the property subject to avoidance.

ANSWER: Defendants deny the allegations in paragraph 761.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully assert that Plaintiff is not entitled to any of the relief it requests, or any relief at all.

## AFFIRMATIVE DEFENSES

Defendants set forth their affirmative defenses below. By setting forth these affirmative defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, nothing stated below is intended to be construed as an acknowledgement that any particular issue or subject matter is relevant. Defendants reserve their right to to amend or supplement this Answer with additional defenses upon particularization of the claims by Plaintiff, or upon further investigation or discovery of the facts related to this case.

1. The Complaint fails to state a claim upon which relief may be granted.

2. Plaintiff's claims are barred, in whole or in part, by the business judgment rule.

3. Recovery under the Complaint is barred, in whole or in part, due to failure to mitigate the alleged damages.

4.    Plaintiff's claims against Defendants are barred, in whole or in part, by the equitable doctrines of waiver, estoppel, laches, unclean hands, and/or ratification.

5.    Any recovery against Defendants is limited by the single satisfaction rule in 11 U.S.C. §550(d) and any attempt recover twice against Defendants is prohibited.

6.    Any losses sustained were not caused by any conduct of Defendants.

7.    Plaintiff's breach of fiduciary duty claims are barred in whole or in part by exculpatory provisions in the Defendants' governing documents.

8.    Plaintiff's claims are barred, in whole or in part, to the extent the alleged transfers were not made to or on behalf of the Defendants.

9.    Plaintiff's claims are barred, in whole or in part, by 11 U.S.C. § 548(a)(1), or by Uniform Fraudulent Conveyance Act or Uniform Fraudulent Transfer Act, or by applicable state law.

10.    Plaintiff's claims are barred, in whole or in part, to the extent any individual Plaintiff was solvent at the time of the transactions at issue.

11.    Plaintiff's claims are barred, in whole or in part, to the extent the alleged transfers to Defendants were in exchange for reasonably equivalent value.

12.    Plaintiff's claims are barred, in whole or in part, due to a lack of standing.

13.    Plaintiff's claims are barred, in whole or in part, to the extent that any of the alleged transfers were authorized by law, court order, administrative order and/or res judicata.

14.    Plaintiff's claims are barred, in whole or in part, by the doctrines of collateral estoppel and res judicata.

15.    Plaintiff's claims are barred in whole or in part by the release given to Albertson's.

Dated: December 9, 2016

**KIRKLAND & ELLIS LLP**
Stephen C. Hackney (admitted *pro hac vice*)
Richard U.S. Howell (admitted *pro hac vice*)
300 N. Lasalle St.
Chicago, IL 60654
Telephone: (312) 862-7092
E-mail: stephen.hackney@kirkland.com
E-mail: richard.howell@kirkland.com

-and-

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**


*/s/ Kevin J. Mangan*
Kevin Mangan (DE Bar No. 3810)
222 Delaware Avenue
Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4361
E-mail: kmangan@wcsr.com

-and-

Philip J. Mohr, Esq.
Womble Carlyle Sandridge & Rice, LLP
300 North Greene Street, Suite 1900
Greensboro, NC 27401
Telephone: (336) 721-3577
E-mail: pmohr@wcsr.com

*Counsel to Defendants Comvest Group Holdings, LLC,*
*Comvest Investment Partners III, L.P., Comvest Investment*
*Partners IV, L.P., Comvest Haggen Holdings III, LLC,*
*Comvest Haggen Holdings IV, LLC, Comvest Advisors,*
*LLC Haggen Property Holdings, LLC, Haggen Property*
*South LLC, Haggen Property North, LLC, Haggen*
*Property Holdings II, LLC, and Haggen SLB, LLC, and*
*John Caple, Cecilio Rodriguez, Michael Niegsch, John*
*Clougher, Blake Barnett, William Shaner, and Derrick*
*Anderson*

WCSR 38027445v1