# **EXHIBIT A**



PACHULSKI
STANG
ZIEHL
& JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE

780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700

FACSIMILE: 212/561 7777

LOS ANGELES
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910

FACSIMILE: 310/201 0760

SAN FRANCISCO
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000

FACSIMILE: 415/263 7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100

FACSIMILE: 302/652 4400

WEB: www.pszjlaw.com

Robert J. Feinstein                    February 3, 2017                    212.561.7710
                                                                           rfeinstein@pszjlaw.com

**Via E-mail**

Curt C. Mechling, Esq.
Stroock Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
cmechling@stroock.com

**Re: Committee v. Comvest Group Holdings, LLC, et. al,
Adv. Pro. 16-51204 (KG)**

Dear Curt:

We write with respect to the Debtors' assertion of the attorney-client privilege, and protection under the work-product doctrine, in the above-referenced adversary proceeding.

On September 7, 2016, the Official Committee of Unsecured Creditors of HH Liquidation, LLC, *at al.* (the "Committee") filed its *Complaint* (the "Complaint") against Comvest Group Holdings, LLC, Comvest Investment Partners III, L.P., Comvest Investment Partners IV, L.P., Comvest Haggen Holdings III, LLC, Comvest Haggen Holdings IV, LLC, Comvest Advisors, LLC (together "Comvest"), certain non-debtor affiliates and current and former officers and directors. The Complaint was filed pursuant to court-approved stipulations granting the Committee derivative standing to assert and prosecute the claims on behalf of the Debtors and their bankruptcy estates. *See* Docket Nos. 1216, 1235, 1874, 1852.

On February 3, 2016, the Committee served its *First Set of Document Requests to Haggen Holdings LLC* (n/k/a HH Liquidation, LLC) ("Holdings"), its *First Set of Document Requests to Holdings Opco South, LLC* (n/k/a HH OpCo South, LLC) ("Opco South"), and its *First Set of Document Requests to Holdings Opco*



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 2

*North, LLC* (n/k/a HH OpCo North, LLC) ("Opco North") (collectively, the "Document Requests"). The Document Requests sought certain documents and communications from Holdings, Opco South and Opco North (collectively, the "Debtors"). At the same time, the Committee also served interrogatories on each of the Debtors (collectively, the "Interrogatories").

On March 4, 2016, the Debtors served their objections to the Document Requests, and Holdings served its objections to the Interrogatories; OpCo South and OpCo North subsequently served their respective objections to the Interrogatories (the Debtors' objections to the Document Requests and Interrogatories are collectively referred to as the "Objections"). In their Objections, the Debtors relied on, *inter alia*, the attorney-client privilege and/or the attorney work-product doctrine to shield from discovery certain documents and information the Committee requested.

On December 9, 2016, Holdings provided the Committee with (a) its "Redacted Privilege Log" in which it identified 259 responsive items (emails) that were redacted based on the assertion of the attorney-client privilege, and (b) its "Privilege Log" in which it identified 725 items (emails and documents) that were withheld based on the assertion of the attorney-client privilege as well as another 890 documents that were purportedly protected under the attorney work-product doctrine (collectively, together with any information withheld in response to the Interrogatories, the "Withheld Information").

As is further described below, the Committee believes that the Withheld Information was improperly withheld because of: (1) the applicability of the fiduciary exception to the attorney-client privilege articulated in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), *cert. denied*, 401 U.S. 974 (1971), and its progeny, including in *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007), and (2) the fraud exception to the attorney-client privilege set forth in Delaware Rule of Evidence 502. In addition, the attorney work-product doctrine does not apply.

The Debtors have not established a basis for withholding the Withheld Information under the circumstances under either privilege. Accordingly, the Committee demands that the Debtors produce the Withheld Information no later than February 13, 2017.



