**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HH LIQUIDATION, LLC, *et al.*, | ) | Case No. 15-11874(KG) |
| | ) | (Jointly Administered) |
|     Reorganized Debtor. | ) | |
| _____ | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF HH LIQUIDATION, LLC, *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|        v. | ) | Adv. No. 16-51204(KG) |
| | ) | |
| COMVEST GROUP HOLDINGS, LLC, | ) | |
| COMVEST INVESTMENT PARTNERS III, L.P., | ) | |
| COMVEST INVESTMENT PARTNERS IV, L.P., | ) | |
| COMVEST HAGGEN HOLDINGS III, LLC, | ) | |
| COMVEST HAGGEN HOLDINGS IV, LLC, | ) | |
| COMVEST ADVISORS, LLC, HAGGEN PROPERTY | ) | |
| HOLDINGS, LLC, HAGGEN PROPERTY SOUTH, | ) | |
| LLC, HAGGEN PROPERTY NORTH, LLC, | ) | |
| HAGGEN PROPERTY HOLDINGS II, LLC, | ) | |
| HAGGEN SLB, LLC, JOHN CAPLE, CECILIO | ) | |
| RODRIGUEZ, MICHAEL NIEGSCH, JOHN | ) | |
| CLOUGHER, BLAKE BARNETT, WILLIAM | ) | |
| SHANER and DERRICK ANDERSON, | ) | |
| | ) | |
|     Defendants. | ) | **Re: D.I. 57** |

## **OPINION**

The Court is addressing the Motion to Compel Production of Documents by Debtors (the "Motion"), which the Official Committee of Unsecured Creditors (the "Committee") filed to gain access to documents withheld on the basis of the attorney-client privilege and/or the attorney work-product doctrine (the "Objections"). It is

tempting for the Court to grant the Motion. As discussed within, the Committee is asserting the claims in this adversary proceeding "on behalf of Debtors' estates" against defendants who possess the documents the Committee seeks from the Debtors. The problem, however, with granting the Motion is that the cases do not support it and the Objections assert important and fundamental rights. Accordingly, as the Court will discuss, the Court will deny the Motion as it relates to the attorney-client privilege, and will grant the Motion for the documents withheld for work product purposes.

## Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Background[1]

Haggen, Inc. ("Haggen") began business in 1933 as a single grocery store. By 2011, Haggen owned and operated 30 grocery stores in Washington and Oregon. The family run business was profitable. In 2011, the Haggen family sold an 80% interest in Haggen to Comvest Group Holdings, LLC ("CGH") and retained 20%. Over the next four years, Haggen closed stores and at the end of 2014 operated 18 grocery stores and one pharmacy.

In 2014-15, Haggen purchased 146 Albertson's supermarkets which shortly thereafter resulted in Debtors' bankruptcy. The Debtors filed voluntary petitions with the Court on September 8, 2015. On September 21, 2015, the Office of the United States

---

[1] The background facts, which are not contested, are largely taken from Declaration of Blake Barnett in Support of First Day Pleadings filed in the Chapter 11 case. D.I. 15.

2

Trustee appointed the Committee to represent the interests of all of Debtors' unsecured creditors.

The Committee, the Debtors and the Defendants entered into stipulations on January 14, 2016, and April 29, 2016, granting the Committee derivative standing to bring an adversary proceeding against Defendants. The Court approved the standing stipulations by Orders, entered on January 15, 2016, and May 2, 2016. D.I.'s 1235 and 1858.

The standing stipulations provided, in part, that: (1) the Committee was entitled to bring any and all claims or causes of action "on behalf of the Debtors' estates," and (2) the Debtors and the Defendants reserved "the right to assert any objection (including but not limited to privilege objections)." D.I. 1235, ¶¶ 2 and 4.

Thereafter the Committee filed the Complaint and Objection to Claims (the "Complaint") on September 7, 2016. The Committee served the Complaint which names as defendants CGH and affiliates, non-debtor affiliates of the Debtors, and officers and directors (collectively, the "Defendants").

The Complaint is 142 pages in length, plus attachments. In very summary terms, in the Complaint the Committee alleges that Debtors acquired the 146 supermarkets from Albertson's and then took valuable real estate assets for themselves and charged Debtors high rental fees. The Committee has plead the alleged facts thoroughly in 153 paragraphs and charges the Defendants in 78 counts with, among other matters, fraud and fraudulent transfers. The Defendants answered the Complaint.

The Committee alleges that the Debtors have no business or employees. Debtors have either sold or shut down substantially all of their assets.

