IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HH LIQUIDATION, LLC, *et al.*,[1] | Case No. 15-11874 (KG) (Jointly Administered) |
| Debtors. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HH LIQUIDATION, LLC, *et al.*, | |
| Plaintiffs, | Adv. Pro. 16-51204 (KG) |
| -against- | |
| COMVEST GROUP HOLDINGS, LLC, COMVEST INVESTMENT PARTNERS III, L.P., COMVEST INVESTMENT PARTNERS IV, L.P., COMVEST HAGGEN HOLDINGS III, LLC, COMVEST HAGGEN HOLDINGS IV, LLC, COMVEST ADVISORS, LLC, HAGGEN PROPERTY HOLDINGS, LLC, HAGGEN PROPERTY SOUTH, LLC, HAGGEN PROPERTY NORTH, LLC, HAGGEN PROPERTY HOLDINGS II, LLC, HAGGEN SLB, LLC, JOHN CAPLE, CECILIO RODRIGUEZ, MICHAEL NIEGSCH, JOHN CLOUGHER, BLAKE BARNETT, WILLIAM SHANER and DERRICK ANDERSON, | *Ref. Dkt. # 134* |
| Defendants. | |

## PROPOSED FINAL PRETRIAL ORDER

This matter comes before the United States Bankruptcy Court for the District of

Delaware (the "Court") at a final pretrial conference held pursuant to Rule 7016 of the Federal

Rules of Bankruptcy Procedure.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: HH Liquidation, LLC (f/k/a Haggen Holdings, LLC) (7558); HH Operations, LLC (f/k/a Haggen Operations Holdings, LLC) (6341), HH OpCo South, LLC (f/k/a Haggen OpCo South, LLC) (7257), HH OpCo North, LLC (f/k/a Haggen OpCo North, LLC) (5028), HH Acquisition, LLC (f/k/a Haggen Acquisition, LLC) (7687), and HH Legacy, Inc. (f/k/a Haggen, Inc.) (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

**Plaintiff's Counsel:**

> Pachulski Stang Ziehl & Jones LLP
> Bradford J. Sandler
> Robert J. Feinstein
> John A. Morris
> Beth E. Levine
> 919 North Market Street, 17th Floor
> Wilmington, DE 19801
> Telephone: (302) 652-4100

**Defendants' Counsel:**

> Kirkland and Ellis LLP
> Stephen C. Hackney
> Richard U.S. Howell
> Jeffery J. Lula
> 300 N. LaSalle Street
> Chicago, IL 60654
> Telephone: (312) 862-7092

> -and-

> Womble Carlyle Sandridge & Rice, LLP
> Kevin Mangan, Esq.
> 222 Delaware Avenue
> Suite 1501
> Wilmington, DE 19801
> Telephone: (302) 252-4361

> -and-

> Womble Carlyle Sandridge & Rice, LLP
> Philip J. Mohr, Esq.
> 300 North Greene Street, Suite 1900
> Greensboro, NC 27401
> Telephone: (336) 721-3577

## I.    <u>Nature of the Case</u>

The above-captioned proceeding (the "<u>Action</u>") is an adversary proceeding commenced

by the Official Committee of Unsecured Creditors of HH Liquidation, LLC (the "<u>Committee</u>" or

the "<u>Plaintiff</u>"), derivatively on behalf of the debtors and debtors in possession (collectively, the

"Debtors"), against Comvest Group Holdings, LLC ("CGH"), Comvest Investment Partners III, L.P. ("CIP III"), Comvest Investment Partners IV, L.P. ("CIP IV"), Comvest Haggen Holdings III, LLC ("CHH III"), Comvest Haggen Holdings IV, LLC ("CHH IV"), Comvest Advisors, LLC ("Comvest Advisors" and together with CGH, CIP III, CIP IV, CHH III, and CHH IV, "Comvest"), non-Debtor affiliates Haggen Property Holdings, LLC ("Property Holdings"), Haggen Property South LLC ("PropCo South"), Haggen Property North, LLC ("PropCo North" and together with Property Holdings and PropCo South, the "PropCo Entities"), Haggen Property Holdings II, LLC ("Property Holdings II"), and Haggen SLB, LLC ("Haggen SLB" and together with Property Holdings II, the "SLB Entities"), and John Caple ("Caple"), Cecilio Rodriguez ("Rodriguez"), Michael Niegsch ("Niegsch"), John Clougher ("Clougher"), Blake Barnett ("Barnett"), William Shaner ("Shaner"), and Derrick Anderson ("Anderson" and together with Caple, Rodriguez, Niegsch, Clougher, Barnett, and Shaner, the "Officers and Directors," and the Officers and Directors together with Comvest, the PropCo Entities, and the SLB Entities, the "Defendants").

**II.    Jurisdiction**

    A.    This is an action for avoidance of fraudulent transfers, monetary damages for breach of fiduciary duty and for unjust enrichment, equitable subordination, the transfer of liens and security interests, recharacterization, substantive consolidation and the disallowance of claims.

    B.    The jurisdiction of the Court over this action is not disputed. The bases for jurisdiction over this action are 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and

the parties confirm their consent pursuant to Rule 7008-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the

entry of final orders by the Court for the matters contained herein to the extent that it is later

determined that the Court, absent the consent of the parties, cannot enter final orders or

judgments in connection herewith consistent with Article III of the United States Constitution.

III.    **Statement of Facts Which Are Admitted and Require No Proof**

The following facts are not disputed or have been agreed to or stipulated by the parties:[2]

1.      On September 8, 2015 (the "Petition Date"), the Debtors filed with this

Court voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy

Code"). These cases are being jointly administered for procedural purposes pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure. No trustee or examiner has been

appointed in the Debtors' cases. Answer ¶13.

2.      On September 21, 2015, the United States Trustee for Region 3 appointed

the Committee to represent the interests of all general unsecured creditors in these cases pursuant

to section 1102 of the Bankruptcy Code. Answer ¶14.

---

[2] References to the "Complaint" or to "Complaint ¶ __" are to the *Complaint and Objection to Claims of the Official Committee of Unsecured Creditors of HH Liquidation, LLC* filed in this Action on __ [Docket No. __]. References to the "Answer" or to "Answer ¶ __" are to *Defendants' Answer* filed in this Action on December 9, 2016. References to "Propco South Interrogatory Response No. __" are to *Haggen Property South, LLC's Responses and Objections to the Committee's First Set of Interrogatories*, dated March 4, 2016. References to "Propco North Interrogatory Response No. __" are to *Haggen Property North, LLC's Responses and Objections to the Committee's First Set of Interrogatories*, dated March 4, 2016. References to "Property Holdings II Interrogatory Response No. __" are to *Haggen Property Holdings II, LLC's Responses and Objections to the Committee's First Set of Interrogatories*, dated March 4, 2016. "Holdings Interrogatory Responses ¶ __" refers to *Responses and Objections to the Committee's First Set of Interrogatories to Haggen Holdings, LLC*, dated March 4, 2016. "Comvest Responses to Requests for Admission No. __" Refers to *Comvest Partner's Responses to the Official Committee of Unsecured Creditors First Set of Requests for Admission*, dated March 4, 2016. "Comvest First Interrogatory Responses No. __" Refers to *Comvest Partner's Responses to the Official Committee of Unsecured Creditors First Set of Interrogatories*, dated March 9, 2016. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

3.     On January 14, 2016, Plaintiff, the Debtors, Comvest, the PropCo Entities, and Property Holdings II executed and filed that certain *Stipulation and Order (1) Granting Derivative Standing to the Official Committee of Unsecured Creditors to Commence Litigation Against Haggen Property Holdings, LLC, Haggen Property South, LLC, Haggen Property North, LLC, Haggen Property Holdings II, LLC, Haggen Property Holdings III, LLC, Comvest Partners and/or Directors and Officers Thereof; and (2) Providing for a Litigation Standstill*, at Docket No. 1216 (the "Initial Standing Stipulation"). On January 15, 2016, the Court approved the Initial Standing Stipulation. See Docket No. 1235. Answer ¶15.

4.     On April 29, 2016, Plaintiff and the Debtors executed and filed that certain *Stipulation and Order Granting Derivative Standing to the Official Committee of Unsecured Creditors to Commence Litigation Against Haggen SLB, LLC and/or its Past and/or Present Directors and Officers*, at Docket No. 1858 (the "Second Standing Stipulation" and together with the Initial Stipulation, the "Standing Stipulations"). On May 2, 2016, the Court approved the Second Standing Stipulation. *See* Docket No. 1858. Answer ¶16.