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 3

## I.       The Attorney Work-Product Doctrine Does Not Apply

With respect to the Debtors' assertion of work-product protection as a basis for withholding the Withheld Information, the privilege log you supplied does not satisfy the Debtors' burden of establishing that any of the Withheld Information was prepared in anticipation of litigation. Furthermore, work-product protection pertains to materials sought by an *adversary* of the attorney's client. As the Bankruptcy Court for the District of Delaware held *in In re American Metrocomm Corp.*, 274 B.R. 641 (Bankr. D. Del. 2002):

> [I] choose to follow those courts recognizing that "the work product doctrine pertains to materials . . . sought by an adversary of the attorney's client." *Spivey*, 683 F.2d at 885; see also *Foster*, 188 F.3d at 1272 (stating that individual debtor's concern about incrimination "does not entitle an attorney to withhold from a client's trustee in bankruptcy work-product prepared for the client's pre-petition lawsuits, so long as the trustee and the client are not adverse in those suits"). There is a distinction between situations where the attorney's assertion of the work product privilege benefits the client, and situations like the instant proceeding where assertion of the privilege acts to the client's detriment. To allow Defendants to invoke the privilege would inhibit [the debtor's] chances of maximizing recovery of its portion of the Managed Claims and contravene the bankruptcy goal of maximizing Debtor's estate for the benefit of all creditors. It would also contravene the privilege's purpose of promoting the adversarial system and preventing Defendants' work product from being used against their clients.

*Id.* at 656.

All of the documents withheld on the basis of the attorney work-product doctrine were created (a) prior to the Petition Date, (b) before the Committee was formed, and (c) to the best of the Committee's knowledge, before the Debtors began to seriously consider the claims that are asserted in the Complaint. Consequently, the documents could not have been created "in anticipation of litigation" and thus the attorney work-product doctrine does not apply. Even if they were, the Committee is not the



LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 4

Debtors' adversary. Indeed, the Committee is bringing its claims derivatively on behalf of the Debtors and their estates.

Based on the foregoing, the attorney work-product doctrine cannot shield any of the Withheld Information from discovery.

## II.    The Fiduciary Exception to the Attorney-Client Privilege

As we have previously discussed, and as was explicitly referenced in the instructions to the Document Requests, the Committee asserts that the Withheld Information must be produced pursuant to *Garner*. In *Garner*, the Court of Appeals for the Fifth Circuit held that where stockholders sued a corporation on charges that the corporation acted inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the attorney-client privilege be subject to the right of the stockholders to show cause why it should not be invoked. The *Garner* court set forth numerous factors that could establish "cause" to set aside the attorney-client privilege:

> There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. The court can freely use in camera inspection or oral examination and freely avail itself of protective orders, a familiar



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 5

>   device to preserve confidentiality in trade secret and
>   other cases where the impact of revelation may be as
>   great as in revealing a communication with counsel.

*Id.* at 1104. The moving party need not establish <u>all</u> the factors. On remand, the District Court found that each factor that it identified at the evidentiary hearing was sufficient to establish cause and held "[T]he corporation should not be permitted to shield its officers and directors (or attorneys) by the claim of privilege, to the detriment of the corporation's stockholders. The stockholders are entitled to discover whatever communications passed between the corporation's management and its attorneys. Facts disclosed by such communications may materially assist the jury in reaching a just result in the trial of this action. No officer, controlling stockholder, attorney or creditor of the corporation is entitled to conceal from the plaintiff stockholders whatever the facts may be." *Garner v. Wolfinbarger*, 56 F.R.D. 499, 504 (S.D. Ala. 1972). The Delaware Supreme Court has expressly adopted *Garner* in the context of stockholder/corporation proceedings. *See Wal-Mart Stores, Inc. v. Indiana Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1278 (Del. 2014).

While *Garner* dealt with a shareholder suit, the doctrine has been extended to creditors suing derivatively on behalf of an insolvent corporation. As the Third Circuit noted in *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007), *as amended* (Oct. 12, 2007), when a company is insolvent or in the zone of insolvency, its duties of care and loyalty run to the benefit of its creditors, and its attorney-client privilege can be set aside in order to prove fiduciary breaches by those in control of the corporation upon showing good cause. *Id.* at 386; *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416 (S.D.N.Y. 2006), *aff'd on reconsid'n*, 2006 WL 2883255 (S.D.N.Y. Oct. 06, 2006).