The Committee served document requests and interrogatories on the Debtors and the Defendants. The Defendants withheld over 1,000 responsive documents based on attorney-client privilege, and 890 documents based on the attorney work-product doctrine, and did not answer certain interrogatories. The Debtors withheld nearly 1,000 documents on the basis of attorney-client privilege and attorney work-product doctrine.

The Objections are premised on the fact that the law firm of Akerman, LLP ("Akerman") represented both the Debtors and the Defendants, i.e., Akerman had a joint representation with the Debtors and the Defendants. Those parties cite to the joint representation by Akerman as a reason that the Debtors' interrogatory answers and withheld documents are subject to privilege.

The last set of germane facts relates to the Debtors' financial condition at the time of the transactions about which the Committee complains. The Committee does not dispute these facts. When the transaction with Albertson's occurred, the Debtors had the following assets:

- More than $100 million cash
- More than $200 million line of credit
- Complete ownership in companies owning real estate interests.

Therefore, the Debtors had use of or access to $300 million plus the value of the real estate interests. Yet, Debtors fall into bankruptcy was sudden and rapid. It was only seven months from the Albertson's transaction to the Chapter 11 filing.

## Analysis

The Motion is an important one. On the one hand, the Committee is acting on behalf of the Debtors. Yet it does not have access to all of Debtors' documents which are or may be relevant to the matters it raises in the Complaint. On the other hand, the Objections place "the oldest of the common law privileges" squarely before the Court. *Teleglobe Communications v. BCE, Inc.* (*In re Teleglobe Communications Corp.*), 493 F. 3d 345, 359 (3d Cir. 2007). The Supreme Court has written that the attorney-client privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." Further, "advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The decision is not an easy one. The Committee has brought the adversary proceeding on behalf of the Debtors, and the Debtors are not parties. The question then becomes, why shouldn't the Committee have access to the documents that are in the Debtors' possession and, as well, the Defendants' possession? If the Debtors were not conflicted and had brought the adversary proceeding, they would have the use in the litigation of the documents the Committee seeks. These are documents that the Debtors are withholding.

The Court does not have to look far to find an answer. There are three cases that the Committee on the one hand and/or the Debtors and the Defendants rely on. The cases are *In re Teleglobe*; *Garner v. Wolfinbarger*, 403 F. 2d 1093 (5th Cir. 1970) ("*Garner*"); and *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) ("*Weintraub*").

*Weintraub*

In *Weintraub*, the Supreme Court addressed whether a chapter 7 trustee of a corporation has the power to waive the corporation's attorney-client privilege as to communications held before the bankruptcy case. The Supreme Court ruled that the trustee had that authority, and stated:

> In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors. *See generally* 11 U.S.C. §§704(4), 547, 548. It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets. The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct.
>
> Respondents contend that the trustee can adequately investigate fraud without controlling the corporation's attorney-client privilege. They point out that the privilege does not shield the disclosure of communications relating to the planning or commission of ongoing fraud, crimes, and ordinary torts . . . . [Citations omitted.]
>
> The problem, however, is making the threshold showing of fraud necessary to defeat the privilege. . . . Without control over the privilege, the trustee might not be able to discover hidden assets or looting schemes, and therefore might not be able to make the necessary showing. [Citations omitted.]

*Weintraub*, 471 U.S. at 353-54. The Supreme Court also went on to write:

> Respondents also ignore that if a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession. *Wolf v. Weinstein*, 372 U.S. 633, 649-652, 83 S. Ct. 969, 979-981, 10 L.Ed.2d 33 (1963). Indeed, the willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and

6

>    managing employees can be depended upon to carry out the fiduciary
>    responsibilities of a trustee." *Id.*, at 651, 83 S. Ct., at 980. Surely, then, the
>    management of a debtor-in-possession would have to exercise control of
>    the corporation's attorney-client privilege consistently with this obligation
>    to treat all parties, not merely the shareholders, fairly.

*Id.* at 355-56.  The Supreme Court therefore also held that leaving a debtor in possession of its assets and operations is premised on its ability to fulfill its fiduciary obligations. Here, the Debtors conveyed standing to the Committee because they were conflicted, i.e., cannot "be depended upon to carry out the fiduciary responsibilities of a trustee." *Id.*

The Debtors and the Defendants contend that *Weintraub* is limited to a chapter 7 trustee because, like a debtor-in-possession, the chapter 7 trustee has duties to all constituents of the corporation, administrative claimants, secured creditors, unsecured creditors and, as well, equity holders.  The Debtors and Defendants argue that, in contrast, the Committee's responsibility is to unsecured creditors only.  The Committee bears no responsibility to administrative claimants, secured creditors and equity holders.