5.     Holdings, one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed under the laws of the state of Delaware. Prior to the Petition Date, certain Comvest entities owned an interest in Holdings. Holdings directly or indirectly owned and operated approximately 18 supermarkets and one pharmacy in Oregon and Washington before contracting to purchase 146 stores from Albertson's. Answer ¶18.

6.     HH Operations, LLC (f/k/a Haggen Operations Holding, LLC) ("Operations"), one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability company formed under the laws of the state of Delaware. HH Operations, LLC was formed prior to the December 2014 transaction whereby Holdings agreed to acquire 146

grocery stores and related real estate assets from Albertson's (the "Albertson's Acquisition").
Prior to the Petition Date, Operations was owned and managed by its sole member, Holdings.
Answer ¶19.

7.      HH OpCo South, LLC (f/k/a Haggen OpCo South, LLC) ("OpCo South"),
one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability
company formed under the laws of the state of Delaware.  OpCo South was formed prior to the
Albertson's Acquisition.  Prior to the Petition Date, OpCo South was owned and managed by its
sole member, Operations.  Answer ¶20.

8.      HH OpCo North, LLC (f/k/a Haggen OpCo North, LLC) ("OpCo North,"
and together with OpCo South, the "OpCo Entities"), one of the Debtors on whose behalf
Plaintiff brings these causes of action, is a limited liability company formed under the laws of
Delaware.  OpCo North was formed prior to the Albertson's Acquisition.  Prior to the Petition
Date, OpCo North was owned and managed by its sole member, Operations.  Answer ¶21.

9.      HH Acquisition, LLC (f/k/a Haggen Acquisition, LLC) ("Acquisition"),
one of the Debtors on whose behalf Plaintiff brings these causes of action, is a limited liability
company formed under the laws of the state of Delaware.  Acquisition was formed prior to the
Albertson's Acquisition.  Prior to the Petition Date, Acquisition was owned and managed by its
sole member, Operations.  Answer ¶22.

10.     HH Legacy, Inc. (f/k/a Haggen, Inc.) ("Haggen, Inc."), one of the Debtors
on whose behalf Plaintiff brings these causes of action, is a corporation formed under the laws of
the State of Washington.  From 2011 through the Petition Date, Haggen, Inc. was owned by
Acquisition.  11/20/2011 Haggen Inc's Restated Articles of Incorporation (AKER0000008020).

11.    Defendant CGH is a limited liability company formed under the laws of the state of Delaware.  Answer ¶24.

12.    Defendant CIP III is a limited partnership formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  Answer ¶25.

13.    Defendant CIP IV is a limited partnership formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  Answer ¶26.

14.    Defendant CHH III is a limited liability company formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  Answer ¶27.

15.    Defendant CHH III holds 458,489 Class A Units in Holdings.  Comvest First Interrogatory Response No. 9.

16.    Defendant CHH IV is a limited liability company formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  Answer ¶28.

17.    Defendant CHH IV holds 1,724,792 Class A Units of Holdings.  Comvest First Interrogatory Response No. 9

18.    Defendant Comvest Advisors is a limited liability company formed under the laws of the state of Delaware, and is owned and/or controlled, directly or indirectly, by CGH.  Answer ¶29.

19.    Defendant Property Holdings is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware.  At all relevant times prior to the Petition Date, Property Holdings was owned and managed by its sole member, Debtor Holdings.  Answer ¶30; Comvest First Interrogatory Response No. 15.

20.     Defendant PropCo South is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware. At all relevant times prior to the Petition Date, PropCo South was owned and managed by its sole member, non-Debtor Defendant Property Holdings. Answer ¶31; PropCo South Interrogatory Response No. 1; Comvest First Interrogatory Response No. 15.

21.     Defendant PropCo North is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware. At all relevant times prior to the Petition Date, PropCo North was owned and managed by its sole member, non-Debtor Defendant Property Holdings. Answer ¶32; PropCo North Interrogatory Response No. 1; Comvest First Interrogatory Response No. 15.

22.     Defendant Property Holdings II is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware. At all relevant times prior to the Petition Date, Property Holdings II was owned and managed by its sole member, Debtor Holdings. Answer ¶33; Property Holdings II Interrogatory Response No. 1; Comvest First Interrogatory Response No. 15; Comvest Response to Request for Admissions No. 14.

23.     Defendant Haggen SLB is a limited liability company formed at the time of the Albertson's transaction under the laws of the state of Delaware. At all relevant times prior to the Petition Date, Haggen SLB was owned and managed by its sole member, Debtor Acquisition. Answer ¶34; Comvest First Interrogatory Response No. 15; Comvest Response to Request for Admissions No. 14.

24.     Defendant John Caple ("Caple") is an individual residing in the state of Florida. Caple was a Partner at Comvest Partners until January 31, 2016. In addition, Mr. Caple

served as (a) a Manager of Holdings since at least January 1, 2014 through at least the Petition

Date, as well as President and Chief Executive Officer for the period beginning no later than

January 1, 2014 through January 30, 2015, and (b) a Director of Haggen, Inc. since at least

January 1, 2014 through at least the Petition Date.  Answer ¶35; Haggen Holdings Interrogatory

Responses, Ex. 1; Comvest First Interrogatory Response No. 14.

25.    Defendant Cecilio Rodriguez ("Rodriguez") is an individual residing in

the state of Florida.  At all relevant times, Rodriguez was the Chief Financial Officer of Comvest

Partners.  In addition, Rodriguez has served as (a) Secretary and Chief Financial Officer of

Holdings for the period November 24, 2014 through January 30, 2015, as well as a Manager of

Holdings since November 24, 2014, and (b) a Director of Haggen, Inc. for the period beginning

no later than September 1, 2014 through December 6, 2014.  Answer ¶36; Haggen Holdings

Interrogatory Responses, Ex. 1; Comvest First Interrogatory Response No. 14.

26.    Defendant Michael Niegsch ("Niegsch") is an individual residing in the

state of Florida.  At all relevant times, Niegsch was a Vice President of Comvest Partners.  In

addition, Niegsch has served as a Manager of Holdings since January 30, 2015.  Answer ¶37;

Haggen Holdings Interrogatory Responses, Ex. 1; Comvest First Interrogatory Response No. 14.

27.    Defendant John Clougher ("Clougher") is an individual residing in the

state of Washington.  Clougher has served as Chief Executive Officer of (a) Holdings since

January 30, 2015 through at least the Petition Date, as well as a Manager of Holdings during that

time, (b) Acquisition since December 6, 2014 through at least the Petition Date, (c) Haggen, Inc.

since September 8, 2014 through at least the Petition Date, as well as President during that time,

Treasurer for the period September 8, 2014 through January 1, 2015, and Director since

December 6, 2014 through at Least the Petition Date, (d) Operations since December 22, 2014

through at least the Petition Date, (e) OpCo North since December 2, 2014 through the at least

the Petition Date, as well as President during that time, (f) Haggen SLB since December 2, 2014

through the at least the Petition Date, as well as President during that time, (g) Property Holdings

for the period December 2, 2014 through October 8, 2015, (h) Property Holdings II for the

period December 2, 2014 through October 8, 2015, (i) Haggen Property Holdings III, LLC

("Property Holdings III") for the period December 2, 2014 through October 8, 2015, and (j)

PropCo North for the period December 2, 2014 through October 8, 2015.  Answer ¶38; Haggen

Holdings Interrrogatory Responses, Ex. 1; Comvest First Interrogatory Response No. 14.

      28.     Defendant Blake Barnett ("Barnett") is an individual residing in the state

of Washington.  Mr. Barnett has served as the Chief Financial Officer of (a) Holdings since

January 30, 2015 through at least the Petition Date, (b) Acquisition since January 30, 2015

through at least the Petition Date, (c) Haggen, Inc. since January 1, 2015 through at least the

Petition Date, (d) Operations since December 22, 2014  through at least the Petition Date, (e)

OpCo North since December 2, 2015 through at least the Petition Date, (f) Property Holdings

from December 2, 2014 through October 8, 2015, (g) Property Holdings II from December 2,

2014 through October 8, 2015, (h) Property Holdings III from December 2, 2014 through

October 8, 2015, (i) Haggen SLB since December 2, 2015 through at least the Petition Date, (j)

OpCo South since December 2, 2014 through at least the Petition Date (as well as Vice President

since October 29, 2015 through at least the Petition Date), (k) PropCo South from December 2,

2014 through October 8, 2015, and (l) PropCo North from December 2, 2014 through October 8,

2015.  Answer ¶39; Haggen Holdings Interrogatory Responses, Ex. 1.

      29.     William Shaner ("Shaner") is an individual residing in the state of

Washington.  Shaner served as (a) a Manager and President of Holdings from January 30, 2015

to September 2, 2015; (b) President of Acquisition from January 30, 2015 to September 2, 2015;

(c) President of Operations from December 22, 2014 to September 2, 2015; and (d) President and

Chief Executive Officer of OpCo South from December 2, 2014 to September 2, 2015.  Answer

¶40; Haggen Holdings Interrrogatory Responses, Ex. 1; Comvest First Interrogatory Response

No. 14.