As is set forth below, under a straightforward application of *Garner*, the Committee is entitled to pierce the attorney-client privilege with respect to the Withheld Information and any subsequent Depositions.



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 6

### A.  Solvency

The Committee seeks to avoid fraudulent transfers and recover monetary damages for breaches of fiduciary duty arising from a scheme whereby Holdings acquired 146 supermarkets from Albertson's LLC and Albertson's Holdings LLC, Safeway, Inc. and The Von Companies, Inc, (together, "Albertson's"), and then covertly siphoned away valuable real estate assets that Holdings acquired from Albertson's so they would not be available to satisfy the claims of the Debtors' suppliers, landlords, employees and other unsecured creditors.  This scheme was done at the direction, and for the benefit, of the Debtors' controlling shareholder, Comvest.  The Committee has alleged, and will establish, that the Debtors were insolvent as of the date of the Albertson's Acquisition (as defined in the Complaint) although -- because the Committee has specifically alleged the defendants engaged in actual fraudulent transfers -- the precise date of insolvency is less important in this particular case.  Where, as here, the Debtors, their managers, and their controlling stockholder planned and executed a *Mervyn's*-like scheme to deliberately transfer assets beyond the reach of creditors and render the Debtors unable to pay debts to outside creditors, the Committee should stand in the Debtors' shoes and control the privilege dating back to the date on which the scheme was first hatched, *i.e.*, in or about October, 2014.

### B.  Good Cause

The Committee will easily be able to establish that good cause exists to pierce the privilege.

1.  <u>The number of [creditors] and the percentage of [debt] they represent</u>. The Committee represents all of the general unsecured creditors in these cases, whose claims total well in excess of $100 million (the actual amount reflected in the Debtors' schedules is far greater, approximately $389 million consisting of $40 million in general unsecured claims at Holdings, $38 million at Haggen Operations Holdings LLC, $193.5 million at Opco South and $117.6 million at Opco North).  Because the Committee is suing derivatively, any recovery it obtains will inure to the benefit of all of the Debtors' stakeholders (including all general unsecured



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 7

creditors) in accordance with any eventual plan of liquidation.

2.  The bona fides of the [creditors]. The Committee was appointed by the Office of the United States Trustee pursuant to Bankruptcy Code section 1102(a) on September 21, 2015, and is acting in accordance with its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103. Moreover, the Complaint was filed pursuant to court-approved stipulations granting the Committee derivative standing to assert and prosecute the claims on behalf of the Debtors and their bankruptcy estates. *See* Docket Nos. 1216, 1235, 1874, 1852.

3.  The nature of the [creditors'] claims and whether they are obviously colorable. The Complaint sets forth detailed allegations supporting its claims for, among other things, actual and constructive fraudulent transfers and breaches of fiduciary duty. Moreover, the Committee's claims are obviously colorable as evidenced by the defendants' decision to answer the Complaint without moving to dismiss any of the seventy eight causes of action.

4.  The apparent necessity or desirability of the [creditors] having the information and the availability of it from other sources. The Committee needs the Withheld Information to prove the transfers were fraudulent, both intentionally and constructively, and to disprove the principals' affirmative defenses, such as that the transfers were made in good faith. Because Holdings is privately held and the Albertson's acquisition and related structuring and financing are so complex, the totality of the relevant circumstances surrounding this scheme can best be analyzed through the transparent inspection of the Debtors' documents and communications by its managers, including documents and communications with the Debtors' pre-bankruptcy counsel involved in structuring the underlying transactions, facts that cannot be derived from another source. Further, as you



LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 8

know, while the Committee brings these claims on behalf of the Debtors' estates, the Debtors also have a fiduciary duty to the unsecured creditors represented by the Committee and yet the Debtors' assertion of the attorney-client privilege and attorney work-product protection will work to unsecured creditors' detriment and benefit only the defendants.

5.  <u>Whether, if the [creditors'] claims are of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality</u>. The Committee alleges that the defendants, *inter alia*, devised and orchestrated a scheme to transfer property with actual intent to hinder, delay and defraud the Debtors' creditors.