There is some difficulty with the argument that the Committee is only responsible to the Debtors' unsecured-creditors because there is an absolute priority rule.  It means that anything the Committee recovers in the adversary proceeding will first be distributed to administrative claimants and secured creditors, before there can be any distribution from any recovery to the unsecured creditors.  The fact that the Committee's recovery will go first to other constituents combined with the Debtors' conflict and grant of standing to the Committee to bring claims "on behalf of the Debtors," places the Committee in proximity with the position of a chapter 7 trustee.  It is also important to

consider that the Debtors are not operating and have no employees. The Debtors are winding-up their affairs but otherwise are debtors-in-possession principally in name.

The New Jersey Bankruptcy Court addressed the circumstances presented here in *In re Big M, Inc.*, 2013 WL 1681489 (Apr. 17, 2013). In *Big M*, the court had to decide whether it would grant a motion to compel the production of documents that it was claimed were privileged. In denying the motion to compel the court stated (and quoting at length):

> This Court finds no authority, nor has it been presented with any, to support the Committee's position. While courts have recognized that a debtor's right to assert or waive the attorney-client privilege against discovery is passed to the estate or an appointed trustee upon filing for bankruptcy, or the subsequent appointment of a trustee, such a power does not extend to a creditors' committee that asserts causes of action on behalf of the estate. *See Official Committee of Asbestos Claimants of G–I Holding. Inc. v. Heyman*, 342 B.R 416 (S.D.N.Y.2006). While it is true that any assets brought into the estate through causes of action brought by the Committee against insiders of the Debtor increases the value of the estate, actions by the Committee are taken as a fiduciary and representative for the creditor body, not the estate. For example, should the interests of the creditor body diverge from those of the debtor or the estate, the Committee would owe a duty to the creditors before the estate. *Id.* at 423. This is the fundamental difference between the role and fiduciary duty of a debtor-in-possession or trustee versus a creditors' committee and, thus, why the power to waive a privilege of a debtor is not extended to a creditors' committee. As such, the Committee does not control or share the attorney-client privilege asserted by the Debtor and cannot waive a privilege it does not enjoy.

*Id.* at *1. *See also Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 423 (S.D.N.Y. 2006) (the creditors committee owes a duty only to unsecured creditors and is not entitled to privileged documents).

What is clear from the cases is that the Committee, suing on behalf of the Debtors, does not have access to privileged documents. The foregoing is true even though the

Debtors are not operating and the Committee's recovery, if any, may be on behalf of the estate as a whole. *Weintraub* therefore applies to chapter 7 trustees but not to Committees. The Court therefore holds that *Weintraub* does not help the Committee in gaining access to Debtors' privileged documents.

*Garner*

The Fifth Circuit's decision in *Garner* stands for the proposition that in a law suit by shareholders which charges the defendant corporation and its officers with breaches of their fiduciary duty, there may be cause to invade the attorney-client privilege. The Fifth Circuit ascribed great importance to the privilege, but found that:

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and the public require that the availability of the privileges be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Garner*, 430 F. 2d at 1103-04.

The Fifth Circuit then listed "indicia" of cause. These include the percentage of shares which the dissenting shareholders own, whether the claim is colorable, the necessity or desirability of the shareholders having the information, availability from other sources, whether the communication at issue concerns the litigation, whether shareholders are blindly fishing, the risk of the revelation of trade secrets and the like.

The Court is satisfied that the Committee's claims in the Complaint are colorable, the documents are not available from other sources, the requested documents do not directly concern the litigation, the Committee is not fishing and to create a level playing field, it is indeed desirable that the Committee have the documents. The Committee

9

therefore has established, as the Court wrote in *Weintraub*, the "presence . . . of good cause. "

The Committee, like the shareholders in *Garner*, brought the adversary proceeding seeking damages for the harm done to the corporation. The Committee has established good cause to obtain the privileged documents. *Garner* therefore supports the Motion. There is, however, an impediment to applying *Garner* to the facts here – the decision of the Third Circuit Court of Appeals (the "Third Circuit") in *Teleglobe*.