        30.     Derrick Anderson ("__Anderson__") is an individual residing in the state of

Washington.  Anderson has served as the Secretary of (a) Holdings since January 30, 2015

through at least the Petition Date, (b) Acquisition since December 6, 2014 through at least the

Petition Date, (c) Haggen, Inc. since September 8, 2014 through at least the Petition Date, (d)

Operations since December 22, 2014 through at least the Petition Date, (e) OpCo South since

December 2, 2014 through at least the Petition Date (as well as Vice President since October 29,

2015 through at least the Petition Date), (f) OpCo North since December 2, 2014 through at least

the Petition Date, (g) Haggen SLB since December 2, 2014 through at least the Petition Date, (h)

Property Holdings from December 2, 2014 through October 8, 2015, (i) Property Holdings II

from December 2, 2014 through October 8, 2015, (j) Property Holdings III from December 2,

2014 through October 8, 2015, (k) PropCo North from December 2, 2014 through October 8,

2015, (l) PropCo South from December 2, 2014 through October 8, 2015.  Answer ¶41; Haggen

Holdings Interrogatory Responses, Ex. 1.

        31.     Haggen was founded in 1933 as a single grocery store.  In the ensuing

decades, the Haggen family operated the company and opened additional stores.  In 1962, the

Haggen family concentrated all of their business activities in a single corporate entity, Haggen,

Inc.  By 2011, Haggen, Inc. operated a 30-store chain of grocery stores in the states of

Washington and Oregon.  Answer ¶43.

32.     In 2011, the Haggen family sold an 80% equity interest in Haggen, Inc. to a Florida-based private equity firm, Comvest. Specifically, defendant CGH, a Comvest entity, purchased its majority stake in Haggen, Inc. through Holdings and Acquisition, two limited liability companies that it formed for that purpose. Thus, in January 2011, CGH formed Holdings, and acquired 80% of the membership interests of that entity with the Haggen family obtaining the balance of the membership interests, and at about the same time, CGH also formed Acquisition. Holdings solely owned the membership interests in Acquisition, and Acquisition owned all of the stock of Haggen, Inc. Answer ¶44.

33.     Over the next four years, Haggen closed a number of stores, and as of the end of 2014, Haggen operated 18 grocery stores and one pharmacy on a profitable basis. Answer ¶45.

34.     In 2014, Comvest learned that certain Albertson's stores in Washington and Oregon were going to come to market. Answer ¶47.

35.     In December 2014, Holdings contracted to acquire 146 grocery stores and related real estate assets from Albertson's. Answer ¶46.

36.     Holdings was the purchaser under the agreement with Albertson's (the "Albertson's APA") dated December 10, 2014.

37.     Comvest was supportive of the Albertson's APA, and the Comvest investment committee approved an additional investment into Haggen as part of the Albertson's Acquisition pursuant to, and subject to the terms and conditions of, that certain Equity Financing Commitment Letter, dated December 10, 2014 by and among Holdings, CIP III and CIP IV. Comvest Request for Admission Response Nos. 2, 6.

38.     A total of 146 supermarkets and associated real estate (fee owned interests, long-term ground leases and store leases) were to be acquired by Holdings from Alberton's under the final Albertson's APA.  Seventy-nine (79) of the supermarkets acquired from Albertson's were stores that were leased by Albertson's or Safeway from third-party landlords (the "Leased Stores"), while the other sixty-seven (67) stores (the "Real Property") either were situated on fee-owned real estate or were stores built and/or owned by Albertson's or Safeway, but which were subject to long-term ground leases that Albertson's had with third-party landlords.  Answer ¶48.

39.     The OpCo Entities paid rent to third-party landlords for the Leased Stores. Answer ¶49.

40.     Holdings transferred to the SLB Entities the right to acquire thirty-nine of the stores located on the Real Property (the "Real Property Stores"), and the SLB Entities thereafter purchased those thirty-nine stores from Albertson's.  Answer ¶ 50.

41.     Holdings transferred to PropCo North and PropCo South the right to acquire some of the remaining twenty-eight Real Property Stores, and PropCo North and PropCo South purchased some of the remaining twenty-eight Real Property Stores.  Answer ¶50.

42.     The SLB Entities sold the Real Property associated with the thirty-nine Real Property Stores to third parties for approximately $358.8 million.  Answer ¶ 52. Approximately $232.4 million was sent to Albertson's to satisfy the purchase price for those thirty-nine Real Property Stores, and approximately $76.2 million of the approximately $126.4 million remaining was sent to Albertson's to pay for the twenty-eight remaining Real Property Stores.  *Id*; Answer ¶90.

43.     With respect to the remaining twenty-eight Real Property Stores, Holdings transferred to PropCo North and PropCo South the right to acquire some of the remaining twenty-eight Real Property Stores; the fourteen wholly-owned parcels were leased to the OpCo Entities, and the other fourteen parcels were subleased to the OpCo Entities. Answer ¶ 54.

44.     PropCo North and PropCo South received rents from the OpCo Entities. Answer ¶55.

45.     Comvest was supportive of the transactions by which the PropCo Entities acquired real property in connection with the Albertson's Acquisition.  Comvest Response to Requests for Admissions No. 16.

46.     The Federal Trade Commission (the "FTC") required Albertson's and Safeway to divest 168 stores as a condition to the closing of their proposed merger.  Haggen— determined to submit a bid—prepared and presented a business plan to Albertson's and the FTC and thereby gained conditional approval to acquire 146 of those stores.  Answer ¶64.

47.     Thereafter, Albertson's LLC and Albertson's Holdings LLC, as sellers, and Holdings, as the buyer, entered into that certain Asset Purchase Agreement, dated as of December 10, 2014 (the "APA").  Answer ¶65.

48.     On January 27, 2015, the FTC issued an order approving Holdings' acquisition of 146 stores from Albertson's.  Answer ¶66.

49.     On or about January 30, 2015, Comvest Advisors entered into that certain Amended and Restated Management Agreement with Holdings, Haggen, Inc., OpCo South and OpCo North (together with the original Management Agreement between Comvest Advisors and Haggen, Inc., dated August 29, 2011, and any amendments thereto, the "Comvest Management Agreement").  Answer ¶67; Comvest First Interrogatory Response No. 1.

50.     Haggen's working capital requirements were funded by: (a) proceeds from the Sale Leaseback Transactions, (b) a capital contribution from Comvest, and (c) the PNC Revolver.  Answer ¶¶ 68, 73.

51.     In connection with the Albertson's Acquisition, Comvest made an investment in Holdings in the aggregate amount of $51.5 million (the "Comvest Investment"). This investment was made pursuant to two Subscription Agreements dated January 30, 2015, whereby (i) CHH III paid $10.815 million for a certain number of Holdings' Class A Units, and (ii) CHH IV paid $40.685 million for a certain number of Holdings' Class A Units.  John Caple, a Comvest Partner and Manager of Holdings, signed each Subscription Agreement on behalf of both Holdings and the applicable Comvest entity.  Answer ¶ 69.

52.     Holdings paid Comvest $1.5 million as a "transaction fee" in connection with the Comvest Investment.  Answer ¶70; Comvest First Interrogatory Response No. 3.

53.     In addition, Comvest received $300,000 in 2014 monthly management fees, $29,678.66 in quarterly expenses, and $75,000 in 2015 monthly management fees pursuant to the Limited Liability Company Agreement of Haggen Holdings, LLC, dated March 11, 2011. Comvest First Interrogatory Response No. 3.

54.     On February 12, 2015, Haggen, Inc., OpCo North and OpCo South, as borrowers, and PNC Bank, N.A., as agent for itself and certain lenders, entered into a *Revolving Credit and Security Agreement*, as amended on February 20, 2015 (the "PNC Revolver"). Answer ¶ 72.

55.     In 2011, as part of Comvest's acquisition of a controlling interest in Haggen, Holdings and Acquisition were formed.  The equity owners of the enterprise (Comvest and members of the Haggen family, through a corporate vehicle named HHI Corp.) owned the

membership interests in Holdings, which owned all of the membership interests in Acquisition, which owned all of common stock in Haggen, Inc. as follows:



Answer ¶77.