6.  <u>Whether the communications relate to past or to prospective actions</u>. The Committee is informed and believes that the Withheld Information relates to, at the time communicated, an ongoing or prospective fraud insofar as the Complaint alleges a scheme intended to hinder, delay and defraud creditors, including the Debtors' unpaid general unsecured creditors who remain unpaid as a consequence of the transfers sought to be avoided.

7.  <u>Whether the communications are of advice concerning the litigation itself</u>. The Committee seeks to discover only communications made through the Petition Date; the Withheld Information sought by the Committee does not concern advice pertaining to this lawsuit.

8.  <u>The extent to which the communications are identified versus the extent to which the shareholders are blindly fishing</u>. In its Document Requests, the Committee sought specific categories of documents and information. In response to the Objections, the Committee seeks the Withheld Information. The Committee does not and will not seek any information that may be subject to the attorney-client privilege or work-product protection that is unrelated to the allegations, claims and defenses asserted in the above-referenced adversary proceeding.

9.  <u>The risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for</u>



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 9

independent reasons. The Debtors have liquidated and thus have no operating business and no trade secrets that would be compromised by the production of the Withheld Information. If the Debtors have particular concerns, the Withheld Information can be provided pursuant to the confidentiality agreement that is already in place.

As the Committee will be able to establish that the *Garner* exception applies, it requests that the Debtors turn over all of the Withheld Information forthwith.

### III.    The Fraud Exception to the Attorney-Client Privilege and the Work Product Privilege

Delaware Rule of Evidence 502 provides, "There is no privilege under this rule: (1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." D.R.E. 502; FRE 501. The fraud exception applies in the context of bankruptcy cases and in the context of fraudulent conveyance actions specifically. *See Riggs National Bank v. Andrews (In re Andrews)*, 186 B.R. 219, 222 (Bankr. E.D. Va. 1995); *In re Warner*, 87 B.R. 199, 201–03 (Bankr. M.D. Fla. 1988). The crime-fraud exception applies to both the attorney-client privilege and the work product privilege. *See In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012).

To invoke the crime/fraud exception, the movant must make a *prima facie* showing that the communications were either made for an unlawful purpose or that the communications reflected ongoing or future unlawful activity. *Andrews*, 186 B.R. at 222. The movant does not have to conclusively prove the elements of the purported fraud, but must show that the client (here the Debtors) possessed the requisite intent. *Id.* Actual intent can be inferred from the traditional badges of fraud analysis. *Id.*

Because proof of actual intent of fraudulent transfers to hinder, delay or defraud creditors is often unavailable through direct evidence, courts have traditionally relied upon certain well-defined badges or indicia of fraud to presume fraudulent intent. *In re Warner*, 87 B.R. 199, 202 (Bankr. M.D.Fla. 1988). The indicia include: (1) a relationship between the debtor and the transferee; (2)



PACHULSKI

STANG

ZIEHL

JONES

LAW OFFICES

Curt C. Mechling, Esq.
February 3, 2017
Page 10


lack of consideration for the conveyance; (3) debtor's insolvency or indebtedness; (4) transfer of debtor's entire estate; (5) reservation of benefits, control, or dominion by the debtor; (6) secrecy or concealment of the transaction; and (7) pendency or threat of litigation at the time of transfer. *See In re Andrews*, 186 B.R. at 222 *In re Warner*, 87 B.R. at 202; *In re Porter*, 37 B.R. 56, 60–61 (Bankr. E.D.Va. 1984).

The Committee has alleged, and will be able to establish, the existence of various "badges of fraud" to support its claims of actual fraud. *See, e.g.*, Complaint ¶¶ 158, 222, 310, 369, 450, 602.

Please let us know if the Debtors will produce the Withheld Information on or before February 13, 2017. If the Debtors refuse, the Committee intends to seek relief from the Court. We hope that will not be necessary.

Very truly yours,

Robert J. Feinstein

RJF/kgb

cc:    Frank Merola
       John A. Morris
       Bradford J. Sandler