### *Teleglobe*

The Court next turns to the law on the subject of attorney-client privilege in its circuit, which is the decision in *Teleglobe*. In *Teleglobe*, the debtors brought suit against BCE, Inc. ("BCE") and others arising from BCE's abrupt termination of funding to debtors' parent for a system debtors were building. The termination of funding resulted in debtors filing for bankruptcy relief in the United States, and both debtors and the parent filing for Arrangement Act relief in Canada. Debtors filed an adversary complaint in the United States against BCE and others for breach of fiduciary duty and breach of contract as well as other causes of action. Thereafter, BCE agreed to produce "common interest" documents to debtors, but withheld other documents it did not believe were part of any joint representation. The district court thereafter ordered BCE to produce the documents it had withheld on the ground that the documents were part of a joint representation.

BCE appealed the district court's ruling and the Third Circuit accepted the interlocutory appeal and issued an in-depth opinion discussing the attorney-client

privilege. The Third Circuit concluded that BCE could be compelled to produce the withheld documents on the adverse-litigation exception to the co-client privilege "if [the court] finds that BCE and the Debtors were jointly represented by the same attorneys on a matter of common interest that is the subject-matter of those documents. . . . On remand, then, the primary issue is whether any attorneys jointly represented BCE and the [d]ebtors on a matter of common interest." *Teleglobe*, 493 F. 3d at 387. However, the Third Circuit added to the joint representation issue this: were the debtors insolvent or in the zone of insolvency when the privileged communication occurred? If not, then there was not a breach of fiduciary duties to creditors because neither the Debtors nor the Defendants owed fiduciary duties to creditors of a solvent corporation. *See*, *e.g.*, *North Am. Catholic Education Prog. Foundation, Inc. v. Gheewalla*, 930 A. 2d 92, 103 (Del. 2007).

The Debtors and the Defendants went to great lengths to argue insolvency – that in *Teleglobe* the Third Circuit ruled that the *Garner* fiduciary exception to the privilege only exists if the debtors were insolvent. *Id.* at 384-85. "The key, however, is insolvency. If the Debtors were not insolvent . . . at the time of the otherwise privileged communications then BCE was the only beneficiary of the Debtors' success, and it could not, therefore, breach its fiduciary duty to itself." *Id.* at 384. The Third Circuit remanded the case back to the bankruptcy court to determine whether the debtors were insolvent. On remand, the bankruptcy court found that the debtors had not proven insolvency and the *Garner* rule did not apply. *In re Teleglobe Communications Corp.*, 382 B.R. 561, 598 (Bankr. D. Del. 2008). It is unclear when Debtors became insolvent and the Court finds that insolvency is the key. It is true, of course, that Akerman jointly represented the

Debtors and the Defendants, but that is not enough. *Teleglobe* is the law in the Court's circuit.

So, were Debtors insolvent when the privileged communications took place, i.e., roughly December 2014 through February 2015? It is certainly odd that Debtors became insolvent and filed for bankruptcy only seven months after purchasing the Albertson's stores. Yet, the Debtors and the Defendants quickly counter that Debtors had access to over $300 million of cash or letters of credit. The Committee at the moment does not have an answer to Debtors' capitalization. If Debtors were insolvent at the time of the communications, the Committee must prove that they were. Perhaps the Committee will be able to prove insolvency at a later date but for now the Committee raises only conjecture and no proof.

<u>Work Product Documents</u>

The Debtors and the Defendants also withheld documents on their assertion that the work product doctrine protects them from production. Many of the withheld documents are noted as "Attachment." The Committee argues that the work product doctrine does not apply because the documents were not prepared in anticipation of the instant adversary proceeding. The Debtors and the Defendants both argue that if a document is prepared in anticipation of any litigation as opposed to "this" litigation, the work product doctrine is applicable. *In re Murphy*, 560 F. 2d 326, 334 (8th Cir. 1977).

The Court is not satisfied from its review of the privilege logs that the documents the Debtors withheld were prepared in anticipation of litigation. The withheld documents appear to the Court to be general corporate documents prepared in

12

connection with a transaction. The Court therefore concludes that these are not work product documents. Accordingly, the Court will order Debtors to produce their work product documents unless they can provide the Court with proof that they prepared the withheld documents in anticipation of litigation. The Court will then review the documents in camera or, if necessary, the Court will appoint a mediator to review the documents to determine if they are protected by the work product doctrine.

## CONCLUSION

The Court has found that *Weintraub* does not apply to the Committee but only to chapter 7 trustees; that *Garner* affords relief but only on a finding of insolvency; and that it is *Teleglobe* which requires insolvency without which there is no fiduciary duty owed to creditors. The documents withheld on the basis of the work product doctrine shall be produced, subject to the Debtors proving that they prepared the withheld documents in anticipation of litigation. The Court will therefore deny the Motion in part and grant it in part.

Dated: May 8, 2017

_____
KEVIN GROSS, U.S.B.J.