56.    Ten new entities were created prior to Holdings' execution of the Albertson's APA.  Answer ¶ 79.

57.    Specifically, on December 2, 2014 (just eight days before the APA was executed), Comvest caused Holdings to create:

- Property Holdings, a PropCo Entity whose membership interests are solely owned by Holdings;

- PropCo South, a PropCo Entity whose membership interests are solely owned by Property Holdings;

- PropCo North, a PropCo Entity whose membership interests are solely owned by Property Holdings;

- Property Holdings II, an SLB Entity whose membership interests are solely owned by Holdings;

- Haggen SLB, an SLB Entity whose membership interests are solely owned by Acquisition;

- Operations, the holding company for the OpCo Entities whose membership interests are solely owned by Holdings;

- OpCo South, an OpCo Entity whose membership interests are solely owned by Operations;

- OpCo North, an OpCo Entity whose membership interests are solely owned by Operations;

- Haggen Property Holdings III, an entity whose membership interests are solely owned by Holdings; and

- Haggen Fuel Holdings, LLC, an entity whose membership interests are solely owned by Holdings.

Answer ¶ 80.

58.    As of the date the APA was executed, Haggen's new corporate structure looked as follows:



Answer ¶82.

60.    From the time of their formation in December 2014 through the Petition Date, PropCo South and Propco North were managed by their sole member, Property Holdings. Answer ¶83(a).

61.    From the time of their formation in December 2014 through the Petition Date, PropCo South and Propco North did not create or maintain any board minutes, did not utilize or maintain their own business forms or domain name, and maintained their businesses addresses, books and record and email servers at the Debtors' location.  Answer ¶¶ 83(c)-(e).

62.    From the time of their formation through the Petition Date, Haggen SLB was managed by its sole member, Acquisition, and Property Holdings II was managed by its sole member, Holdings.  Answer ¶84(a)

63.    From the time of their formation through the Petition Date, the SLB Entities had no creditors, did not create or maintain any board minutes, did not utilize or maintain their own business forms or domain name, and maintained their business addresses, books and record and email servers at the Debtors' location.  Answer ¶¶ 84(b)-(e).

64.    Pursuant to the APA, each of the 146 stores, including the real estate associated with such store, was acquired from Albertson's on a rolling basis.  Answer ¶86.

65.    Holdings executed a number of Contribution Agreements which transferred certain rights in the Real Property to the SLB Entities, and the PropCo Entities.  Answer ¶87.

66.    The SLB Entities purchased thirty-nine Real Property Stores pursuant to the APA, sold them to either Garrison or Spirit, and used the Proceeds to pay the purchase price to Albertson's for those stores.  Answer ¶ 90.

67.    The SLB Entities received approximately $358.8 million from Garrison and Spirit for the thirty-nine parcels of Real Property sold to them and paid approximately $232.4 million of that amount to Albertson's to satisfy the purchase price for those thirty-nine Real Property Stores.  Answer ¶93.

68.    The OpCo Entities entered into leases with Garrison and Spirit.  Answer ¶93.

69.    Holdings entered into two agreements, one with Spirit and one with Garrison.  Answer ¶96.

70.     Holdings signed the "Purchase and Sale Agreement and Joint Escrow Instructions" with Spirit Master Funding IV, LLC (collectively, with that entity's affiliates, "Spirit"), dated as of November 24, 2014 (together with any amendments thereto, the "Spirit SLB Agreement"). Answer ¶97.

71.     Pursuant to the Spirit SLB Agreement, the SLB Entities sold twenty (20) parcels of real estate (and improvements) located in Arizona, California, Nevada, Oregon, and Washington (the "Spirit SLB Properties"). Answer ¶98.

72.     Holdings II sold fifteen parcels of Real Property to Spirit. Answer ¶99.

73.     Haggen SLB sold five parcels of Real Property to Spirit. Answer ¶100.

74.     The SLB Entities sold twenty parcels of Real Property for approximately $224.4 million. Answer ¶101.

75.     Holdings entered into an agreement with GIG TCG Wave Holdings, LLC (collectively, with that entity's affiliates, "Garrison"). On December 4, 2014, Holdings and Garrison executed a "Purchase and Sale Agreement and Joint Escrow Instructions" (together with any amendments thereto, the "Garrison SLB Agreement"). Answer ¶102.

76.     Pursuant to the Garrison SLB Agreement, the SLB Entities sold nineteen (19) parcels of real estate (and improvements) located in Arizona, California, Nevada, Oregon, and Washington (the "Garrison SLB Properties"). Answer ¶103.

77.     Holdings II sold eighteen parcels of Real Property to Garrison. Answer ¶104.

78.     Haggen SLB sold one parcel of Real Property to Garrison. Answer ¶105.

79.     The SLB Entities sold nineteen parcels of Real Property to Garrison for approximately $134.4 million. Answer ¶106.

80.     The agreements with Spirit and Garrison concerned thirty-nine parcels of real estate that were sold by the SLB Entities for a total of approximately $358.8 million and that the SLB Entities paid approximately $232.4 million of that amount to Albertson's to satisfy the purchase price for those thirty-nine Real Property Stores. Answer ¶107.

81.     An affiliate of Spirit, Spirit SPE HG 2015-1, LLC, as landlord, also entered into a Master Lease Agreement with Operations, as Tenant, as of February 12, 2015, with respect to certain of the other Spirit SLB Properties (together with any amendments thereto, and the Spirit Lease, the "Spirit Master Leases").  Answer ¶111.

82.     On February 17, 2015, Garrison, as landlord, and OpCo South and OpCo North, as tenants, entered into that certain Master Land and Building Lease (together with any amendments thereto, the "Garrison Lease").  The Garrison Lease set forth the terms by which the OpCo Entities leased each of the Garrison SLB Properties following Garrison's acquisition of them from the SLB Entities. Answer ¶112.

83.     The parties to the Garrison Lease expected properties to be added to the Garrison Lease pursuant to the Albertson's APA, and agreed to amend the Garrison Lease as each New Demised Property (as defined in the Garrison Lease) was added.  Answer ¶113.

84.     Garrison entered into leases with OpCo South and Opco North.  Answer ¶114.

85.     Holdings was a guarantor under the leases with Spirit and Garrison.  Answer ¶116.

86.     Holdings executed agreements which transferred to PropCo North and PropCo South the right to acquire and the obligations to pay for some of the remaining twenty-eight Real Property Stores. Answer ¶117.

20

87.     Proceeds from the SLB Entities' sale of thirty-nine parcels of Real Property to Spirit and Garrison were used to purchase the twenty-eight remaining parcels of Real Property.  Answer ¶¶119, 122.

88.     The OpCo Entities as tenants entered into leases and subleases with PropCo North and PropCo South as lessor or sublessor.  Answer ¶126.

89.     The payment of rents by the OpCo Entities reduced profits.  Answer ¶128.

90.     Haggen analyzed the possibility of closing or selling certain stores and reducing expenses before filing the bankruptcy petition in September 2015.  Answer ¶135.

91.     Haggen, Inc, and the OpCo Entities, as Borrowers, and PropCo North and PropCo South, as lenders, entered into a Term Loan and Security Agreement, dated as of August 7, 2015, pursuant to which PropCo North and PropCo South jointly made a $25 million loan to the OpCo Entities.  Answer ¶ 141; Comvest First Interrogatory Response No. 5.

92.     Blake Barnett signed the Term Loan and Security Agreement on behalf of the borrowers and the lenders.  Answer ¶142.

93.     Plaintiff will not offer any evidence that the rents paid by Operations and the OpCo Entities to the PropCo Entities were above-market.

## IV.     **Statement of Facts Which Are in Dispute**

With the Court's permission, the parties have agreed to set forth their respective statements of disputed facts in their pre-trial briefs due to be submitted on or before October 4, 2017.

## V.     **Agreed to Issues of Law**

A.     The parties agree that the following are the issues to be decided by the Court:

1.      Whether pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Owned Properties, or the value of such property, from PropCo North and Comvest.

2.      Whether pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Owned Properties from Holdings to PropCo North, and to a judgment against PropCo North and Comvest to recover the PropCo North Owned Properties or their value.

3.      Whether pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Owned Properties, or the value of such property, from PropCo North and Comvest.

4.      Whether pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Owned Properties from Holdings to PropCo North, and to a judgment against PropCo North and Convest to recover the PropCo North Owned Properties or their value.

5.      Whether pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1)), Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Washington Properties, or the value of such property, from PropCo North and Comvest.

6.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1), Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Washington Properties or their value.

7.       Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Washington Properties, or the value of such property, from PropCo North and Comvest.

8.       Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2), Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Washington Properties or their value.

9.       Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), Holdings is entitled to recover for for the benefit of the Holdings' estate the PropCo North Washington Properties, or the value of such property, from PropCo North and Comvest.

10.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Washington Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Washington Properties or their value.

11.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(a)(1),  Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Oregon Properties, or the value of such property, from PropCo North and Comvest.

12.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(a)(1), Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Oregon Properties or their value.

13.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(a)(2),  Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Oregon Properties, or the value of such property, from PropCo North and Comvest.

14.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(a)(2), Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Oregon Properties or their value.

15.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240, Holdings is entitled to recover for the benefit of the Holdings' estate the PropCo North Oregon Properties, or the value of such property, from PropCo North and Comvest.

16.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240, Holdings is entitled to avoid the direct or indirect transfer of the PropCo North Oregon Properties from Holdings to PropCo North and to a judgment against PropCo North and Comvest to recover the PropCo North Oregon Properties or their value.

17.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Owned Properties, or the value of such property, from PropCo South and Comvest.

18.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to avoid the direct or indirect transfer of the PCS Owned Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Owned Properties or their value.

19.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Owned Properties, or the value of such property, from PropCo South and Comvest.

20.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to avoid the direct or indirect transfer of the PCS Owned Properties from Holdings to PropCo South, and to a judgment against PropCo South and Comvest to recover the PCS Owned Properties or their value.

21.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Arizona Properties, or the value of such property, from PropCo South and Comvest.

22.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1), Holdings is entitled to avoid the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Arizona Properties or their value.

23.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Arizona Properties, or the value of such property, from PropCo South and Comvest.

24.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(2), Holdings is entitled to avoid the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Arizona Properties or their value.

25.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005, Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Arizona Properties, or the value of such property, from PropCo South and Comvest.

26.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005 Holdings is entitled to avoid the direct or indirect transfer of the PCS Arizona Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Arizona Properties or their value.

27.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(a), Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Nevada Properties, or the value of such property, from PropCo South and Comvest.

28.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(a), Holdings is entitled to avoid the direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Nevada Properties or their value.

29.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(b), Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Nevada Properties, or the value of such property, from PropCo South and Comvest.

30.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180(1)(b), Holdings is entitled to avoid the direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Nevada Properties or their value.

31.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.190, Holdings is entitled to recover for the benefit of the Holdings' estate the PCS Nevada Properties, or the value of such property, from PropCo South and Comvest.

32.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.190, Holdings is entitled to avoid the direct or indirect transfer of the PCS Nevada Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS Nevada Properties or their value.

33.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the PCS California Properties, or the value of such property, from PropCo South and Comvest.

34.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(1), Holdings is entitled to avoid the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS California Properties or their value.

35.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the PCS California Properties, or the value of such property, from PropCo South and Comvest.

36.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04(a)(2), Holdings is entitled to avoid the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS California Properties or their value.

37.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, Holdings is entitled to recover for the benefit of the Holdings' estate the PCS California Properties, or the value of such property, from PropCo South and Comvest.

38.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, Holdings is entitled to avoid the direct or indirect transfer of the PCS California Properties from Holdings to PropCo South and to a judgment against PropCo South and Comvest to recover the PCS California Properties or their value.

39.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, OpCoNorth is entitled to recover for the benefit of OpCo North's estate the PropCo North Rent Payments, or the value of such property, from PropCo North and Comvest.

40.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, OpCo North is entitled to judgment (i) avoiding the PropCo North Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Leases.

41.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, OpCo North is entitled to recover for the benefit of the OpCo North's estate the PropCo North Rent Payments, or the value of such property, from PropCo North and Comvest.

42.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, OpCo North is entitled to judgment (i) avoiding the PropCo North Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Leases.

28

43.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW
§ 19.40.041(a)(1), OpCo North is entitled to recover for the benefit of the OpCo North's estate
the PropCo North Washington Rent Payments, or the value of such property, from PropCo North
and Comvest.

44.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW
§ 19.40.041(a)(1), OpCo North is entitled to judgment (i) avoiding the PropCo North
Washington Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo
North and Comvest the PropCo North Washington Rent Payments made thereunder or their
value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising
from the rejection of the PropCo North Washington Leases.

45.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW
§ 19.40.041(a)(2), OpCo North is entitled to recover for the benefit of the OpCo North's estate
the PropCo North Washington Rent Payments, or the value of such property, from PropCo North
and Comvest.

46.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW
§ 19.40.041(a)(2), OpCo North is entitled to judgment (i) avoiding the PropCo North
Washington Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo
North and Comvest the PropCo North Washington Rent Payments made thereunder or their
value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising
from the rejection of the PropCo North Washington Leases.

47.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW
§ 19.40.051(a), OpCo North is entitled to recover for the benefit of the OpCo North's estate the

PropCo North Washington Rent Payments, or the value of such property, from PropCo North and Comvest.

48.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), OpCo North is entitled to judgment (i) avoiding the PropCo North Washington Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Washington Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Washington Leases.

49.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(a), OpCo North is entitled to recover for the benefit of the OpCo North's estate the PropCo North Oregon Rent Payments, or the value of such property, from PropCo North and Comvest.

50.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(a), OpCo North is entitled to judgment (i) avoiding the PropCo North Oregon Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Oregon Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Oregon Leases.

51.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(b), OpCo North is entitled to recover for the benefit of the OpCo North's estate the PropCo North Oregon Rent Payments, or the value of such property, from PropCo North and Comvest.

52.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(b), OpCo North is entitled to judgment (i) avoiding the PropCo North Oregon Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Oregon Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Oregon Leases.

53.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240(1), OpCo North is entitled to recover for the benefit of the OpCo North's estate the PropCo North Oregon Rent Payments, or the value of such property, from PropCo North and Comvest.

54.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240(1), OpCo North is entitled to judgment (i) avoiding the PropCo North Oregon Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo North and Comvest the PropCo North Oregon Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo North against the Debtors for damages arising from the rejection of the PropCo North Oregon Leases.

55.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Rent Payments, or the value of such property, from PropCo South and Comvest.

56.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, OpCo South is entitled to judgment (i) avoiding the PCS Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Leases.

57.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Rent Payments, or the value of such property, from PropCo South and Comvest.

58.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, OpCo South is entitled to judgment (i) avoiding the PCS Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Leases.

59.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Arizona Rent Payments, or the value of such property, from PropCo South and Comvest.

60.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1), OpCo South is entitled to judgment (i) avoiding the PCS Arizona Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Arizona Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Arizona Leases.

61.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(2), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Arizona Rent Payments, or the value of such property, from PropCo South and Comvest.

62.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(2), OpCo South is entitled to judgment (i) avoiding the PCS Arizona Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS

Arizona Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Arizona Leases.

63.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005, OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Arizona Rent Payments, or the value of such property, from PropCo South and Comvest.

64.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005, OpCo South is entitled to judgment (i) avoiding the PCS Arizona Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Arizona Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Arizona Leases.

65.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(a), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Nevada Rent Payments, or the value of such property, from PropCo South and Comvest.

66.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(a), OpCo South is entitled to judgment (i) avoiding the PCS Nevada Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Nevada Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Nevada Leases.

67.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(b), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Nevada Rent Payments, or the value of such property, from PropCo South and Comvest.

68.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(b), OpCo South is entitled to judgment (i) avoiding the PCS Nevada Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Nevada Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Nevada Leases.

69.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.190 (1), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS Nevada Rent Payments, or the value of such property, from PropCo South and Comvest.

70.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.190 (1), OpCo South is entitled to judgment (i) avoiding the PCS Nevada Lease Obligations as fraudulently incurred obligations, (ii) recovering from PropCo South and Comvest the PCS Nevada Rent Payments made thereunder or their value, and (iii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS Nevada Leases.

71.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS California Rent Payments, or the value of such property, from PropCo South and Comvest.

72.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1), OpCo South is entitled to judgment (i) avoiding the PCS California Lease

34

Obligations as fraudulently incurred obligations, (iii) recovering from PropCo South and Comvest the PCS California Rent Payments made thereunder or their value, and (ii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS California Leases.

73.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(2), OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS California Rent Payments, or the value of such property, from PropCo South and Comvest.

74.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(2), OpCo South is entitled to judgment (i) avoiding the PCS California Lease Obligations as fraudulently incurred obligations, (iii) recovering from PropCo South and Comvest the PCS California Rent Payments made thereunder or their value, and (ii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS California Leases.

75.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, OpCo South is entitled to recover for the benefit of the OpCo South's estate the PCS California Rent Payments, or the value of such property, from PropCo South and Comvest.

76.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, OpCo South is entitled to judgment (i) avoiding the PCS California Lease Obligations as fraudulently incurred obligations, (iii) recovering from PropCo South and Comvest the PCS California Rent Payments made thereunder or their value, and (ii) disallowing any claim by PropCo South against the Debtors for damages arising from the rejection of the PCS California Leases.

77.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Properties from Property Holdings II and Comvest.

78.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to avoid the direct or indirect transfer of the PHII Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Properties.

79.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Properties from Property Holdings II and Comvest.

80.     Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to avoid the direct or indirect transfer of the PHII Properties from Holdings to Property Holdings II, and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Properties.

81.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Washington Properties from Property Holdings II and Comvest.

82.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1), Holdings is entitled to avoid the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Washington Properties.

83.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Washington Properties from Property Holdings II and Comvest.

84.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2), Holdings is entitled to avoid the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Washington Properties.

85.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Washington Properties from Property Holdings II and Comvest.

86.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), Holdings is entitled to avoid the direct or indirect transfer of the PHII Washington Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Washington Properties.

87.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(a), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Oregon Properties from Property Holdings II and Comvest.

88.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(a), Holdings is entitled to avoid the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the PHII Oregon Properties or their value.

89.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(b), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Oregon Properties from Property Holdings II and Comvest.

90.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.230(1)(b), Holdings is entitled to avoid the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the PHII Oregon Properties or their value.

91.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240(1)(a), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Oregon Properties from Property Holdings II and Comvest.

92.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ORS § 95.240(1)(a), Holdings is entitled to avoid the direct or indirect transfer of the PHII Oregon Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the PHII Oregon Properties or their value.

93.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Arizona Properties from Property Holdings II and Comvest.

94.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(1), Holdings is entitled to avoid the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Arizona Properties.

95.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Arizona Properties from Property Holdings II and Comvest.

96.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1004 (A)(2), Holdings is entitled to avoid the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Arizona Properties.

97.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Arizona Properties from Property Holdings II and Comvest.

98.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and ARS § 44-1005, Holdings is entitled to avoid the direct or indirect transfer of the PHII Arizona Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII Arizona Properties.

99.      Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(a), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Nevada Properties from Property Holdings II and Comvest.

100.     Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(a), Holdings is entitled to avoid the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PCS Nevada Properties.

101.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(b), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Nevada Properties from Property Holdings II and Comvest.

102.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.180 (1)(b), Holdings is entitled to avoid the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PCS Nevada Properties.

103.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.10 (1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII Nevada Properties from Property Holdings II and Comvest.

104.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and NRS § 112.190 (1), Holdings is entitled to avoid the direct or indirect transfer of the PHII Nevada Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PCS Nevada Properties.

105.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII California Properties from Property Holdings II and Comvest.

106.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1), Holdings is entitled to avoid the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII California Properties.

107.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII California Properties from Property Holdings II and Comvest.

108.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(2), Holdings is entitled to avoid the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII California Properties.

109.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the PHII California Properties from Property Holdings II and Comvest.

110.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, Holdings is entitled to avoid the direct or indirect transfer of the PHII California Properties from Holdings to Property Holdings II and to a judgment against Property Holdings II and Comvest to recover the value of the PHII California Properties.

111.    Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB Properties from Haggen SLB and Comvest.

112.    Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Properties.

113.    Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB Properties from Haggen SLB and Comvest.

114.    Whether, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB Properties from Holdings to Haggen SLB, and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Properties.

115.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB Washington Properties from Haggen SLB and Comvest.

116.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(1), Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Washington Properties.

117.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB Washington Properties from Haggen SLB and Comvest.

118.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.041(a)(2), Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Washington Properties.

119.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB Washington Properties from Haggen SLB and Comvest.

120.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and RCW § 19.40.051(a), Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB Washington Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB Washington Properties.

121.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB California Properties from Haggen SLB and Comvest.

122.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(1), Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB California Properties.

123.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(2), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB California Properties from Haggen SLB and Comvest.

124.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.04 (a)(2), Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB California Properties.

125.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Haggen SLB California Properties from Haggen SLB and Comvest.

126.    Whether, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civ. Code § 3439.05, Holdings is entitled to avoid the direct or indirect transfer of the Haggen SLB California Properties from Holdings to Haggen SLB and to a judgment against Haggen SLB and Comvest to recover the value of the Haggen SLB California Properties.

127.    Whether, pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550 and the applicable fraudulent transfer laws of the states of Washington (RCW §§ 19.40.041(a)(1)), Oregon (ORS §§ 95.230(a)(1)), Arizona (ARS §§ 44-1004(A)(1)), Nevada (NRS §§ 112.180(1)(a), and California (Cal. Civil Code §§ 3439.04(a)(1), Holdings is entitled to recover for the benefit of the Holdings' estate the value of the Comvest Payments from Comvest.

128.    Whether, pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550 and the applicable fraudulent transfer laws of the states of Washington (RCW §§ 19.40.041(a)(1)), Oregon (ORS §§ 95.230(a)(1)), Arizona (ARS §§ 44-1004(A)(1)), Nevada (NRS §§ 112.180(1)(a), and California (Cal. Civil Code §§ 3439.04(a)(1), Holdings is entitled to avoid the direct or indirect transfer of the Comvest Payments from Holdings to Comvest, and to a judgment against Comvest to recover the value of the Comvest Payments.

129.    Whether, pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550 and the applicable fraudulent transfer laws of the states of Washington (RCW §§ 19.40.041(a)(2), 19.40.051(a)), Oregon (ORS §§ 95.230(a)(2), 95.240(1)), Arizona (ARS §§ 44-1004(A)(2), 44-1005), Nevada (NRS §§ 112.180(1)(b), 112.190), and California (Cal. Civil Code

§§ 3439.04(a)(2), 3439.05), Holdings is entitled to recover for the benefit of the Holdings' estates the Comvest Payments, or the value of such property, from Comvest.

130.    Whether, pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B), and 550 and the applicable fraudulent transfer laws of the states of Washington (RCW §§ 19.40.041(a)(2), 19.40.051(a)), Oregon (ORS §§ 95.230(a)(2), 95.240(1)), Arizona (ARS §§ 44-1004(A)(2), 44-1005), Nevada (NRS §§ 112.180(1)(b), 112.190), and California (Cal. Civil Code §§ 3439.04(a)(2), 3439.05), Plaintiff is entitled to avoid the direct or indirect transfer of the Comvest Payments from the Debtors to Comvest, and to a judgment against Comvest to recover the Comvest Payments or their value.

131.    Whether as Holdings' controlling shareholder Comvest owed fiduciary duties to (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

132.    Whether Comvest breached any fiduciary duties to (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

133.    The amount of the Debtors' damages resulting from Comvest's breach of its fiduciary duties to the Debtors.

134.    Whether the Officers and Directors owed duties of good faith and care to (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

135.    Whether the Officers and Directors breached any duties of good faith and care to (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

136.    The amount of the Debtors' damages resulting from the Officers' and Directors' breaches of their duties of good faith and of care to the Debtors.

137.    Whether Holding's Managers breached their duty of loyalty to Holdings.

138.    The amount of damages resulting from the Holding Managers' breaches of their duty of loyalty to Holdings.

139.    Whether, pursuant to 11 U.S.C. § 510(c), the Intercompany Loan is subject to equitable subordination.

140.    Whether, pursuant to 11 U.S.C. § 510(c), all of the liens securing the Intercompany Borrower Obligations to the Intercompany Lenders under the Intercompany Notes, to the extent valid, should be transferred to the Debtors' estates.

141.    Whether the Intercompany Loans should be recharacterized as equity in the Intercompany Borrowers.

142.    Whether, pursuant to Section 105 of the Bankruptcy Code, the SLB Entities and the Propco Entities should be substantively consolidated with Holdings.

143.    Whether, pursuant to Section 105 of the Bankruptcy Code, the SLB Entities and the Propco Entities should be substantively consolidated with Operations.

144.    Whether, pursuant to Section 105 of the Bankruptcy Code, the SLB Entities and the Propco Entities should be substantively consolidated with OpCo South.

145.    Whether, pursuant to Section 105 of the Bankruptcy Code, the SLB Entities and the Propco Entities should be substantively consolidated with OpCo North.

146.    Whether, pursuant to Section 105 of the Bankruptcy Code, the SLB Entities and the Propco Entities should be substantively consolidated with Acquisition.

147.    Whether, pursuant to Section 105 of the Bankruptcy Code, the SLB Entities and the Propco Entities should be substantively consolidated with Haggen, Inc.

148.    Whether Comvest was unjustly enriched at the expense of (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

149.    The amount of restitution to which Plaintiff is entitled as a result of Comvest's unjust enrichment at the Debtors' expense.

150.    Whether the SLB Entities were unjustly enriched at the expense of (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

151.    The amount of restitution to which Plaintiff is entitled as a result of the SLB Entities' unjust enrichment at the Debtors' expense.

152.    Whether the PropCo Entities were unjustly enriched at expense of (i) Holdings, (ii) Operations, (iii) OpCo South, (iv) OpCo North, (v) Acquisition, and/or (vi) Haggen, Inc.

153.    The amount of restitution to which the PropCo Entities are entitled as a result of Comvest's unjust enrichment at the Debtors' expense.

154.    Whether, pursuant to 11 U.S.C. § 502(b), the PropCo Entities' Lease Claims should be disallowed.

155.    Whether, pursuant to 11 U.S.C. § 510(c), the PropCo Entities Proofs of Claim are subject to equitable subordination.

156.    Whether, pursuant to 11 U.S.C. § 502(d), each proof of claim filed by each of the Avoidance Defendants should be disallowed until he/she/it has paid the amounts and/or paid the amounts and/or returned to property subject to avoidance.

47

157.    Whether Plaintiff's claims are barred, in whole or in part, by the business judgment rule.

158.    Whether recovery under the Complaint is barred, in whole or in part, due to the failure to mitigate the damages alleged.

159.    Whether Plaintiff's claims against Defendants are barred, in whole or in part, by the equitable doctrines of waiver, estoppel, laches, unclean hands, and/or ratification.

160.    Whether pursuant to 11 U.S.C. § 550(d), any recovery against Defendants is limited by the single satisfaction rule.

161.    Whether any of the losses sustained by Plaintiff were not caused by Defendants.

162.    Whether Plaintiff's claims are barred, in whole or in part, by exculpatory provisions in the Defendants' governing documents.

163.    Whether Plaintiff's claims are barred, in whole or in part, to the extent the alleged transfers were not made to or on behalf of the Defendants.

164.    Whether Plaintiff's claims are barred, in whole or in part, by 11 U.S.C. § 548(a)(1), or by Uniform Fraudulent Conveyance Act or by Uniform Fraudulent Transfer Act, or by applicable state law.

165.    Whether Plaintiff's claims are barred, in whole or in part, to the extent any individual Plaintiff was solvent at the time of the transactions at issue.

166.    Whether Plaintiff's claims are barred, in whole or in part, to the extent any of the alleged transfers to Defendants were in exchange for reasonably equivalent value.

167.    Whether Plaintiff's claims are barred, in whole or in part, due to a lack of standing.

168.    Whether Plaintiff's claims are barred, in whole or in part, to the extent that any of the alleged transfers were authorized by law, court order, administrative order and/or res judicata.

169.    Whether Plaintiff's claims are barred, in whole or in part, by the doctrines of collateral estoppel and res judicata.

170.    Whether Plaintiff's claims are barred, in whole or in part, by the release given to Albertson's.

## VI.    Witnesses

A.    List of names and addresses of witnesses in the order the plaintiff expects to call them, including experts.

| Name of Witness | Address |
|---|---|
| John Caple | c/o Kirkland & Ellis |
| Michael Niegsch | c/o Kirkland & Ellis |
| Blake Barnett | c/o Kirkland & Ellis |
| Derek Anderson | c/o Kirkland & Ellis |
| David MacGreevey | c/o Pachulski Stang Ziehl & Jones LLP |
| Cecilio Rodriguez | c/o Kirkland & Ellis |
| Carol Flaton | c/o Pachulski Stang Ziehl & Jones LLP |
| John Clougher | c/o Kirkland & Ellis |
| William Shaner | c/o Kirkland & Ellis |
| Jim Howard | c/o Pachulski Stang Ziehl & Jones LLP |
| Thomas Clark (Video) | c/o Kirkland & Ellis |

B.    List of names and addresses of witnesses in the order the defendants expect to call them, including experts.

| Name of Witness | Address |
|---|---|
| Todd Hooper | c/o AT Kearney<br>555 Mission St # 1800,<br>San Francisco, CA 94105 |
| Kevin Montague<br><br>Expert witness offering opinions regarding creditor | c/o Kirkland & Ellis<br>300 N. LaSalle Street<br>Chicago, IL 60613 |

| | |
|---|---|
| and equity recoveries under various substantive consolidation theories, and a solvency analysis of the OpCo Entities in rebuttal to Mr. MacGreevey | |
| John Satter<br><br>Expert witness offering opinions in rebuttal Mr. Howard regarding flaws in Mr. Howard's market rent approach and rent escalation evaluation. | c/o Kirkland & Ellis<br>300 N. LaSalle Street<br>Chicago, IL 60613 |

Due to agreement between the parties that witnesses will only testify once, Defendants are not listing any witness that would be called by Plaintiffs prior to Defendants' case in chief.

      C.     Witnesses for Whom There Are Objections:

Defendants reserve their right to object to playing the videotaped deposition of Thomas Clark to the extent that a lengthy clip would interfere with the trial schedule.

      D.     With the Court's permission, the parties have come to an agreement on a schedule for providing to the Court deposition testimony that they intend to offer at trial to the Court. The parties will exchange deposition designations on October 6, 2017. The parties will exchange counter-designations to the deposition transcripts on October 10, 2017. The parties will meet-and-confer on October 11 to discuss objections to designations. The parties will submit to the Court all deposition designations and remaining objection on October 11, 2017.

      E.     Rebuttal Witnesses. Each of the parties may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

**VII.**   **Exhibits**

      A.     With the Court's permission, the parties have come to an agreement on a schedule for providing to the Court trial exhibits. The parties will exchange lists of exhibits on October 6, 2017. The parties will exchange objections to the exhibits (including bases for objections) on

October 9, 2017. The parties will meet-and-confer regarding any objections on October 11, 2017. The parties will then serve the Court their exhibit lists on October 11, 2017.

B.      The lists of pre-marked exhibits will specify those which will be admitted in evidence without objection and those that will be objected to as well as the Federal Rule of Evidence in support of said objection and the Federal Rule of Evidence relied upon by the proponent of the Exhibit.

## VIII.   Statements of Intended Proofs

With the Court's permission, the parties have agreed to set forth their respective statements of intended proofs in their pre-trial briefs due to be submitted on or before October 4, 2017.

## IX.      Amendments to Pleadings Desired by Any Party

The Amended Scheduling Order had a deadline "to amend or supplement the pleadings" on February 28, 2017. (D.I. 70).

## X.      Certification of Attempted Resolution of the Controversy

The parties certify that two-way communication has occurred between persons having authority in a good faith effort to explore the resolution of this controversy by settlement. No agreement has been reached.

## XI.     Damages

A.      Plaintiff's Damages

With respect to the fraudulent transfer of assets (Counts 1-19, 39-63), the property transferred or the value of such property in an amount not less than the value of the assets currently owned by each of the PropCo Entities and SLB Entities;

With respect to the fraudulent incurrence of lease obligations (Counts 20-38), Plaintiff seeks to avoid the PropCo Leases, recover all amounts paid under the PropCo Leases, and the disallowance of any claims arising from the rejection of the PropCo Leases;

With respect to Counts 64 and 65, damages equal to $1,575,000 (*i.e.*, the $1.5 million "transaction fee" plus the $75,000 in monthly management fees paid in 2015);

With respect to Plaintiff's breach of fiduciary duty claims (Counts 66-68), damages in an amount equal to the OpCo Entities' unsatisfied liabilities;

With respect to Plaintiff's claims pertaining to the Intercompany Loan (Counts 69-71), recharacterizing the Intercompany Loan as equity or equitably subordinating the Intercompany Loan to the claims of the OpCo Entities' general unsecured creditors, or transferring to Plaintiff any validly perfected liens securing the Intercompany Loan; and

With respect to Plaintiff's unjust enrichment claims,(a) the net equity value of Holdings (after the payment of all claims other than to equity holders) (Count 73), or (b) the value of the assets currently owned by each of the PropCo Entities and SLB Entities (Counts 74 and 75).

      B.    Defendants object to the Plaintiff's proposed "damages" on the following bases:

      1.    Plaintiff's description of the damages it seeks is too vague, indefinite and ambiguous to provide Defendants adequate notice of the actual damages that are being sought by which entity with regard to each claim asserted by the Plaintiff. Without additional clarity, Defendants would be prejudiced by their inability to adequately address and refute Plaintiff's assertion of "damages."

2.      Plaintiff's damages also seek certain remedies that are not available as a matter of law based upon the claims pled, and as such Defendants reserve all rights to object to and seek appropriate relief from the Court as to said requests for relief/damages.

## XII.  Motions *in Limine*

A.      On August 25, 2017, Defendants filed their Motion in Limine to Exclude the Expert Report and Testimony of Carol Flaton, Docket No. 101 (the "Flaton Motion In Limine"). On September 14, 2017, Plaintiff filed its opposition to the Flaton Motion In Limine (Docket No. 112). Defendants did not file a Reply. On September 26, 2017, the Court entered an Order denying the Flaton Motion in Limine. Docket No. 133.

B.      Because the parties were unable to reach an agreement in this pretrial order on the issue of Holdings' solvency, Defendants include a formal motion *in limine* ("Motion") in this pretrial order seeking to prevent the Committee from offering any evidence of Holdings' insolvency based upon its responses in discovery.

### 1.      Defendants' Motion To Exclude Evidence That Holdings Is Currently Insolvent Or Was Insolvent Prior To The Petition Date.

Defendants request that this Court grant their Motion and exclude the Committee from offering any evidence that Holdings' is currently insolvent or was insolvent prior to the Petition Date.   Defendants served a specific discovery request seeking all bases to support the Committee's allegation that Holdings was insolvent, and the Committee provided no evidence. To permit the Committee to now present any such evidence on Holdings' insolvency would be unfair and prejudicial to Defendants.

#### a.      FACTUAL BACKGROUND

Holdings is a debtor in this bankruptcy, and the Committee has standing to sue the Defendants on its behalf.  The Committee alleges forty-five fraudulent transfer claims where

Holdings was the transferor. *See* Compl. at Counts 1–19, 39–65 (D.I. 1). In each of those, the Committee alleges in some form that at the time of the transfer, "Holdings was insolvent or Holdings became insolvent as a result of the transfers." *See, e.g., id.* at. ¶ 190. The Committee also alleges a series of breach of fiduciary duty claims. *See* Compl. at Counts 66–68. The core of those claims is that certain Defendants "had a fiduciary obligation to the Debtors and their unsecured creditors to protect the interests of such creditors" because Debtors were "insolvent." *Id.* ¶ 670. The insolvency of the Debtors (and in particular Holdings) underpins much of the Committee's Complaint.

In February 2017, Defendants sent a simple contention interrogatory, asking the Committee to "identify the date on which You contend [each Debtor] became insolvent and why you contend that the Debtor became insolvent on that Date." Defendants' First Set of Interrogatories to the Committee, dated February 10, 2017, at Interrog. No. 11. The Committee responded that the request was "premature because it seeks expert opinion" and that it "will provide expert disclosures on or before July 7, 2017, that will be responsive."

> **INTERROGATORY NO. 11**:
>
> For each Debtor, identify the date on which You contend the Debtor became insolvent, and why you contend that the Debtor became insolvent on that Date.

> **RESPONSE TO INTERROGATORY NO. 11**:
>
> Plaintiff objects to Interrogatory No. 11 on the ground that it is premature because it seeks expert opinion; pursuant to the Scheduling Order, Plaintiff will provide expert disclosures on or before July 7, 2017, that will be responsive to Interrogatory No. 11, and that will be deemed incorporated by reference herein.

Plaintiff's Response and Objections to Defendants' First Set of Interrogatories, dated March 31, 2017, at Interrog. Resp. No. 11. Defendants patiently waited until July 7, 2017 as discovery and depositions continued on in the case. On that date, the Committee disclosed three experts. While the Committee offered an expert on the insolvency of the OpCo Entities, it did not offer any expert opinions on the insolvency (or solvency) of Holdings. *See, e.g.,* D. MacGreevey Dep. at 39:12–15 ("Q. So just for the record, you are not offering any opinions as to the solvency or insolvency of Haggen Holdings LLC; correct? A. Correct."). Since then, the Committee has not amended its interrogatory answers, nor did it disclose any new experts. Discovery has now closed.

In its Summary Judgment brief, Defendants pointed out the Committee's failure to present any evidence on Holdings' insolvency. *See* D.I. 103 at 13–14. In response, the Committee did not deny that Holdings was solvent during the relevant transactions or that it is currently solvent. Instead, the Committee argued that if this Court found in the Committee's favor on substantive consolidation, Holdings would be rendered insolvent at that time. *See* D.I 111 at 28 n.52. Even if the Committee were to prevail on its substantive consolidation theory, this victory would do nothing to change the Committee's interrogatory admission that it has no evidence that Holdings was insolvent at any time during the relevant periods in the Complaint.

While negotiating this pretrial order, Defendants proposed to the Committee that the parties enter a stipulation or agreed fact that the Committee would not present any evidence of Holdings' insolvency. This would crystalize the Committee's interrogatory admission and prevent any surprises at trial. The Committee refused. In light of the Committee's refusal, Defendants bring this Motion.

b.    <u>ARGUMENT</u>

The Court should grant this Motion to exclude any evidence by the Committee that Holdings is currently insolvent or was insolvent at any point prior to the Petition Date. Courts routinely hold parties to their interrogatory answers—especially contention interrogatories that are to "give each party sufficient notice of the opposing party's contentions at trial and an opportunity to respond." *See Thorn EMI N. Am., Inc. v. Intel Corp.*, 936 F. Supp. 1186, 1191 (D. Del. 1996) ("The court will prevent a party from raising a claim or defense at trial that was not adequately described in a response to a contention interrogatory."); *CPC Int'l Inc. v. Archer Daniels Midland Co.*, 831 F. Supp. 1091, 1103 (D. Del. 1993) ("The Court finds ADM waived the right to assert these matters as defenses to CPC's claims of infringement" "by failing to identify them in response to CPC's interrogatory."); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 117 F. Supp. 3d 276, 294 (S.D.N.Y. 2015) ("Contention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers, unless the failure was substantially justified or is harmless."). Here, Defendants' Interrogatory No. 11 addressed one of the Committee's core allegations—namely, Holdings' insolvency. Yet, the Committee ultimately failed to identify any evidence to support its allegation of Holdings' insolvency. If Court permits the Committee to present evidence or argument that Holdings was insolvent at any point prior to the Petition Date, Defendants would be severely prejudiced, being unable to rebut such evidence with expert testimony. *See* Fed. R. Civ. P. 33, Comm. Notes, 1970 Amd. (Where setting aside an interrogatory response would cause demonstrable "prejudice," the "court will hold the answering party bound to his [interrogatory] answer.").

In sum, the Court should enter an Order granting Defendants' Motion and present the Committee from offering any evidence or argument at trial that Holdings is currently insolvent or was insolvent at any point prior to the Petition Date.

## XIII.    **Trial Briefs**

A.      The parties' trial briefs shall be filed on or before October 4, 2017, with two (2) courtesy copies of each brief delivered to Chambers contemporaneously with their filing.

## XIV.    <u>Limitations, Reservations and Other Matters</u>

Length of Trial.  The probable length of trial is five days beginning at 9:00 a.m. on October 16, 2017.

IT IS ORDERED that this Final Pretrial Order shall control the subsequent course of action unless modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown.  Such modification may be made either on application of counsel for the parties or by the Court

October 6, 2017                           _Kevin Gross_
                                          Honorable Kevin Gross, U.S.B.J.

APPROVED AS TO FORM AND SUBSTANCE:

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Bradford J. Sandler (Bar No. 4142)
Robert J. Feinstein (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Beth E. Levine (admitted *pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:   bsandler@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         blevine@pszjlaw.com

Counsel to Plaintiff

**WOMBLE CARLYLE SANDRIDGE
& RICE LLP**

*/s/ Kevin J. Mangan*
Kevin J. Mangan (DE Bar No. 3810)
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4631
Email:   kmangan@wcsr.com

            -and-

Philip J. Mohr, Esq.
300 North Greene Street, Suite 1900
Greensboro, NC 27401
Telephone:  (336) 721-3577
Email:   pmohr@wcsr.com

            -and-

**KIRKLAND & ELLIS LLP**
Stephen C. Hackney (admitted *pro hac vice*)
Richard U.S. Howell (admitted *pro hac vice*)
Jeffery J. Lula (admitted *pro hac vice*)
300 N. LaSalle St.
Chicago, Illinois 60654
Telephone        (312) 862-7092
Email:    stephen.hackney@kirkland.com
              richard.howell@kirkland.com
              jeffery.lula@kirkland.com

Counsel to Defendants

2